Jeffrey M. Feldman (Alaska Bar No. 7605029)
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, AK 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:        feldman@frozenlaw.com

Geoffrey M. Howard (California Bar No. 157468)
Sivan Gai (California Bar No. 224152)
Abigail L. Ramsden (California Bar No. 239544)
BINGHAM MCCUTCHEN
*(Pro Hac Vice applications pending)*
3 Embarcadero Center
San Francisco, CA 94111
Telephone:    (415) 393-2485
Facsimile:    (415) 393-2286
Email:        geoff.howard@bingham.com
              sivan.gai@bingham.com
              abigail.ramsden@bingham.com

David E. Garrett (California Bar No. 190923)
ORACLE USA, INC.
*(Pro Hac Vice application pending)*
M/S 5op7
Redwood City, CA 94070
Telephone:    (650) 506-4366
Facsimile:    (650) 506-7114
Email:        dave.garrett@oracle.com

*Attorneys for Defendant Oracle USA, Inc., a Delaware Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | | |
|---|---|---|
| DENA'NENA'HENASH, INC. d/b/a | ) | |
| TANANA CHIEFS CONFERENCE, | ) | |
| An Alaska non-profit corporation, | ) | Case No. 4:06-cv-00006 RRB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| ORACLE CORPORATION, a | ) | |
| Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO (1) DISMISS OR TRANSFER FOR IMPROPER VENUE [F.R.C.P. 12(b)(3); 28 U.S.C.§ 1406(a)] OR, IN THE ALTERNATIVE, (2) DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICHRELIEF CAN BE GRANTED [F.R.C.P. 12(b)(6); F.R.C.P. 9(b)]**

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  UNDISPUTED FACTUAL BACKGROUND AND SUMMARY OF CLAIMS ............ 2

    A.   TCC And Oracle Negotiated A Commercial Software Deal At Arm's Length ................................................................................................. 2

    B.   The License Agreement ................................................................... 3

    C.   The Services Agreement .................................................................. 4

    D.   Summary of TCC's Claims For Relief .............................................. 5

        1.   TCC's First Claim For Relief For Breach of Contract (Motion Re Improper Venue) ....................................................................... 5

        2.   Third and Fourth Claims for Relief For Fraudulent and Negligent Misrepresentation ........................................................................ 7

            a.   TCC Alleges Fraud Relating To The License Agreement (Motion Re Improper Venue) ...................................................... 7

            b.   TCC's Vaguely Alleged Misrepresentations (Motion Re Failure to State a Claim) ...................................................... 8

        3.   Fifth Claim For Constructive Fraud (Motion Re Failure to State a Claim) ........................................................................................ 9

        4.   Sixth Claim for Violations Of The Alaska Unfair Trade Practices Act (Motion Re Failure to State a Claim) ............................... 10

III. THE COURT SHOULD DISMISS FOR IMPROPER VENUE ..................................... 10

    A.   Legal Standard Under Rule 12(b)(3) .................................................. 10

    B.   The License Agreement Contains A Mandatory Forum Selection Clause .......... 11

    C.   The Forum Selection Clause Extends To All Claims, Even If Nominally Unpled Or Sounding In Tort ................................................................ 12

        1.   The Gist Of TCC's Action Includes A Claim Under, Or Relating To, The License Agreement ................................................. 13

        2.   TCC Alleges Tortious Conduct Relating To The License Agreement ............................................................................. 14

i

     D.      The Court Should Dismiss, Not Transfer, The Entire Action..............................16

IV.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS TCC'S THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS FOR FAILURE TO STATE A CLAIM......................................................................................................................17

     A.      Legal Standard Under Rule 12(b)(6) ........................................................17

     B.      The Third Claim for Fraud and Fourth Claim for Negligent Misrepresentation Each Fails To State A Claim....................................18

           1.      Fraud Allegations Must Satisfy Three Rules ...........................18

           2.      TCC's Fraud Allegations Lack The Requisite Specificity And Certainty, And/Or Amount To Puffery....................................19

     C.      The Fifth Claim for Constructive Fraud Fails to State a Claim............................23

     D.      The Sixth Claim For Violation Of The UTPA Fails To State A Claim................26

           1.      The Two Contracts At Issue In This Case Require The Application Of Either Montana Or California Law....................................26

           2.      The UTPA Claim Also Fails Because TCC Has No Fraud Claim ..........28

V.    CONCLUSION...........................................................................................................29

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030 (D. Ariz. 1989) .................................. 27

*American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d
884 (7th Cir. 2004)................................................................................................... 14

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996) ............................................ 10, 12

*Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399 (2000)......................................... 24

*Bacon v. Soule*, 19 Cal. App. 428 (1912).............................................................................. 24, 25

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1990).............................................. 17

*Bank of the West v. Valley Nat. Bank of Arizona*, 41 F.3d 471 (9th Cir. 1994).......................... 28

*Brian Clewer, Inc. v. Pan American World Airways, Inc.*, 674 F. Supp. 782 (C.D.
Cal. 1986)................................................................................................................. 17

*Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) ............................................ 17

*Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir.
1999) ................................................................................................................ 19, 20, 21

*Continental Airlines, Inc. v. Mundo Travel Corp.* 412 F. Supp. 2d 1059 (E.D. Cal.
2006) ........................................................................................................................ 28

*Continental Ins. Co. v. Orsula*, 354 F.3d 603 (7th Cir. 2003) .................................................... 16

*Cooper v. Picket*, 137 F.3d 616 (9th Cir. 1997)........................................................................ 18

*Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541 (9th Cir.
1994) ........................................................................................................................ 18

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ...................................................... 18

*Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036 (1999) .............................. 27

*Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir. 1989) ...................................... 11

*Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48 (Mont. 1996).................................................. 27

*Dunfee v. Baskin-Robbins, Inc.*, 720 P.2d 1148 (Mont. 1986) .................................................... 25

iii

*GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.*, 198 F.R.D. 402 (S.D.N.Y. 2001) .................................................................................................. 16

*Government Computer Sales, Inc. v. Dell Marketing, L.P.*, 2005 WL 1713182 (D. Alaska) .................................................................................................................. 13

*Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427 (N.D. Cal. 1997) ..................................................................................................... 12

*Haskell v. Time, Inc.*, 857 F. Supp. 1392 (E.D. Cal. 1994) ......................................... 19

*Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992)............................................... 17, 24

*Lee v. Armstrong*, 798 P.2d 84 (Mont. 1990) .............................................................. 19

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004).............................. 18, 19, 21, 22

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) ............... 12

*Mann Farms, Inc. v. Traders State Bank*, 801 P.2d 73 (Mont. 1990) .................... 24, 25

*Medimatch, Inc. v. Lucent Techs., Inc.,* 120 F. Supp. 2d 842 (N.D. Cal. 2000).......... 28

*Moore v. Brewster*, 96 F.3d 1240 (9th Cir. 1996)........................................................ 19

*Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459 (1992) .................................... 27

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273 (9th Cir. 1984) ......................................................................................................................... 10

*Peterson v. Ek*, 93 P.3d 458 (Alaska 2004) ................................................................. 27

*Pinnacle Systems, Inc. v. XOS Technologies, Inc.*, 2003 WL 21397845 (N.D. Cal. May 19, 2003).......................................................................................................... 19

*Pulse v. North Am. Land Title Co.*, 707 P.2d 1105 (Mont. 1985) ............................... 24

*Recorded Picture Company Productions Ltd. v. Nelson Entertainment, Inc.*, 53 Cal. App. 4th 350............................................................................................................. 24

*Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777 (9th Cir. 1950) ..................................... 16

*Spradlin v. Lear Siegler Management Servs. Co., Inc.*, 926 F.2d 865 (9th Cir. 1991) ......................................................................................................................... 11

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2000) .............................. 11

iv

*Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)................................................... 10

*The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)............................................................... 11

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 18, 19, 20, 21

*Vignolo v. Miller*, 120 F.3d 1075 (9th Cir. 1997) ........................................................................ 17

*Weingrad v. Telepathy, Inc.*, 2005 WL 2990645 (S.D.N.Y. 2005) .............................................. 13

*Wessa v. Watermark Paddlesports, Inc.*, 2006 WL 1418906 (W.D.Wash. 2006)........................ 18

*Zimmerman v. City of Oakland*, 255 F.3d 734 (9th Cir. 2001)..................................................... 2

## **Statutes**

28 USC § 1406(a) ......................................................................................................................... 11

Alaska Unfair Trade Practices Act, AS 45.50.471 *et seq*………………………………...………10, 28

MT ST 28-2-406………………………………..…………………ST ST…………………………..23

MT ST 30-14-102………………………………..…………………ST……..…………………………27

## **Other Authorities**

Restatement (Second) Of Conflict Of Laws § 187 (1971)............................................................. 27

## **Rules**

Federal Rule of Civil Procedure 9(b)………………………………………...……..18, 19, 20, 21, 22

Federal Rule of Civil Procedure 12(b)(3) ................................................................................. 1, 11

Federal Rule of Civil Procedure Rule 12(b)(6)...................................................... 1, 2, 17, 23, 24

## I.    PRELIMINARY STATEMENT

Defendant Oracle USA, Inc.[1] ("Oracle") moves to dismiss under Rule 12(b)(3) for improper venue.  This case arises out of two commercial contracts between Oracle and plaintiff Dena'Nena'Henash, Inc., d/b/a Tanana Chiefs Conference ("TCC"), for the license and installation of business software.  Both contracts have mandatory forum selection clauses.  The two clauses differ slightly from each other – one permits venue in Alaska while the other does not.  Both permit venue in any of three California counties.

TCC has studiously ignored that ***both*** contracts permit venue in California and has artfully attempted to plead around the contract that precludes venue in Alaska.  From top to bottom, however, TCC's allegations directly implicate, relate to, and arise under the contract that precludes venue in Alaska.  By this motion, Oracle seeks to enforce the forum selection clause of the contract that lies at the heart of TCC's First Amended Complaint ("FAC").

If the Court determines that venue of this action is improper in Alaska, it need not consider Oracle's alternative motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), and need only decide whether to dismiss or transfer the action.  For the reasons given below, Oracle requests that the Court dismiss the action for improper venue, not transfer it, and require TCC to bring its claims in a venue proper to all claims.

In the alternative, however, and in the event the Court determines Alaska is a proper venue for all of TCC's claims, Oracle also moves to dismiss claims of fraud, negligent misrepresentation, constructive fraud, and violations of the Alaska Unfair Trade Practices Act for failure to state a claim under Rule 12(b)(6).  The fraud and negligent misrepresentation claims (third and fourth claims for relief) lack the requisite specificity and/or rely on impermissibly imprecise statements.  The constructive fraud claim (fifth claim for relief) requires a fiduciary duty between the parties that could not exist based on the facts alleged.  The claim for violations

---

[1] Oracle USA, Inc. is the successor in interest to defendant Oracle Corporation's rights and interests in and to the License Agreement and Services Agreement, as further defined below.

of the Alaska Unfair Trade Practices Act (sixth claim for relief) fails because the contracts require that either Montana or California law be applied, and therefore preclude claims under Alaska law.  That claim also fails because it rests on allegedly fraudulent conduct that TCC has not adequately pleaded.

## II.     UNDISPUTED FACTUAL BACKGROUND AND SUMMARY OF CLAIMS

Below we set forth the relevant facts as pled by TCC and summarize the relevant portions of its claims for relief.  In doing so, Oracle does not admit the truth of any factual allegations, but accepts those well-pleaded allegations as true for purposes of these motions only.  *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001) (on Rule 12(b)(6) motion to dismiss, court accepts as true all well-pleaded allegations of fact).  For convenience, the summary below includes allegations that relate to both motions.

### A.     TCC And Oracle Negotiated A Commercial Software Deal At Arm's Length

TCC is a nonprofit organization that has been in existence since 1962.  FAC ¶5.  With an employee base of approximately 700 and an annual payroll exceeding $22 million, TCC operates over 120 programs and incurs annual operating expenses in excess of $82 million.  FAC ¶6.  TCC receives funds from Indian Health Service contracts and compacts, Bureau of Indian Affairs contracts and compacts, program-generated income, and funds from federal, state and local governmental sources as well as private agencies.  FAC ¶7.

In October 2003, seeking to replace an unreliable legacy software system that did not meet its business needs, TCC issued a Request for Proposal to a number of software vendors.  FAC ¶8.  The following month, Oracle responded to TCC's Request for Proposal.  FAC ¶10.  Negotiations ensued, during which TCC now alleges Oracle made various misrepresentations about the functionality of the software and nature of the implementation.  FAC ¶10.  These negotiations culminated on or about February 24, 2004, when TCC and Oracle executed the "Oracle License and Services Agreement."  FAC ¶13, Exh. C[2] (the "License Agreement").  This

---

[2]  Exhibit references are to the exhibits TCC attached and incorporated into its FAC.

contract provided terms for TCC's licensing of the Oracle business software products identified in the corresponding Oracle Ordering Document.  FAC ¶13, Exh. D.

TCC and Oracle separately contracted for Oracle to assist in implementing the software by executing the Oracle Services Agreement, effective March 17, 2004.  FAC ¶13, Exh. E (the "Services Agreement").  Like the License Agreement, the Services Agreement also has a corresponding, detailed Oracle Ordering Document.  FAC ¶13, Exh. F.  As the Services Agreement and its related Ordering Document indicate, the parties extensively negotiated a detailed scope of services that included dozens of scope limitations for specific software features, and included a three-page list of assumptions specific to the project.  *Id.*

TCC defines the License Agreement and the Services Agreement, together with the related ordering documents, collectively as the "Contracts."  FAC ¶13, Exhs. C–F.  Below we provide additional relevant detail about the terms of the License Agreement and the Services Agreement.

### B.    The License Agreement

Section O of the License Agreement contains a combined choice of law and forum selection clause:  "This agreement is governed by the substantive and procedural laws of California and [TCC] and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts in San Francisco, San Mateo, or Santa Clara counties in California in any dispute arising out of or relating to this agreement."  FAC ¶13, Exh. C, §O.

The License Agreement contains a warranty for the functionality of the software TCC licensed:  Oracle warrants that the licensed program would "operate in all material respects as described in the applicable program documentation for one year after delivery."  FAC ¶13, Exh. C, §E.  The License Agreement also places specific limitations on this warranty:

> **ORACLE DOES NOT GUARANTEE THAT THE PROGRAMS WILL PERFORM ERROR-FREE OR UNINTERRUPTED OR THAT ORACLE WILL CORRECT ALL PROGRAM ERRORS.  TO THE EXTENT PERMITTED BY LAW, THESE WARRANTIES ARE EXCLUSIVE AND THERE ARE NO OTHER EXPRESS OR**

**IMPLIED WARRANTIES OR CONDITIONS, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

FAC ¶13, Exh. C, §E (emphasis in original).

The License Agreement also imposes restrictions on the remedies available to TCC for a breach of the limited warranty, and specifically excludes recovery for "indirect, incidental, special, punitive, or consequential damages, or any loss of profits, revenue, data, or data use." FAC ¶13, Exh. C, §§E, M (also in bold capital letters). This limitation applies equally to related tort claims: "Oracle's maximum liability for any damages arising out of or related to this agreement or [TCC's] order, ***whether in contract or tort***, or otherwise, shall be limited to the fees [TCC] paid Oracle for the deficient program or services under this agreement as specified in [TCC's] order. In no event shall Oracle's liability arising out of or related to this agreement exceed the total fees paid under [TCC's] order." *Id.* at § M (italics supplied).

Finally, the License Agreement is integrated. Its "Entire Agreement" clause provides, in part:

> . . . this agreement supersedes all prior contemporaneous agreements or representations, written or oral, regarding such programs and/or services . . . . This agreement and ordering documents may not be modified and the rights and restrictions may not be altered or waived except in a writing signed or accepted online through the Oracle Store by authorized representatives of [TCC] and of Oracle.

FAC ¶13, Exh. C, §L.

### C.    The Services Agreement

The Services Agreement also contains a combined choice of law and forum selection provision: "This agreement is governed by the substantive and procedural laws of the State of Montana and we agree to submit to the exclusive jurisdiction of, and venue in, the courts in Alaska County in Fairbanks, Alaska, or San Francisco, San Mateo, or Santa Clara counties in California in any dispute arising out of or relating to this agreement." FAC ¶13, Exh. E, §M.

The Services Agreement contains similar warranty provisions and limitations as the License Agreement:

- "Oracle warrants that services ordered will be provided in a professional manner consistent with industry standards. [TCC] must notify Oracle of any warranty deficiencies within 90 days from performance of the services described in the ordering document." FAC ¶13, Exh. E, §E.

- "This warranty is exclusive and there are no other express or implied warranties or conditions, including warranties or conditions of merchantability and fitness for a particular purpose." FAC ¶13, Exh. E, §E (in bold, all capital letters).

- "Any notice requirement under this agreement shall be provided to the other party in writing." FAC ¶13, Exh. E, §J.

Finally, the Services Agreement also contains an integration clause identical in all material respects to the License Agreement clause and limitations on remedies similar to the clauses quoted above from the License Agreement. FAC ¶13, Exh. E, §§J, K (in bold capital letters).

### D. Summary of TCC's Claims For Relief

Below Oracle summarizes the relevant provisions of TCC's claims for relief. For the Court's convenience, a parenthetical in each argument heading indicates whether the summary in that section relates primarily to the motion to dismiss for improper venue or the motion to dismiss for failure to state a claim.

### 1. TCC's First Claim For Relief For Breach of Contract (Motion Re Improper Venue)

TCC's contract claim – nebulously titled "breach of contract and express warranty" – tries to have it both ways. TCC purports to allege a breach of the Services Agreement, but it carefully does not restrict its allegations just to the Services Agreement. In addition to alleged dissatisfaction with Oracle's implementation services provided pursuant to the Services Agreement, TCC also makes numerous, specific allegations directed at product

functionality and performance (and Oracle's alleged representations about them) under the License Agreement.

For example, TCC alleges that it "has not yet been able to attain a complete and fully functioning system." FAC ¶15. TCC also claims that the system on which TCC initially went live "had extremely limited functionality and is still incomplete and not fully implemented." *Id*. TCC alleges that Oracle misrepresented that its "'out of the box' software had the required functionality, including the ability to provide requested reports, to calculate and properly apply the proper indirect rates, to exchange data between the purchased modules, and to otherwise manage and control TCC's organization." FAC ¶10(c). In addition, TCC asserts, "The Grants module had little or no ability to generate reports, contrary to Oracle's representations." FAC ¶18.

TCC ties its claimed contract damages directly to these alleged functional defects in the software product it received pursuant to the License Agreement: "Because of the defects noted above and because the underlying software release licensed to TCC was incapable of providing the required functionality, TCC has spent and will need to spend considerable time and resources in upgrading its system . . . ." FAC ¶20. TCC also claims damages for system components it "would not have had to purchase had the Oracle software functioned as represented." FAC ¶21.

In addition to these "background" allegations of defective product and inadequate functionality, TCC attempts to include an actual, disguised claim for breach of the License Agreement in the first claim for relief for "breach of contract and express warranty." First, TCC incorporates by reference the allegations described above from paragraphs 13, 15, 18, and 20-21 regarding alleged product defects. FAC ¶25. Second, TCC coyly alleges that it "has fully performed its obligations under the Contracts" (defined to include the License Agreement). FAC ¶¶13, 25, and 28. Third, TCC claims damages "[a]s a direct and proximate result of Oracle's breach of contract," which of course does not limit damages only to the Services Agreement.

FAC ¶30.  In addition, TCC ties its contract damages claim to its "damages as alleged above," which, as shown, ostensibly includes damages directly related to claimed product defects governed by the License Agreement.  *Id.*  Finally, and to resolve all doubt, TCC's prayer for relief includes "all monies paid to Oracle pursuant to the ***Contracts***."  FAC Prayer for Relief (emphasis supplied).  As explained more fully below, the License Agreement forum selection clause precludes TCC from making these allegations and bringing the related claims in Alaska.

> ### 2.    Third and Fourth Claims for Relief For Fraudulent and Negligent Misrepresentation

TCC's fraud and negligent misrepresentation allegations also implicate the License Agreement, though they are too unspecific and vague to state a claim for fraud.

> #### a.    TCC Alleges Fraud Relating To The License Agreement (Motion Re Improper Venue)

TCC alleges that Oracle made numerous misrepresentations directed to the functionality of the product and fraudulently induced TCC to enter into the License Agreement. FAC ¶10.  In FAC paragraphs 10(a)-(h), TCC identifies nine supposed instances of fraudulent misrepresentation.  More than half relate to the License Agreement, including that:

- "Oracle's standard software provided the functionality that TCC required," and TCC's "requirements are addressed by Oracle's standard functionality" (FAC ¶10(a));

- TCC "will realize significant financial savings" as a result of using Oracle software (FAC ¶10(b));

- "Oracle repeatedly assured TCC that its software could provide all of the functionality needed by TCC" (FAC ¶10(c));

- "Oracle's HR, Payroll, Benefits and Grants modules were fully integrated" (FAC ¶10(d)); and

- TCC "reserves its right to assert claims" that Oracle made misrepresentations about a "proposed" second phase of the project that

"TCC has not completed," but that allegedly involves extending the software functionality to TCC's tribal members (FAC ¶10(h)).

TCC claims that relying on these alleged misrepresentations, among others, TCC entered into the "**Contracts**" (defined to include the License Agreement) and suffered related damages. FAC ¶¶15, 36-39, 41-43.

Later allegations make clear that TCC did not accidentally sweep the License Agreement into its definition of the "Contracts" and its related fraud claim. TCC claims it relied on "[e]ach of these representations [described in FAC ¶10 and summarized above]. . . in making the decision to purchase Oracle software." FAC ¶11; *see also* FAC ¶12 (TCC "relied upon Oracle and its representatives' representations in selecting the Oracle software as the system which would best meet its needs."). TCC further alleges Oracle made representations about software functionality and implementation "with the intent to defraud TCC, to induce TCC to execute the **Contracts**" and that TCC "justifiably acted in reliance upon those representations in executing the **Contracts**." (emphasis supplied) FAC ¶¶36- 38; 41-42.

As explained more fully below, these allegations that Oracle fraudulently induced the License Agreement fall directly within the scope of the License Agreement forum selection clause, which precludes TCC from bringing these allegations and claims in Alaska.

### b.    TCC's Vaguely Alleged Misrepresentations (Motion Re Failure to State a Claim)

TCC's factual allegations fail to identify when, where, and between whom the allegedly fraudulent communications took place. FAC ¶10(c)-(h) (unnamed "representatives" of Oracle made assurances about product functionality); FAC ¶11 (naming some people but failing to connect them with each statement and also expanding the list to include unnamed and unidentified "members of Oracle's sales team and others who attempted to persuade TCC to use Oracle's software and services").

TCC also fails to explain the falsity of the statements, many of which are too vague to be false. FAC ¶10(a) (Oracle allegedly misrepresented that implementation could be

"quickly completed" and that "[c]ompressed time frames are achievable"); FAC ¶10(b) (Oracle allegedly misrepresented that "it felt 'confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services'"); FAC ¶10(e) (Oracle allegedly misrepresented "go-live dates that were not, and could not have been met" but TCC does not identify any proposed go-live dates or explain why they could not have been met); FAC ¶10(f) (Oracle allegedly misrepresented "it would be able to accomplish the implementation within a specified budget" but TCC does specify any budget); FAC ¶10(g) (Oracle allegedly misrepresented that "there would be a 'substantial cost savings to TCC' from a time and materials contract and that since the project was a 'fairly predictable, basic flows implementation,' a time and materials contract was 'in TCC's best interest'"); FAC ¶10(h) (Oracle allegedly misrepresented "functionality, cost, and the time required to complete Phase Two" which cannot be proven false because TCC has not yet completed this phase); FAC ¶22 (Oracle allegedly misrepresented that "the implementation was almost complete" after the contracts were signed).

TCC's third and fourth claims for relief, for fraudulent and negligent misrepresentation, respectively, merely incorporate by reference these vague allegations and claim that "[t]hese representations, along with the other representations made by Oracle, are and were false." FAC ¶¶36-37.

### 3.    Fifth Claim For Constructive Fraud<br>(Motion Re Failure to State a Claim)

TCC bases its constructive fraud claim on a legal conclusion:  "[d]ue to the trust imposed in Oracle by TCC, a fiduciary relationship arose between TCC and Oracle." FAC ¶45. TCC alleges that Oracle breached the duty created by this supposed fiduciary relationship by "failing to properly perform the implementation of the software" and by "making misrepresentations regarding its goods and services, as more fully set forth above." *Id.*  As explained below, the facts TCC pleads contradict its legal conclusion that Oracle owed TCC a fiduciary duty.

**4.    Sixth Claim for Violations Of The Alaska Unfair Trade Practices Act (Motion Re Failure to State a Claim)**

TCC claims that "statements made by Oracle's representatives . . . and the Contracts that TCC was induced to execute by reason of Oracle's misrepresentations, were fraudulent and/or misleading" and constitute "unfair or deceptive acts or practices" under Alaska's Unfair Trade Practices Act ("UTPA"), AS 45.50.471 *et seq*.  FAC ¶49.  TCC evidently bases this claim on the same set of facts alleged under the third claim for fraudulent misrepresentation, i.e. statements by unnamed Oracle representatives regarding software implementation and functionality.  *See above*, Sec.II.C.2(a)-(b).

## III.    THE COURT SHOULD DISMISS FOR IMPROPER VENUE

TCC filed this lawsuit in Fairbanks, Alaska, claiming that the Services Agreement provides for exclusive jurisdiction in this court "among other courts."  FAC ¶4.  In doing so, TCC ignores the mandatory venue provision of the License Agreement, on which so many of TCC's claims depend.  Because the License Agreement restricts venue *only* to courts in the California counties of San Francisco, San Mateo, and Santa Clara, and because the Services Agreement *permits* venue in those courts, TCC has improperly filed suit here and must proceed only where venue is proper under the venue provisions of *both* contracts.

**A.    Legal Standard Under Rule 12(b)(3)**

Federal law governs the determination of proper venue in federal actions, including those based on diversity jurisdiction.  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988).

A forum selection clause is *prima facie* valid and will be enforced unless the party challenging it meets the "heavy burden" of showing that its enforcement would be unreasonable under the circumstances.  *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (holding commencement of action in the District of Arizona improper under Rule 12(b)(3) where forum selection clause stated "the parties expressly submit themselves to the Federal Tribunals or the State Courts of Guadalajara, Jalisco, or Guaymas, Sonora"); *Pelleport Investors, Inc. v.*

*Budco Quality Theatres, Inc.*, 741 F.2d 273, 279 (9th Cir. 1984) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972), and applying the principles of *The Bremen* to domestic, commercial contracts).

The Court need not accept as true TCC's conclusory venue allegation if it is contradicted by the facts TCC pleads, including the documents attached to and incorporated into the FAC. *Spradlin v. Lear Siegler Management Servs. Co., Inc.*, 926 F.2d 865, 868 (9th Cir. 1991) (enforcing forum selection clause and dismissing complaint under 12(b)(3)); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2000) (dismissal warranted because arbitration award attached to complaint contradicted racial discrimination claim).

Enforcement of a forum selection clause can take the form of dismissal or transfer, pursuant to 28 USC § 1406(a), to another district court where the plaintiff originally could have brought the case. As explained below, "the interests of justice" here warrant dismissal rather than transfer.

### B.      The License Agreement Contains A Mandatory Forum Selection Clause

A mandatory forum selection clause either specifies venue with mandatory language or uses "some further language indicating the parties' intent to make the jurisdiction exclusive." *Docksider, Ltd. v. Sea Technology, Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989) (holding that provision stating "Venue of any action brought hereunder shall be deemed to be in Gloucester County, Virginia" was a mandatory forum selection clause entitled to enforcement). The License Agreement forum selection clause does both. It specifies **exclusive jurisdiction** in particular counties in California and explicitly states that the parties agree to venue **only** in those courts.[3] FAC ¶13, Exh. C, §O. *Docksider, Ltd.*, 875 F.2d at 763.

---

[3]    The forum selection clause in the Services Agreement is also mandatory and requires jurisdiction in either the same California courts as specified by the License Agreement, or in Alaska. FAC ¶13, Exh. E, §M.

Memorandum in Support of Defendant's Motion to (1) Dismiss or Transfer for Improper Venue Or, In The Alternative, (2) Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

*Dena;Nena'Henash, Inc., et al v. Oracle Corp.* Case No. 4:06-cv-00006 RRB                    Page 11

When TCC signed the License Agreement, it expressly agreed that it would bring "any dispute arising out of or relating to" that agreement in California.  FAC ¶13, Exh. C, §O; *see Argueta*, 87 F.3d at 325.  As shown next, TCC's claims do indeed arise out of and relate to the License Agreement.  Because they do, and because a mandatory, enforceable, forum selection clause restricts venue of those claims to "the courts in San Francisco, San Mateo, or Santa Clara counties in California," the Court should dismiss for improper venue.

### C.    The Forum Selection Clause Extends To All Claims, Even If Nominally Unpled Or Sounding In Tort

A contractual forum selection clause, such as the one found in the License Agreement "can be equally applicable to contractual and tort causes of action" depending "on whether resolution of the claims relates to interpretation of the contract."  *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (holding contractual forum selection clause governed plaintiff's tort allegations).  When claims "relate[] in some way" to a contract and those claims "cannot be adjudicated without analyzing whether the parties were in compliance with the contract," they are within the scope of the forum selection clause.  *Id.*; *see also Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433 (N.D. Cal. 1997) (transferring case pursuant to forum selection clause in services agreement, even though plaintiff alleged no breach of that contract, because copyright infringement claims "related to" the professional services agreement for computer programming work).  TCC's claims relate to the License Agreement and thus fall within the scope of the License Agreement forum selection clause in two ways:  (1) under the "gist of the action" doctrine, the Court should read TCC's allegations to require an application and interpretation of the License Agreement; and (2) TCC's fraud and other tort claims relate directly to the License Agreement warranty, limitation of liability, and damages provisions.

### 1. The Gist Of TCC's Action Includes A Claim Under, Or Relating To, The License Agreement

TCC cannot defeat the License Agreement forum selection clause "by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Weingrad v. Telepathy, Inc.*, 2005 WL 2990645, at *4 (S.D.N.Y. 2005) (dismissing complaint for improper venue because plaintiff's complaint for trademark and trade name infringement, unfair competition, and dilution related to unpled contract between the parties); *see also Government Computer Sales, Inc. v. Dell Marketing, L.P.*, 2005 WL 1713182, at *2 (D. Alaska) (unpled contracts nevertheless "'integral' to the parties' dispute because they constitute the 'core of the parties' contractual relationship'").

TCC attempts to artfully evade the License Agreement forum selection clause, but ultimately it permeates the FAC with warranty claims, and related damages, that directly implicate the License Agreement. These allegations explicitly relate to TCC's license of Oracle software programs, the warranty (and warranty restrictions) applicable to those programs, the liability owed by Oracle to TCC for the performance of those programs, and the damages to which TCC is entitled for breach of those warranties.

For example, TCC brings this action "because the underlying software release licensed to TCC was incapable of providing the required functionality." FAC ¶20. TCC further alleges that it still does not have a "complete and fully functioning system"; TCC complains that, as purchased, "the system had extremely limited functionality" and that the "Grants module had little or no ability to generate reports." FAC ¶¶15, 18. TCC further complains that, when the system arrived, it was not fully integrated, it did not meet TCC's needs, and it required customization that TCC originally was told would be unnecessary. FAC ¶16. The "gist" of these allegations is that Oracle breached the License Agreement warranty.

Further, although TCC does not specifically bring a cause of action for breach of the License Agreement, it attempts to plead the elements of one and claims the damages that

would result from one. TCC alleges: the existence of the License Agreement [FAC ¶13], Oracle's alleged failure to perform under the License Agreement [FAC ¶¶15, 16, 18, 20], that TCC fully performed its obligations under the License Agreement [FAC ¶28], and damages resulting from Oracle's alleged breach of the License Agreement [FAC ¶¶14, 21; Prayer for Relief 5]. These allegations directly arise under or relate to the License Agreement because, among other things, they require application and interpretation of the warranty, liability and damages limitations. In addition, TCC expressly "reserves its rights" to assert additional purported contract (and fraud) claims relating to the incomplete "Phase Two" of the contract that TCC warns also involve "representations regarding functionality, cost, and the time required to complete Phase Two." FAC ¶10(h). Because these allegations relate to the heart of the License Agreement, which contains the warranty and warranty restrictions regarding product functionality, the forum selection provision of the License Agreement governs them.

### 2.    TCC Alleges Tortious Conduct Relating To The License Agreement

Contractual forum selection clauses control the venue of related fraud claims: "[A] dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance." *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004) (affirming district court dismissal of fraud claims against certain defendants based on a contract's forum selection clause that designated venue in Bermuda).

TCC's fraud, constructive fraud and Alaska Unfair Trade Practices Act claims, and the factual allegations that support them, directly allege fraudulent conduct relating to the License Agreement. For example, TCC alleges that Oracle promised its "software provided the functionality that TCC required." FAC ¶10(a); *see also* FAC ¶10(b) (TCC's use of Oracle software would result in a "higher quality of services" for TCC); FAC ¶10(c) ("Oracle repeatedly assured TCC that its software could provide all of the functionality needed by TCC."); FAC ¶10(d) (Oracle misrepresented that various software modules were fully integrated); FAC ¶10(h)

(representations regarding functionality in extending software capabilities to TCC's tribal members).

The FAC also alleges that Oracle misled TCC by claiming the software could meet TCC's needs without customization, and allegedly represented that "Tanana Chiefs Conference's requirements are addressed by Oracle's **standard functionality**." FAC ¶10(a) (emphasis supplied). TCC alleges "They stated that Oracle's 'out of the box' software had the required functionality, including the ability to provide requested reports, to calculate and properly apply the proper indirect rates, to exchange data between the purchased modules, and to otherwise manage and control TCC's organization. They said that no customizations would be necessary." FAC ¶10(c).

TCC alleges that it relied on misrepresentations concerning the software functionality (identified above) and other misrepresentations in entering into the License Agreement. FAC ¶11 ("Each of these representations was important to TCC's decision to choose Oracle. Each of these representations was relied upon in making the decision to purchase Oracle software."); FAC ¶12 (TCC relied on Oracle "in selecting the Oracle software as the system which would best meet its needs."); FAC ¶¶36-38.

TCC's constructive fraud claim also spans both the License Agreement and the Services Agreement, alleging as its basis "misrepresentations regarding its **goods** and services" as set forth in its complaint. FAC ¶45 (emphasis supplied).

Similarly the Alaska Unfair Trade Practices Act claim relies on the fraudulent and/or misleading conduct relating to both the License Agreement and the Services Agreement. FAC ¶49.

TCC's allegations – in the third, fourth, fifth and sixth claims for relief – that Oracle fraudulently induced it to execute the License Agreement clearly relate to the License Agreement. FAC ¶¶37-38, 41-42, 45, 49. As a result, the License Agreement forum selection clause governs these allegations and claims.

**D.    The Court Should Dismiss, Not Transfer, The Entire Action**

As demonstrated above, TCC brought this case in an improper forum.  TCC entered into a presumptively binding and valid set of agreements that, between them, permit venue only in three California counties for claims that arise out of and relate to both contracts. The FAC directly and indirectly alleges claims that arise under or relate to both contracts. Accordingly, TCC must proceed, if it can otherwise state a claim upon which relief may be granted, in the only venue permitted by both contracts:  California.  The remaining question is whether this Court should dismiss this action or transfer it.  The Court should dismiss, and not transfer, for two reasons.

First, and independently dispositive, the forum selection clause in the License Agreement gives TCC the option to sue in either state or federal court in California.  FAC ¶13, Exh. C, §O.  In that situation, a Court should not presume the plaintiff's preferred permissible forum and should dismiss to allow the plaintiff to make that choice.  *GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.*, 198 F.R.D. 402, 409 (S.D.N.Y. 2001) (dismissal proper because transfer to the federal district court would have "deprive[ed] plaintiff of its right under the forum selection clause of [the] contract to bring suit in either state or federal court").[4]

Second, dismissal is justified when, as here, the venue provision is unambiguous and the plaintiff's "mistake" in filing in the wrong venue imposed unnecessary costs on the opposing party and on the judicial system.  *Continental Ins. Co. v. Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (affirming district court's dismissal because "[t]here was nothing obscure" about the proper forum and therefore filing in an improper venue was "an obvious mistake made by a

---

[4]  However, should the Court choose to transfer rather than dismiss this action, Oracle requests a transfer to the Northern District of California.  This action "could have been brought," and venue is proper in, the Northern District of California because that Court has subject matter jurisdiction, it has divisions located within both San Francisco and Santa Clara counties in California pursuant to the forum selection clauses of both the License Agreement and the Services Agreement, and Oracle is subject to personal jurisdiction and amenable to service of process in that district.  *Shapiro v. Bonanza Hotel Co.*, 185 F.2d 777, 780 (9th Cir. 1950).

sophisticated party with representation"). TCC understands the License Agreement, which it discussed at length in, and even incorporated into, the FAC. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) ("[T]he general rule is that one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument."). Thus, TCC had full awareness of the forum selection clause requiring venue of contract-related disputes in California and cannot complain about it now.

## IV.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS TCC'S THIRD, FOURTH, FIFTH, AND SIXTH CLAIMS FOR FAILURE TO STATE A CLAIM

If the Court finds that TCC has improperly venued this case in Alaska, and dismisses or transfers the action on that basis, it need not reach Oracle's alternative motion to dismiss. However, if the Court determines that venue in Alaska is proper, Oracle moves to dismiss the fraud, negligent misrepresentation, constructive fraud, and Alaska Unfair Practices Act claims for failure to state a claim, as set forth below.

### A.    Legal Standard Under Rule 12(b)(6)

The Court should dismiss the Third, Fourth, Fifth and Sixth Claims if "it appears beyond doubt that [TCC] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997). The dismissal can be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Vignolo*, 120 F.3d at 1077. The Court need not accept all conclusions asserted in the complaint as true; rather, it "will examine whether the conclusory allegations follow from the description of facts as alleged by the plaintiff." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (*quoting Brian Clewer, Inc. v. Pan American World Airways, Inc.*, 674 F. Supp. 782, 785 (C.D. Cal. 1986)).

**B.    The Third Claim For Fraud And Fourth Claim for Negligent Misrepresentation Each Fails To State A Claim**

TCC alleges nine misrepresentations.  Each fails as a matter of law because each violates one or more of three separate rules applicable to fraud pleadings.[5]

**1.    Fraud Allegations Must Satisfy Three Rules**

TCC's fraud claim alleges affirmative, fraudulent misrepresentations.  To state a claim, these alleged misrepresentations must satisfy three related rules:

First, TCC must plead the elements of fraud with particularity and "with a high degree of meticulousness."  *Bank of the West v. Valley Nat. Bank of Arizona*, 41 F.3d 471, 476 (9th Cir. 1994); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000).  This means that fraud allegations must set forth facts to specify "the who, what, when, where, and how" of the misconduct charged.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997)).  To meet this standard, TCC must also "set forth what is false or misleading about a statement, and why it is false."  *Vess*, 317 F.3d at 1106 (quoting *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

Second, the alleged fraudulent statement, even if specific, must have a meaning that is "so universally accepted that it is the only possible meaning and that a reasonable person could not understand the term to mean anything else."  *Lum v. Bank of America*, 361 F.3d 217, 226 (3d Cir. 2004) (no fraud where plaintiff's claim "boils down to a disagreement about the meaning of the term 'prime rate'").  When "it is reasonable for the parties to have different understandings" of the meaning of a representation, then it cannot form the basis of a fraud claim.  *Id.* at 228.

---

[5]  Because negligent misrepresentation is a species of fraud, the fourth claim for relief fails for the same reasons as the third claim for fraudulent misrepresentation.  *Wessa v. Watermark Paddlesports, Inc.*, 2006 WL 1418906, at *2-3 (W.D. Wash. 2006) (plaintiffs' allegations of fraudulent inducement and negligent misrepresentation both fail under heightened Rule 9(b) pleading standard).

Third, TCC must allege statements that it could have reasonably relied upon. *Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996) (applying California law) (proving a false representation and justifiable reliance are indispensable elements of fraud); *Lee v. Armstrong*, 798 P.2d 84, 87 (Mont. 1990) (fraud requires proving "falsity of the representation" and reliance and a right to reliance). Demonstrably vague, subjective statements made during a sale constitute "puffery" and may not survive a motion to dismiss. *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399-1400 (E.D. Cal. 1994) (dismissing Lanham Act claim for false statements made in advertising); *see also Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that Coastal was "too small" to handle Shearson's business was exactly the kind of "puffery" that does not qualify as a statement of fact capable of being proved false).

Each of TCC's allegations fails to meet one or more of these standards.

## 2. TCC's Fraud Allegations Lack The Requisite Specificity And Certainty, And/Or Amount To Puffery

TCC alleges nine supposed fraudulent misrepresentations in paragraphs 10 and 22 of the FAC. FAC ¶36 ("Oracle made numerous fraudulent misrepresentations to TCC, including those set forth in paragraphs 10 and 22 above."). Each suffers from one or more fatal defects.

First, TCC alleges that "Oracle's written proposal falsely claimed '[c]ompressed time frames are achievable because Tanana Chiefs Conference's requirements are addressed by Oracle's standard functionality . . . .'" FAC ¶10(a). This allegation fails the Rule 9(b) standard because TCC does not state the requirements or explain how Oracle's software failed to meet them. *Vess*, 317 F.3d at 1106. It also fails the *Lum* standard. The term "compressed time frames" is impermissibly vague and susceptible to different reasonable meanings. *Lum*, 361 F.3d at 226. Finally, for the same reason, the statement is clear puffery and incapable of being proved false. *Coastal Abstract*, 173 F.3d at 731; *Pinnacle Systems, Inc. v. XOS Technologies, Inc.*, 2003 WL 21397845, at *5-6 (N.D. Cal. May 19, 2003); *Haskell*, 857 F. Supp. at 1399-1400.

Second, TCC alleges that Oracle misrepresented that "it felt 'confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services through the implementation of this solution.'"  FAC ¶10(b).  This allegation fails the Rule 9(b) standard because TCC does not allege with particularity who at Oracle said what, when, and where and to whom it was stated at TCC.  *Vess*, 317 F.3d at 1106.  Finally, this statement constitutes vague and subjective puffery that is incapable of being proven false.  *Coastal Abstract*, 173 F.3d at 731.

Third, TCC alleges that Oracle repeatedly assured TCC – through unnamed representatives – that its software "could provide all of the functionality needed by TCC."  FAC ¶10(e).  This allegation fails the Rule 9(b) standard because TCC does not allege with particularity who at Oracle said what, when, and where and to whom it was stated at TCC.  *Vess*, 317 F.3d at 1106.  TCC only alleges that these misrepresentations were in Oracle's "proposal" (without specifying if it intends by that reference to include Oracle's written response to the RFP, statements made in subsequent negotiations, both or neither) and "through its representatives."  FAC ¶10(c).  TCC also fails to allege who within its own organization received this information and does not explain what it understood the statement to mean.  *Vess*, 317 F.3d at 1106.  In addition, TCC never explains what functionality it required or why the statement is false.

Fourth, TCC alleges that unnamed Oracle representatives "falsely stated that Oracle's HR, Payroll, Benefits and Grants modules were fully integrated."  FAC ¶10(d).  This allegation fails the Rule 9(b) standard because TCC does not allege with particularity who at Oracle said what, when, and where and to whom it was stated at TCC.  *Vess*, 317 F.3d at 1106.

Fifth, TCC alleges that unnamed Oracle representatives "assured TCC that the implementation could be fully completed within 90 days, and otherwise provided projected go-live dates that were not, and could not have been met."  FAC ¶10(e).  This allegation fails the Rule 9(b) standard because TCC does not allege with particularity who at Oracle said what,

when, and where and to whom it was stated at TCC, or why it believes these undefined go-live dates "could not have been met." *Vess*, 317 F.3d at 1106.

Sixth, TCC alleges that unnamed Oracle representatives "falsely stated that it would be able to accomplish the implementation within a specified budget." FAC ¶10(f). This allegation fails the Rule 9(b) standard because TCC fails to allege with particularity who at Oracle said what, when, and where and to whom at TCC it was stated. In addition, TCC fails to specify any budget or otherwise explain how this statement is false. *Vess*, 317 F.3d at 1106.

Seventh, TCC alleges that unnamed Oracle representatives stated "there would be a 'substantial cost savings to TCC' from a time and materials contract and that since the project was a 'fairly predictable, basic flows implementation,' a time and materials contract was 'in TCC's best interest.'" FAC ¶10(g). This allegation fails the Rule 9(b) standard because TCC fails to explain why the statement is false, and does not allege with particularity who at Oracle said what, when, and where and to whom it was stated at TCC. *Vess*, 317 F.3d at 1106. This allegation also fails the *Lum* standard because it contains vague terms that have multiple, reasonable meanings. *Lum*, 361 F.3d at 226. Finally, stating that its offering was "fairly predictable" and "in TCC's best interest" constitutes vague and subjective puffery that is not actionable as a fraudulent statement. *Coastal Abstract*, 173 F.3d at 731.

Eighth, TCC alleges that unnamed Oracle representatives made "representations regarding functionality, cost, and the time required to complete Phase Two." FAC ¶10(h). This allegation fails the Rule 9(b) standard because TCC does not allege with particularity who at Oracle said what, when, and where and to whom it was stated at TCC. *Vess*, 317 F.3d at 1106. In addition, TCC admits that Oracle has not completed "Phase Two," and has otherwise not explained why these statements, even if made, have ripened into actionable misrepresentations.

With respect to all of these eight alleged misrepresentations, TCC also further alleges that as a group, "[e]xcept to the extent these misrepresentations were contained in written materials, they were made by members of Oracle's sales team and others who attempted to

persuade TCC to use Oracle's software and services."  TCC then lists eight, undifferentiated individuals without explaining which of the said what to whom.  FAC ¶11.  Far from providing the requisite specificity, this allegation makes it doubly impossible to tie any alleged falsehood to any specific person at any given time and in any given place.  Paragraph 11 exacerbates TCC's Rule 9(b) problem by creating an almost infinite number of possible permutations, rather than the required specific allegations.

Finally, ninth, TCC alleges that "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties" in representing that "the implementation was almost complete."  FAC ¶22.  This alleged statement is vague and susceptible to different, reasonable meanings, and thus cannot constitute a fraudulent misrepresentation.  *Lum*, 361 F.3d at 226.

For the Court's convenience, Oracle has summarized the pleading defects that apply to each of TCC's alleged misrepresentations in the following chart:

| Alleged Representation | Lacks particularity under Rule 9(b) | Incapable of precise meaning under *Lum*, 361 F.3d at 226 | Vague and subjective puffery under *Coastal*, 173 F.3d at 731 |
|---|:---:|:---:|:---:|
| "Oracle's written proposal stated '[c]ompressed time frames are achievable because Tanana Chiefs Conference's requirements are addressed by Oracle's standard functionality . . .'"  FAC ¶10(a). | ✓ | ✓ | ✓ |
| Oracle misrepresented that "it felt 'confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services through the implementation of this solution.'"  FAC ¶10(b). | ✓ | | ✓ |
| Oracle repeatedly assured – through unnamed representatives – that its software "could provide all of the functionality needed by TCC."  FAC ¶10(c). | ✓ | | |
| Unnamed Oracle representatives "falsely stated that Oracle's HR, Payroll, Benefits and Grants | | | |

| | | | |
|---|:---:|:---:|:---:|
| modules were fully integrated." FAC ¶10(d). | ✓ | | |
| Unnamed Oracle representatives "assured TCC that the implementation could be fully completed within 90 days, and otherwise provided projected go-live dates that were not, and could not have been met." FAC ¶10(e). | ✓ | | |
| Unnamed Oracle representatives "falsely stated that it would be able to accomplish the implementation within a specified budget." FAC ¶10(f). | ✓ | | |
| Unnamed Oracle representatives stated "there would be a 'substantial cost savings to TCC' from a time and materials contract and that since the project was a 'fairly predictable, basic flows implementation,' a time and materials contract was 'in TCC's best interest.'" FAC ¶10(g). | ✓ | ✓ | ✓ |
| Unnamed Oracle representatives made "representations regarding functionality, cost, and the time required to complete Phase Two." FAC ¶10(h). | ✓ | | |
| "Oracle made additional misrepresentations to TCC following the execution of the agreements between the parties" in stating "the implementation was almost complete." FAC ¶22. | ✓ | ✓ | |

For these reasons, the Court should dismiss the third and fourth claims for relief for failure to state a claim upon which relief should be granted under Rule 12(b)(6).

**C.    The Fifth Claim for Constructive Fraud Fails to State a Claim**

TCC's constructive fraud claim implicates both contracts and therefore could conceivably arise under either Montana (Services Agreement) or California (License Agreement) law. It fails under both.

Under Montana law constructive fraud can arise from (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or (2) any such act or omission as the law especially declares to be fraudulent. MT

ST 28-2-406.[6]  Under California law, the existence of a fiduciary or confidential duty is a required element to prove a claim for constructive fraud.  *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 415 (2000) (holding that "[c]onstructive fraud is a unique species of fraud applicable only to a fiduciary or confidential relationship").

TCC claims that Oracle owed a "duty" to TCC, as required under both Montana and California law, only because "due to the trust imposed in Oracle by TCC, a fiduciary relationship arose" between them.  FAC ¶45.  The Court may disregard this legal conclusion if it does not follow from the alleged facts.  *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (affirming dismissal under Rule 12(b)(6) and holding that plaintiffs merely stated a legal conclusion without pleading any facts in support of that conclusion).  Thus, under both Montana and California law, if the FAC does not support the fiduciary duty allegation, the constructive fraud claim must fail as a matter of law.

Under Montana and California law, a traditional, arm's length commercial relationship does not create a fiduciary obligation.  *See Recorded Picture Company Productions Ltd. v. Nelson Entertainment, Inc.*, 53 Cal. App. 4th 350, 369-71 (no fiduciary relationship arose between parties to a distribution contract negotiated at arm's length); *Bacon v. Soule*, 19 Cal. App. 428, 433-35 (1912) (pleaded facts must, as a matter of law, show the existence of a fiduciary relationship between the parties to support a claim of constructive fraud, and holding no fiduciary relationship existed where one party did not voluntarily assume a relation of personal confidence towards another, such as is traditionally found between partners, principal and agent, guardian and ward, or counsel and client); *Pulse v. North Am. Land Title Co.*, 707 P.2d 1105, 1110 (Mont. 1985) (borrower's interaction with bank was not sufficiently exclusive or repeated to support finding of fiduciary relationship); *Mann Farms, Inc. v. Traders State Bank*, 801 P.2d 73, 76-77 (Mont. 1990) (no fiduciary relationship established between bank and

---

[6]  TCC cannot proceed under the second prong because its fraudulent misrepresentation claim fails.  *See* Sec. IV.C, above.

customer without showing of longstanding and exclusive dealings and actions performed in an advisory capacity, demonstrating a bond beyond the usual arm's length relationship).

TCC's own factual allegations conclusively reveal a sophisticated organization that had only an arm's length, commercial, and not fiduciary relationship with Oracle. TCC admits that it has been in existence for over 40 years, manages 120 separate programs at an annual operating expense exceeding $82 million, and employs approximately 700 people with an annual payroll exceeding $22 million. FAC ¶¶5, 6. TCC also used a "legacy system" at the time it first interacted with Oracle, presumably a database/operations management system. FAC ¶8.

TCC describes a standard commercial interaction. It issued an RFP to several software vendors because TCC had concluded that its legacy system "was neither sufficiently reliable nor otherwise adequate to meet TCC's current and future needs." FAC ¶8. Oracle responded to TCC's RFP in October 2003 and made sales proposals based on Oracle's available software systems and service. FAC ¶10.

The FAC says nothing about longstanding interactions with Oracle that would give rise to a special relationship. FAC ¶¶10-24; *Mann Farms, Inc.*, 801 P.2d at 76-77; *Bacon*, 19 Cal. App. at 433-35. TCC never states that it had reason to believe that Oracle was acting in TCC's best interests rather than its own or that Oracle had an obligation to do so. *See Dunfee v. Baskin-Robbins, Inc.*, 720 P.2d 1148, 1151 (Mont. 1986) (holding that court's instructions regarding fiduciary duty were not clearly erroneous). TCC does not plead facts to indicate that Oracle exercised some measure of control over TCC's affairs, or that Oracle acted as TCC's agent.

To the contrary, TCC agreed to a very different description of its relationship with Oracle. The Services Agreement on which TCC relies (and which it incorporates into its FAC) nicely summarizes TCC own, detailed factual allegations: "*Oracle is an independent contractor and we agree that no partnership, joint venture, or agency relationship exists between us.*" FAC ¶13, Exh. C, §M (emphasis supplied).

Finally, the Services Agreement gives every indication of a heavily, and separately, negotiated document. The choice of law clause differs from License Agreement, as does the venue clause. Project assumptions specific to each party occupy three pages. The Services Agreement does not look or read like a boilerplate contract of adhesion and TCC itself does not describe it that way.

Even making all inferences in TCC's favor, TCC describes nothing more than an ordinary interaction between a potential customer and a technology vendor. As a result, the Court should disregard the legal conclusion that Oracle owed any fiduciary duty to TCC. Because that alleged duty is the only basis for the required duty element of TCC's constructive fraud claim, the Court should dismiss that claim as a matter of law.

**D.      The Sixth Claim For Violation Of The UTPA Fails To State A Claim**

The sixth claim fails for two independent reasons:  (1) both the License Agreement and the Services Agreement preclude a claim under Alaska law; and (2) TCC has failed to allege a cognizable fraud claim (which is apparently the basis for its invocation of the UTPA).

**1.      The Two Contracts At Issue In This Case Require The Application Of Either Montana Or California Law**

All of TCC's claims against Oracle arise out of or relate to either the Services Agreement or the License Agreement. Neither contract permits claims under Alaska law. (The Services Agreement mandates Montana law, FAC ¶13, Exh. E, §M; the License Agreement requires California law, FAC ¶13, Exh. C, §O). The choice of law clauses bar TCC's sixth claim for violations of the UTPA based on Alaska law.

A choice of law clause in a contract will generally be given effect unless (1) the chosen state has no substantial relationship with the transaction or there is no other reasonable basis for the parties' choice, or (2) the application of the law of the chosen state would be contrary to a fundamental public policy of a state that has a materially greater interest in the issue

and would otherwise provide the governing law.  *Peterson v. Ek*, 93 P.3d 458, 464-465 (Alaska 2004) (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971)).

A reasonable basis exists for the choice of California law in the License Agreement.  California has a substantial relationship to the transaction because Oracle has its principal place of business there, and the state has an interest in adjudicating claims of unfair trade practices brought against its residents.  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466 (1992) (applying RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187:  choice of law clauses should be respected unless enforcement in another state would conflict with a fundamental policy of the current state); *Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1063 (1999) (noting that "California also has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices.").  Oracle also has an obvious interest in protecting its core intellectual property rights, a subject of the License Agreement, through the law of its home state.

A reasonable basis also exists for the choice of Montana law in the Services Agreement:  Montana's analogous unfair business practices statute excludes claims relating to commercial goods and transactions and would therefore preclude the claim that TCC attempts to bring here under the Alaska statute.  MT ST 30-14-102;  *Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48, 52 (Mont. 1996) (Montana unfair trade practices law does not apply to commercial transactions; statute applies to purchases or leases entered into primarily for personal, family, or household uses).  Thus, it makes perfect sense that the parties (and particularly Oracle) would choose to be governed by a state law that exempts this transaction from the reach of its unfair business practices statute.  The Court should not permit TCC to evade this choice of law provision and bring a claim based on UTPA.  *A.G. Edwards & Sons, Inc. v. Smith*, 736 F. Supp. 1030, 1035 (D. Ariz. 1989) ("It would be disingenuous to allow plaintiff to disregard its own choice of law provision whenever plaintiff believes it would be advantageous to do so.").

Courts routinely dismiss claims under an unfair business practices statute when the underlying contract between the parties dictates a different state's law. *See Medimatch, Inc. v. Lucent Techs., Inc.,* 120 F. Supp. 2d 842, 862 (N.D. Cal. 2000) (holding that the agreement that "construction, interpretation and performance of this Agreement shall be governed by the local laws of the State of New Jersey" required dismissal of California unfair competition law claims). This is especially true when the disputed conduct arose from the contractually-created relationship between the parties. *See Continental Airlines, Inc. v. Mundo Travel Corp.,* 412 F. Supp. 2d 1059, 1065 (E.D. Cal. 2006) (dismissing unfair competition claim and holding that a contractual provision providing that the contract is "governed by" the laws of a certain forum reflects the parties' "clear contemplation that the agreement is to be completely and absolutely controlled by the law of the chosen jurisdiction"). This Court should do the same.

## 2. The UTPA Claim Also Fails Because TCC Has No Fraud Claim

The sixth claim also fails for a separate and independent reason. In support of its claim, TCC has said only that "The statements made by Oracle's representatives, ***detailed above*** . . .were fraudulent and/or misleading in whole or in part, and constitute 'unfair or deceptive acts or practices'" under the UTPA. FAC ¶49 (emphasis supplied). It appears, therefore, that TCC relies on AS 45.50.471(b)(11) or (12), based on the same fraud claim that TCC pleads in its third claim for relief.[7] Accordingly, for the same reasons set forth above that require dismissal of the fraud claim, the Court should dismiss the UTPA claim because TCC has not adequately pleaded fraud.

---

[7] AS 45.50.471(b)(11): provides that it is an unfair trade practice to engage in conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives, or damages a buyer or competitor in connection with the sale or advertisement of goods or services; (b)(12) provides that it is an unfair trade practice to use or employ deception, fraud, false pretense, false pretense, false promise, misrepresentation, or knowingly conceal, suppress, or omit a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged.

## V.    CONCLUSION

For the foregoing reasons, Oracle respectfully requests that this Court dismiss the entire action for improper venue; or, in the alternative, dismiss the Third, Fourth, Fifth and Sixth Claims for Relief.

Dated this 21st day of August, 2006.

Abigail L. Ramsden
Geoffrey M. Howard
Sivan Gai
BINGHAM MCCUTCHEN

David E. Garret
ORACLE USA, INC.

Jeffrey M. Feldman
FELDMAN ORLANSKY & SANDERS


By: s/ Jeffrey M. Feldman
Jeffrey M. Feldman
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, Alaska 99501
Telephone:    (907) 272-3538
Facsimile:    (907) 274-0819
Email:        feldman@frozenlaw.com
[Alaska Bar No. 7605029]

Attorneys for Defendant
Oracle Corporation

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of August, 2006, copies of

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO (1) DISMISS OR TRANSFER FOR IMPROPER VENUE [F.R.C.P. 12(b)(3); 28 U.S.C.§ 1406(a)] OR, IN THE ALTERNATIVE, (2) DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [F.R.C.P. 12(b)(6); F.R.C.P. 9(b)]**

were served electronically on: Jahna M. Lindemuth and Paul Dieseth, and mailed to: Peter Sipkins.

<u>s/ Jeffrey M. Feldman</u>