Westlaw.

Slip Copy                                                                                           Page 1

Slip Copy, 2005 WL 2990645 (S.D.N.Y.)
**(Cite as: Slip Copy)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Stephen A. WEINGRAD and Weingrad &
Weingrad, P.C. d/b/a Weingrad & Weingrad,
Plaintiff,
v.
TELEPATHY, INC., Network Solutions, Inc., and
Namebay S.A.M. Defendant.
**No. 05 Civ.2024(MBM).**

Nov. 7, 2005.

Stephen A. Weingrad, Weingrad & Weingrad, New York, New York, for Plaintiff.
Michael A. Freeman, Law Office of Michael A. Freeman, New York, New York, for Defendant Telepathy, Inc.
John B. Berryhill, Dan Dorfman Harell Skillman, Philadelphia, PA, for Defendant Telepathy, Inc.
Harold S. Shaftel, Proskauer Rose, New York, New York, for Defendant Snapnames.com, Inc.
Shari Claire, Shari Claire, Rivkin Radler Uniondale, New York, for Defendant Network Solutions, Inc.

OPINION & ORDER
MUKASEY, J.
*1 Plaintiffs Stephen Weingrad and Weingrad & Weingrad, P.C. sue Telepathy, Inc., Network Solutions, Inc., Snapnames.com, Inc. and Namebay S.A.M. alleging trademark infringement, trade name infringement, unfair competition, and dilution under New York state law. Additionally, Plaintiffs allege false designation of origin and competition under § 43 of the Lanham Act, 15 U.S.C. § 1125(a) (2000), dilution under § 43 of the Lanham Act, 15 U.S.C. § 1125(c), violations of the Anticybersquatting and Consumer Protection Act, 15 U.S.C. § 1129, and fraud under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1343, 1961(1) and 1961(5) ("RICO"). Plaintiffs also sue defendant Network Solutions alleging deceptive business practices under New York General Business Law § 349. Network Solutions moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(3) and 12(b)(6) for improper venue and failure to state a claim upon which relief may be granted. Telepathy moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue and moves to transfer the action to the United States District Court for the Eastern District of Virginia under 28 U.S.C. § 1404. Snapnames.com moves to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) and 9(b) for failure to state a claim upon which relief may be granted and failure to plead with the required specificity. For the reasons set forth below, Network Solutions' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(3) for improper venue is granted, and the complaint is dismissed in its entirety against all defendants.

I.

Stephen Weingrad practices law under his own name and the partnership name Weingrad & Weingrad, P.C. (Compl.¶ 10). He registered the domain name weingrad.com with Network Solutions on October 9, 1997, and used it as the location of a web site to advertise his legal practice from 1997 until 2004. (Compl.¶ 10, 20, 23) Network Solutions is a domain name registrar, meaning it issues domain names to people and entities; these names enable such registrants to create and maintain publicly accessible Internet web sites. (Compl.¶ 20)

Network Solutions notified Weingrad that the registration of weingrad.com would expire on October 5, 2004, and that Weingrad would lose his web site location on the Network Solutions registry unless he paid a renewal fee of $35. (Compl.¶ 23, Compl.Exs.6, 8) Weingrad did not pay the required renewal fee nor did he contact Network Solutions in reference to his domain name before the October 5

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit 3

Slip Copy                                                                                                                       Page 2

Slip Copy, 2005 WL 2990645 (S.D.N.Y.)
**(Cite as: Slip Copy)**

deadline. (Compl.¶ 23, 25) On October 12, 2004, Weingrad hired GoDaddy.com, a different domain name registrar, to transfer the registration of the weingrad.com domain name from Network Solutions to GoDaddy.com. (Compl.¶ 24) On November 9, 2004, Weingrad requested a status check on the transfer of weingrad.com from Network Solutions and was told that weingrad.com was still "pending renewal or deletion" even though the domain name's registration had expired more than a month prior. (Compl.¶ 25) On November 10, 2004, Weingrad placed a back order for weingrad.com with GoDaddy.com authorizing GoDaddy.com to retrieve the domain name weingrad.com for registration once it was released by Network Solutions. (Compl.¶ 26) On November 22, 2004, Weingrad contacted GoDaddy.com and he was informed that weingrad.com was not retrievable on any domain name registry. (Compl.¶ 28).

*2 Network Solutions contacted Weingrad on November 22, 2004, via email, stating that it would transfer weingrad.com to another registrar for $150, which is the standard fee Network Solutions charges to recapture and transfer a domain name from its registry during the 30 days after that domain name's registration has expired. (Compl.¶ 32, Compl.Ex. 12) Weingrad chose not to pay Network Solutions' transfer fee. (Compl ¶ 32) On November 23, 2004, Weingrad received an email from Network Solutions stating that it declined to transfer weingrad.com and GoDaddy.com informed Weingrad that weingrad.com was not available for registration. (Compl.¶ 29, 30) On December 17, 2004, Weingrad received an email from GoDaddy.com again stating that weingrad.com could not be retrieved. (Compl.¶ 34) On December 18, 2004, Weingrad received an email from GoDaddy.com informing him that the registrar of weingrad.com was now Namebay and it was on the Telepathy server. (Compl.¶ 35) On December 28, 2004, in response to an inquiry by Weingrad, GoDaddy .com stated that weingrad.com was not available for registration. (Compl.¶ 36)

On or about December 30, 2004, Weingrad inquired by email to Telepathy how it came to possess the weingrad.com domain name. (Compl.¶ 16) Nat Cohen, a Telepathy officer, replied that Telepathy purchased weingrad.com at a domain name auction to use in its service of offering email addresses at "last name domains" and weingrad.com was available for sale for $300. (Compl.¶ 16, 17, 37) Weingrad believes Telepathy bought weingrad.com from Snapnames at a domain name auction. (Compl.¶ 38) On January 19, 2005, Weingrad telephoned Telepathy and left a message for Cohen and also sent him a certified letter inquiring about the status of weingrad.com. (Compl. ¶ 17, 18) On January 20, 2005, Cohen responded by email to Weingrad and stated that weingrad.com was no longer for sale. (Compl.¶ 19) On January 20, 2005, Weingrad sent a letter to namebay.com stating that he was the rightful owner of weingrad.com. (Compl.¶ 42) Namebay.com responded that weingrad.com was on "active" status and that Weingrad could transfer the domain name by contacting the "gaining registrar's website." (Compl.¶ 42)

Weingrad believes that Network Solutions and Snapnames intentionally performed "some act upon the Web address" to defeat GoDaddy.com's efforts to register weingrad.com so that it could be registered by Telepathy and Namebay. (Compl.¶ 68) Weingrad now uses the domain name weingradlaw.com to advertise his legal services on the Internet. (Compl.¶ 75)

In 1997, Weingrad signed a Registration Agreement with Network Solutions in order to acquire weingrad.com, which stated:
Governing Law: Registrant agrees that this Registration Agreement shall be governed in all respects by and construed in accordance with the laws of the Commonwealth of Virginia, United States of America. By submitting this Registration Agreement, Registrant consents to the exclusive jurisdiction of the venue of the United States District Court for the Eastern District of Virginia, Alexandria Division. If there is no jurisdiction in the United States District for the Eastern District of Virginia, Alexandria Division, then jurisdiction shall be in the Civil Court of Fairfax County, Fairfax, Virginia. (Compl.Ex. 4)

*3 Additionally, the Network Solutions Service

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                                Page 3

Slip Copy, 2005 WL 2990645 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Agreement, which Weingrad assented to by selecting the accept button on his computer screen in 2003, stated that "any disputes hereunder including disputes related to the services provided" will be governed by Virginia law and that the registrant agrees "to submit to exclusive subject matter jurisdiction, personal jurisdiction and venue of the United States District Court for the Eastern District of Virginia, Alexandria Division." (Network Solutions Ex. C)

II.

Weingrad's claims against Network Solutions fall within the forum selection clauses he consented to in the Registration Agreement and the Service Agreement. Therefore, the complaint must be dismissed for improper venue as it was not brought in the United States District Court for the Eastern District of Virginia or the Civil Court of Fairfax County, Virginia.

Although the proper procedural method for requesting a dismissal based on a forum selection clause remains an open question in the Second Circuit, prior cases have held that one proper method is to move under Rule 12(b)(3), Fed.R.Civ.P., as was done here. *See New Moon Shipping Co., Ltd. v. Man B & W Diesel AG,* 121 F.3d 24, 28-29 (2d Cir.1997); *Lurie v. Norwegian Cruise Lines, Ltd.,* 305 F.Supp.2d 352, 356 (S.D.N.Y.2004). Furthermore, despite the Second Circuit's decision not to adopt a particular procedural device for seeking dismissal based on a forum selection clause, the Court has been clear that a district court has the authority to order such a dismissal. *New Moon Shipping Co.,* 121 F.3d at 28; *Lurie,* 305 F.Supp. at 356.

The Second Circuit "gives substantial deference to [forum selection] clauses, particularly where 'the choice of forum was made in an arms length negotiation by experienced and sophisticated businessmen.' " *New Moon Shipping Co.,* 121 F.3d at 29 (quoting *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12 (1972)). On its face, the forum selection clause in both the Registration Agreement and the Service Agreement is mandatory rather than permissive; the language reflects " 'the parties' intent to make jurisdiction exclusive." ' *John Boutari & Son v. Attiki Importers,* 22 F.3d 51, 52-53 (2d Cir.1994) (quoting *Docksider, Ltd. v. Sea Tech., Ltd.,* 875 F.2d 762, 764 (9th Cir.1989)).

The contract between Network Solutions and Weingrad expired before Weingrad tried to transfer weingrad.com from Network Solutions to GoDaddy.com. However, contrary to Weingrad's assertions, parties to a contract are bound by that contract's forum selection clause even after the contract has expired, where, as here, the plaintiff's claims involve rights arising out of the contract and the entire business relationship between the parties stems from that contract. *AGR Fin., LLC v. Ready Staffing, Inc.,* 99 F.Supp.2d 399, 402 (S.D.N.Y.2000) (holding forum selection clause in expired agreement governed claims arising out of that contract); *Young Women's Christian Ass'n of the United States of Am. Nat'l Bd. v. HMC Entm't, Inc.,* No. 91 civ. 7943, 1992 WL 279361 (S.D.N.Y. Sept. 25, 1992) (holding that a non-contractual claim was subject to a forum selection clause in an expired contract between plaintiff and defendant, because plaintiff's claims for unfair competition, trademark infringement, misappropriation and implied contract involved rights arising out of the contract and plaintiff and defendant would not have had dealings but for the contract between the two parties). Further, the Service Agreement states that the forum selection clause survives termination or expiration of the agreement. (Network Solutions Ex. C ¶ 29) The forum selection clause is valid and still applicable to claims brought by Weingrad.

*4 If the clause is found to cover the claims in this action, those claims must be dismissed under Rule 12(b)(3) unless there is a clear showing from Weingrad that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *M/S Bremen,* 407 U.S. 1 at 15; *see also New Moon Shipping Co.,* 121 F.3d at 29. Any argument that the forum selection clause is invalid because it was the consequence of fraud, undue influence or overwhelming bargaining power is without merit. Weingrad, an experienced lawyer who set up a web site on behalf of his law partnership, chose to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

register a domain name with Network Solutions, agreed to the Retainer Agreement in 1997, and agreed to the Service Agreement in 2003. He is bound by the terms of the forum selection clause even if he did not take the time to read it because "a signatory to a contact is presumed to have read, understood and agreed to be bound by all terms, including the forum selection clauses, in the documents he or she signed." *Sun Forest Corp. v. Shvili,* 152 F.Supp.2d 367, 382 (S.D.N.Y.2001) (quoting *Orix Credit Alliance, Inc. v. Brown,* No. 93 Civ. 1019, 1994 WL 392240, at *4 (S.D.N.Y. July 27, 1994). The contract Weingrad formed with Network Solutions was not complicated and the one-page Registration Agreement was accompanied by a letter that stated in bold, underlined text that potential registrant's should "carefully review the agreement," which contained the forum selection clause. (Compl.Ex. 4)

Although Weingrad does not mention the Retainer and Service Agreements in his complaint, he relies necessarily on both as the source of his initial right to "own" the weingrad.com domain name and his belief that Network Solutions should have transferred the domain name to GoDaddy.com. A forum selection clause cannot "be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." *Anselmo v. Univision Station Group, Inc.,* No. 92-1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)(quoting *Bense v. Interstate Battery Sys.,* 683 F.2d 718, 720 (2d Cir.1982); *see also Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 209 (7th Cir.1993)("where the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation]." ) (quoting *Coastal Steel Corp v. Tilghman Wheelabrator, Ltd.,* 709 F.2d 190, 203 (3d Cir.1983). The rule has been extended to tort and other claims that
ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the [ ] claims involve the same operative facts as a parallel claim for breach of contract.

Regardless of the differences in terminology, one common thread running through these various formulations is the inquiry whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship.

*5 *Direct Mail Prod. Serv. Ltd. v. MBNA, Corp.,* No. 99-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (citations omitted); *see also Brennen v. Phyto-Riker Pharm., Ltd.,* No. 01-11815, 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002).

Where a forum selection clause applied by its terms to "any suits or causes of action arising directly or indirectly from this agreement," it controlled a federal anti-trust claim premised on allegations that the defendant terminated the contract because the plaintiff refused to participate in a price-fixing plan. *Bense,* 683 F.2d at 720; *see also Roby v. Corp. of Lloyd's,* 996 F.2d 1353, 1361 (2d Cir.1993) (forum selection clause applicable to claims "arising out of" contractual relationship was "not restricted to pure breaches of the contracts containing the clauses" but also covered related securities and antitrust claims). Weingrad notes that a forum selection clause governing "litigation between the parties concerning the alleged breach of this Agreement or the meaning, effect and application and/or interpretation of its terms," did not cover plaintiff's tort claim of fraudulent inducement. *See Bon Jour Group, Ltd. v. Elan Polo, Inc.,* No. 96 Civ. 6705, 1997 WL 401814, at *2 (S.D.N.Y. July 16, 1997). However, the forum selection clauses in both the Registration and Service Agreements are broader then the forum selection clause in *Bon Jour,* and certainly broad enough to cover Weingrad's claims: the Registration Agreement places "exclusive jurisdiction" in Virginia and provides that the agreement is "governed in all respects by Virginia law" the Service Agreement likewise places " exclusive jurisdiction" in Virginia, and provides that "any and all disputes" will be governed by Virginia law. All of Weingrad's claims against Network Solutions "arise out of" the Registration Agreement and Service Agreement as his claims are grounded in his belief that (i) under the Registration Agreement, he owns weingrad.com, and, (ii) under the Service Agreement, Network Solutions was not permitted to release weingrad.com for auction after

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 5
Slip Copy, 2005 WL 2990645 (S.D.N.Y.)
**(Cite as: Slip Copy)**

he failed to pay a renewal or transfer fee. Therefore, the forum selection clause controls and the claims must be dismissed under Fed.R.Civ.P. 12(b)(3).

The forum selection clause also is enforceable by Telepathy, Snapnames.com and Namebay. "[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses.' " *Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd.,* 975 F.Supp. 483, 485-86 (W.D.N.Y.1997) (quoting *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.,* 949 F.Supp. 1427, 1434 (N.D.Cal.1997)). "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes ' foreseeable' that it will be bound." *Nanopierce Tech., Inc. v. Southbridge Capital Mgmt.,* No. 02-0767, 2003 WL 22882137, at *5 (S .D.N.Y. Dec. 4, 2003) (quoting *Lipcom v. Underwriters at Lloyd's, London,* 148 F.3d 1285, 1299 (11th Cir.1998)). A non-party is "closely related" to a dispute if its interests are "completely derivative" of and "directly related to, if not predicated upon" the signatory party's interests or conduct. *Lipcom,* 148 F.3d at 1299 (quoting *Dayhoff, Inc. v. H.J. Heinz Co.,* 86 F.2d 1287, 1297 (3d Cir.1996)). Other Circuits have held that a contractually-based forum selection clause also covers tort claims against non-signatories if the tort claims "ultimately depend on the existence of a contractual relationship" between the signatory parties, *Coastal Steel Corp.,* 709 F.2d at 203, or if "resolution of the claims relates to interpretation of the contract," *Manetti-Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 514 (9th Cir.1988), or if the tort claims " involve the same operative facts as a parallel claim for a breach of contract." *Lambert v. Kysar,* 983 F.2d 110, 1121-22 (1st Cir.1993).

*6 Here, all defendants are closely related as Weingrad alleges they acted in concert to deprive him of the weingrad.com domain name he acquired through the Registration Agreement and subsequent Service Agreement with Network Solutions. Telepathy's, Snapnames.com's and Namebay's involvement in any scheme to cybersquat or otherwise infringe on Weingrad's common law trademark is derivative of and predicated on whether Network Solutions released weingrad.com from its registry in a lawful manner. Weingrad's claims are substantially identical with respect to each defendant, as he sues them together in all but one claim, which is asserted against only Network Solutions, and the claims all arise out of the defendants' relationships with each other. Thus, all of the claims alleged by Weingrad were brought in the wrong forum.

The remaining question is whether the forum selection clause, combined with other facts in this case, favors dismissal under Fed.R.Civ.P. 12(b)(3) or transfer to another federal district court under 28 U.S.C. § 1404(a). In determining whether to dismiss or transfer a case, the court must weigh whether a dismissal or a transfer is the more efficient and just means of enforcing the forum selection clause. *See Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc.,* 131 F.Supp.2d 393, 409 (S.D.N.Y.2000). Courts in this district have dismissed cases involving clauses that permit suit in both federal and state courts of a foreign jurisdiction, as the Retainer Agreement and Service Agreement do. *See e.g., GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc.,* 198 F.R.D. 402, 409 (S.D.N.Y.2001); *HNY Assoc., LLC v. Summit Resort Properties, Inc.,* No. 01-428, 2001 WL 456250, at *3 (S.D.N.Y. Apr. 30, 2001). Dismissal in these cases was warranted, because transfer to the federal district court would "deprive plaintiff of its right under the forum selection clause of [the] contract to bring suit in either state or federal court." *GMAC Commercial Credit,* 198 F.R .D. at 409. As both forum selection clauses allow plaintiff the choice of bringing suit in the United States District Court for the Eastern District of Virginia or the Civil Court of Fairfax County, the current action will be dismissed in its entirety for improper venue.

For the reasons set forth above, defendants' motion is granted and the complaint is dismissed.
SO ORDERED:

S.D.N.Y.,2005.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                Page 6
Slip Copy, 2005 WL 2990645 (S.D.N.Y.)
**(Cite as: Slip Copy)**

Weingard v. Telepathy, Inc.
Slip Copy, 2005 WL 2990645 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

- 2005 WL 3648029 (Trial Pleading) Complaint (Feb. 10, 2005) Original Image of this Document (PDF)
- 1:05cv02024 (Docket) (Feb. 10, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.