## APPENDIX OF UNPUBLISHED AUTHORITIES

__CASE__                                                                      __TAB__

*Alaska Gasline Port Authority v. ExxonMobil Corp.*, 2006 WL 1718195 .........................1
(D.Alaska, June 19, 2006)

*Androutsakos v. M/V Psara*, 2004 WL 1305802 (D.Or., Jan. 22, 2004) ...........................2

*New York Marine & General Ins. Co. v. Tradeline (L.L.C.)*, 1999 WL 1277244
(S.D.N.Y., Nov. 29, 1999) ...................................................................................................3

*Starlight Co., Inc. v. Arlington Plastics Machinery, Inc.*, 2001 WL 677908 ....................4
(N.D.Cal., June 8, 2001)

Westlaw.

Slip Copy                                                                                   Page 1
Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

<u>Motions, Pleadings and Filings</u>

United States District Court,
D. Alaska.
The ALASKA GASLINE PORT AUTHORITY,
Plaintiff,
v.
EXXONMOBIL CORPORATION, et al., Defendants.
**No. 4:05-cv-0026-RRB.**

June 19, 2006.

*ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS*
<u>RALPH R. BEISTLINE</u>, District Judge.

## I. INTRODUCTION

*1 Before the Court are Defendants ExxonMobil Corporation, a New Jersey corporation; ExxonMobil Alaska Production, Inc., a Delaware Corporation; B.P. P.L.C., a United Kingdom corporation; and B.P. Exploration (Alaska) Inc., a Delaware Corporation (hereinafter collectively referred to as "Defendants") with Motions to Dismiss (Docket Nos. 30, 33 & 44). [FN1] Defendants argue, among other things, that Plaintiff lacks the requisite standing to bring any antitrust claims. Plaintiff Alaska Gasline Port Authority ("Plaintiff") opposes at Docket No. 55 and, in response to this particular argument, contends the standing inquiry is factually complex and/or inappropriate for resolution on a motion to dismiss. The Court disagrees and, for reasons more carefully articulated herein, **GRANTS** Defendants' Motions to Dismiss.

> FN1. Defendant B.P. P.L.C., a United Kingdom corporation, incorporates by reference all arguments in B.P. Exploration (Alaska) Inc.'s Motion to Dismiss and Memorandum (Docket Nos. 30 & 31), whereby the arguments made by B.P. Exploration (Alaska) Inc. apply equally to B.P. P.L.C. *See* Clerk's Docket Nos. 44 & 45.

In dismissing this action, the Court does not wish to diminish the validity of Plaintiff's proposal or to suggest that Plaintiff's efforts to supply North Slope gas to the Nation should be curtailed. On the contrary, Plaintiff appears well-intentioned, has accomplished a great deal to date, and may well have a valid plan. Decisions, however, regarding who, when, where, and how to accomplish this monumental task should involve all interested parties and are best made by the Alaska State Legislature and the people of Alaska.

Although the foregoing presents a technical analysis of some of the legal obstacles Plaintiff faces, the bottom line is that: (1) no one appears to have violated the law with regard to gasline negotiations; (2) considerable uncertainty remains regarding some fundamental aspects of Plaintiff's proposal(s); and (3) the Stranded Gas Development Act, <u>Alaska Stat. § 43.82.010</u>, *et seq.,* creates a comprehensive and detailed process for negotiating and approving contractual agreements designed to make the development and commercialization of North Slope gas a reality, [FN2] and expressly preempts Plaintiff's conflicting municipal action. [FN3] Indeed, Plaintiff, "as a creature of state law, lacks authority to take *any* action that frustrates the laws and polices of Alaska." [FN4]

> FN2. Clerk's Docket No. 63 at 3 (citation omitted). "The Stranded Gas Development Act establishes special procedures involving the Executive, the public, the Legislature, and the Judiciary directly in the process for negotiating, reviewing, and approving contracts for qualifying stranded gas projects." *Id.* at 5 n. 3 (citation omitted).

> FN3. *Id.* (*citing* <u>Alaska Stat. § 43.82.600</u>). <u>Alaska Stat. § 43.82.600</u> provides: "If a provision of this chapter conflicts with another provision of state or municipal law, the provision of this chapter governs."

> FN4. *Id.* at 8 (emphasis in original).

## II. FACTS

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

Plaintiff, a political subdivision of the State of Alaska, was created in 1999, pursuant to <u>Alaska Stat. §§ 29.35.600-29.35.730</u>, to construct a gas pipeline system from Alaska's North Slope to the Port of Valdez, Alaska. Pursuant to this mandate, Plaintiff hopes to build a 48-inch buried pipeline from Prudhoe Bay to Valdez, [FN5] where it will construct and operate a liquefaction, storage, and loading facility. In furtherance of this goal, Plaintiff alleges it has negotiated and contracted with the firms necessary to: (1) construct the pipeline and liquified natural gas distribution network; and (2) transport, distribute, and market the gas. Plaintiff claims, however, that the only remaining impediment to its ability to construct the pipeline is Defendants' joint refusal to supply it with gas. Indeed, Defendants have stated, "nobody is going to build a pipeline without the producers." [FN6]

> FN5. Plaintiff's proposed pipeline would run parallel to the Trans-Alaska Pipeline System ("TAPS").

> FN6. Clerk's Docket No. 55 at 3 (*quoting* ExxonMobil's Chief Executive Officer Lee Raymond). Inasmuch as the remainder of the facts are well known to the parties, and more than substantially briefed within the applicable pleadings, they are not repeated herein except as necessary.

### III. STANDARDS OF REVIEW

#### A. *Rule 12(b)(1) of the Federal Rules of Civil Procedure.*

*2 "A plaintiff has the burden of proving that jurisdiction does in fact exist." [FN7] "Standing pertains to a federal court's subject matter jurisdiction under Article III." [FN8] "This [C]ourt, therefore, analyzes a plaintiff's standing to assert his or her claims under <u>Rule 12(b)(1) of the Federal Rules of Civil Procedure.</u>" [FN9]

> FN7. *Samonte v. Frank,* 2006 WL 1381879 at *2 (D.Haw.2006) (*citing Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir.1979)).

> FN8. *Reudiger v. U.S. Forest Service,* 427 F.Supp.2d 974, 2005 WL 3954739 (D.Or.2005) (*citing White v. Lee,* 227 F.3d 1214, 1242 (9th Cir.2000)).

> FN9. *Samonte,* 2006 WL 1381879 at *1 (*citing White v. Lee,* 277 F.3d 1214, 1242 (9th Cir.2000)).

Pursuant to <u>Rule 12(b)(1)</u>, the Court may, in its discretion,

> [D]ismiss a complaint when its allegations are insufficient to confer subject matter jurisdiction. Alternatively, the [C]ourt *may* dismiss a complaint under <u>Rule 12(b)(1)</u> when the facts that would give rise to its subject matter jurisdiction are disputed. [FN10]

> FN10. *Id.* (*citing Thornhill Pub. Co., Inc. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir.1979))(emphasis added).

When the allegations of a complaint are examined to determine whether they are sufficient to confer subject matter jurisdiction, "[a]ll allegations of material fact must be taken as true and construed in the light most favorable to the non-moving party." [FN11] In addition, "the Court limits its analysis to the allegations of and the documents attached to the complaint," [FN12] and scrutinizes the same more closely in order to make the necessary threshold determination as to whether it has subject matter jurisdiction. [FN13] "This scrutiny [involves] taking preliminary evidence, weighing that evidence, and deciding as a matter of law whether the facts alleged support jurisdiction." [FN14]

> FN11. *Federation of African American Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996).

> FN12. *Samonte,* 2006 WL 1381879 at *1 (*citing Samco Global Arms, Inc. v. Arita,* 395 F.3d 1212, 1214 n. 4 (11th Cir.2005); *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000)).

> FN13. *U.S. v. LSL Biotechnologies,* 379 F.3d 672, 683 (9th Cir.2004).

Slip Copy                                                                 Page 3
Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

FN14. *Id.* Moreover, the Supreme Court has stated, with respect to antitrust cases in particular, that dismissals prior to giving the plaintiff ample opportunity for discovery should be granted *very sparingly.* However, it is not proper to assume that the plaintiff can prove facts that is has not alleged or that the defendants have violated the antitrust laws in ways that have not been alleged. *George Haug Co., Inc. v. Rolls Royce Motor Cars Inc.* , 148 F.3d 136 (2nd Cir.1998) (emphasis added).

**B.** *Rule 12(b)(6) of the Federal Rules of Civil Procedure.*

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [FN15] A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." [FN16] In reviewing a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." [FN17] The court is not required to accept every conclusion asserted in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." [FN18]

FN15. *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir.1997).

FN16. *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir.1988).

FN17. *Vignolo,* 120 F.3d at 1077.

FN18. *Holden v. Hagopian,* 978 F.2d 1115, 1121 (9th Cir.1992) (*quoting Brian Clewer, Inc. v. Pan American World Airways, Inc.,* 674 F.Supp. 782, 785 (C.D.Cal.1986)).

**IV. DISCUSSION**

**A.** *Plaintiff's Federal Antitrust Claims Lack Standing.*

Defendants first argue that the Court should dismiss Plaintiff's federal antitrust claims (Claims I-IV) because Plaintiff lacks the requisite standing to bring the same. In particular, Defendants argue Plaintiff fails to meet the "preparedness" standard established by *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 11 F.3d 1460, 1465 (9th Cir.1993). The Court agrees.

"In the Ninth Circuit, a potential market entrant must satisfy four 'preparedness' criteria to establish standing to sue." [FN19]

FN19. Clerk's Docket No. 34 at 14.

*3 To separate those who have suffered antitrust injury on account of alleged monopolistic barriers to entry, from those who have not, we consider (1) the plaintiff's background and experience in the prospective business, (2) "[a]ffirmative action on the part of [the] plaintiff to engage in the proposed business," (3) the plaintiff's ability to finance entry, and (4) consummation of contracts. [FN20]

FN20. *In re Dual-Deck Video Cassette Recorder Antitrust Litigation,* 11 F.3d 1460, 1465 (9th Cir.1993)(*quoting Solinger v. A & M Records, Inc.,* 586 F.2d 1304, 1310 (9th Cir.1978)).

Because the Court concludes Plaintiff's complaint contains inadequate allegations on all four accounts, e.g., Plaintiff's ability to finance the construction of its proposed pipeline is speculative at best, its federal antitrust claims (Claims I-IV) are hereby **DISMISSED.** [FN21] The remainder of Plaintiff's claims fare no better.

FN21. Moreover, Plaintiff's purported "futility exception" is misplaced. "The Ninth Circuit has expressly held that an antitrust plaintiff *cannot* evade its obligation to allege and prove preparedness by arguing that it was prevented from doing so by defendants' alleged wrongdoings." Clerk's Docket No. 66 at 3 (*citing In re Dual-Deck Video Cas-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 4
Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

sette Recorder Antitrust Litigation, 11 F.2d 1460, 1464-65 (9th Cir.1993)) (emphasis added). Rather, the question is whether, assuming Defendants would have been willing to supply Plaintiff with the gas, Plaintiff would have been sufficiently prepared to engage in its intended business. In light of the four factors enumerated in *Solinger v. A & M Records, Inc.,* 586 F.2d 1304 (9th Cir.1978), the Court concludes it would *not* have been. Considerable uncertainty remains regarding both financing *and* permitting. "Plaintiff's antitrust claims also fail because they do not satisfy the most basic element of any antitrust claim--that the alleged wrongful conduct injured competition in an *existing and relevant economic market.*" Clerk's Docket No. 31 at 3 (emphasis added).

**B. *Plaintiff's Fifth Claim for Relief Fails to State a Claim Under Section 7 of the Clayton Act.***

Plaintiff next challenges, as a violation of section 7 of the Clayton Act, Defendant B.P. Exploration (Alaska) Inc.'s acquisitions of Amoco Corporation and Atlantic Richfield Company, as well as Defendant ExxonMobil's 1999 merger of the Exxon and Mobil Corporations and Exxon's 1996 acquisition of half of Shell's production interest in Prudhoe Bay (Claim V). Plaintiff has failed to show, however, either: (1) that those acquisitions, which were approved by the Federal Trade Commission, were illegal; or (2) "that they possibly could have had any effect on the refusal to sell [P]laintiff the North Slope gas that is the core of this case." [FN22] Moreover, the Court concludes Plaintiff's challenges to the acquisitions and/or mergers, as revealed in the pleadings, are time-barred. [FN23]

> FN22. Clerk's Docket No. 31 at 5.

> FN23. *Id.* "Clayton Act § 4B, 15 U.S.C. § 15b (damages claims are "forever barred unless commenced within four years after the cause of action accrued.")." *Id.* at 29 (*citing International Tel. & Tel. Corp. v. General Telephone & Electronics Corp.,* 518 F.2d 913, 929 (9th Cir.1975), *overruled on other*

grounds, *California v. American Stores Co.,* 495 U.S. 271, 110 S.Ct. 1853, 109 L.Ed.2d 240 (1990)).

**C. *Plaintiff's State UTPA Claim Lacks Standing.***

Plaintiff also lacks standing to bring its claim under Alaska's Unfair Trade Practices and Consumer Protection Act ("UTPA"), Alaska Stat. § 45.50.471 *et seq.* (Claim VI), because the claim is based upon the same allegations of anti-competitive conduct as Plaintiff's federal antitrust claims, whereby it suffers the same standing defects. [FN24]

> FN24. "Under Alaska law, a plaintiff who bases a UTPA claim on purported [anti-competitive] conduct is required to demonstrate that it has standing to sue under the antitrust laws." *Id.* at 30 (*citing Aloha Lumber Corp. v. University of Alaska,* 994 P.2d 991, 1002 (Alaska 1999)).

**D. *Plaintiff's State Law Claim for Tortious Interference Fails as a Matter of Law.***

In addition, "Plaintiff's claim for tortious interference with prospective economic advantage [ (Claim VII) ] fails because each [D]efendant enjoys a privilege *not* to sell its North Slope gas to [P]laintiff." [FN25] "Therefore, [Defendants'] refusal to sell that gas, which is the gravamen of [Plaintiff's state] tort claim, cannot be tortious." [FN26]

> FN25. *Id.* at 5. *See RAN Corp. v. Hudesman,* 823 P.2d 646 (Alaska 1991).

> FN26. *Id.* (emphasis added). At Clerk's Docket No. 55 at 23, Plaintiff suggests Sempra Energy "withdrew from the proposed project once it became evident that Defendants would never commit to supplying [Plaintiff's] pipeline with gas." While this may be true, the Court notes that it does *not* constitute a harm for the purposes of establishing a prima facie case in tort. Indeed, Defendants are *not* required to sell their gas to Plaintiff merely because Plaintiff entered into an agreement with a third-party. Consequently, because Plaintiff must be able to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 5
Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

demonstrate a harm in a tort action, and has thus far been unable to do so, its tort action must fail.

**E. *Plaintiff's Breach of Contract Claim Against Defendants B .P. Exploration (Alaska) Inc. & B.P. P.L.C. Fails for Three Independent Reasons.***

Plaintiff's breach of contract claim based on the Charter for Development of the Alaska North Slope (the "Charter"), entered into by the State of Alaska, B.P. P.L.C., and ARCO Alaska, Inc., on December 2, 1999 (Claim VIII), fails for three independent reasons. To begin, "the Charter provides explicitly that only parties to it may enforce its provisions...." [FN27] Plaintiff is *not* a party to the Charter. Moreover, "the Charter expressly disclaims the creation of third-party beneficiary rights." [FN28] Plaintiff sues as "an intended beneficiary of" the Charter. The Charter further provides that its "provisions relating to North Slope gas are enforceable only by arbitration ...," [FN29] and "may only be enforced in an arbitration between its parties." [FN30] Plaintiff is not a party to the Charter and this is not an arbitration. Finally, "[P]laintiff's complaint is based on actions and inactions in and following April 2005, but the Charter's obligations regarding ANS natural gas, on which Plaintiff's claim is based, expired on December 31, 2003." [FN31] Therefore, Plaintiff's claim, under the Charter, is not legally cognizable.

FN27. Clerk's Docket No. 65 at 22.

FN28. Clerk's Docket No. 31 at 6.

FN29. Clerk's Docket No. 65 at 22.

FN30. Clerk's Docket No. 31 at 6.

FN31. *Id.* (citation omitted).

**F. *Plaintiff's Alleged Failure to Sue Indispensable Third Parties is Not Examined in Light of Rules 19 & 12(b)(7).***

*4 Citing Fed.R.Civ.P. 19, Defendants B.P. Exploration (Alaska) Inc. & B.P. P.L.C. also seek dismissal of Plaintiff's "claims for injunctive relief ... because the Court cannot grant the complete relief [P]laintiff

seeks in the absence of the other owners of North Slope gas, including the State of Alaska and Conoco-Phillips ." [FN32]

FN32. *Id.* at 36.

Inasmuch as the Court concludes dismissal is appropriate, in conjunction with Fed.R.Civ.P. 12(b)(1) & (6), it need not fully address Defendants' Rule 19 argument. Were it to do so, the Court would likely find that the absence of any and/or all indispensable parties, to include the State of Alaska and Conoco-Phillips, would interfere with a complete resolution of this matter.

**G. *Plaintiff's Lawsuit is Preempted by the Stranded Gas Development Act.***

Defendant "ExxonMobil challenges [Plaintiff's] power to bring this lawsuit, claiming that the lawsuit conflicts with the Stranded Gas Development Act ("SGDA")." [FN33] Defendant is correct. Plaintiff, "*as a political subdivision of the State,* is [not] authorized to seek judicial relief that would interfere with Alaska's ability to develop North Slope gas resources under the process contemplated by the [SGDA] ...." [FN34] Indeed, the order which Plaintiff seeks "would [likely] upend the [SGDA] process, which presumes that Alaska officials will be able to evaluate the economics of competing pipeline projects by comparing costs and contractual commitments." [FN35] The Court concludes, therefore, that Plaintiff's attempt to preempt the outcome of the SGDA's legislatively prescribed process is inconsistent with the purpose(s) of the same, [FN36] and thus precluded.

FN33. Clerk's Docket No. 55 at 58.

FN34. Clerk's Docket No. 63 at 1 (emphasis added). Alaska Stat. § 43.82.600.

FN35. Clerk's Docket No. 34 at 48.

FN36. The purpose of the SGDA is to:
(1) encourage new investment to develop the state's stranded gas resources by authorizing establishment of fiscal terms related to that new investment without significantly alter-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 6
Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312
**(Cite as: 2006 WL 1718195 (D.Alaska))**

ing tax and royalty methodologies and rates on existing oil and gas infrastructure and production;

(2) allow the fiscal terms applicable to a qualified sponsor or the members of a qualified sponsor group, with respect to a qualified project, to be tailored to the particular economic conditions of the project and to establish those fiscal terms in advance with as much certainty as the Constitution of the State of Alaska allows; and

(3) maximize the benefits to the people of the state of the development of the state's stranded gas resources.

Alaska Stat. § 43.82.010. These objectives call "upon the Alaska Commissioners of Revenue and Natural Resources to negotiate tax and royalty rates with qualified project sponsors." Clerk's Docket No. 34 at 46 (citing Alaska Stat. §§ 43.82.110, 43.82.130, and 43.82.200-220).

The endpoint of the Commissioners' work is a proposed contract specifying state tax and royalty treatment of a qualifying stranded gas project. No such contract can take effect, however, until it has been subject to public notice-and-comment, Alaska Stat. § 43.82.410, and approved by the state legislature, Alaska Stat. § 43.82.435.
*Id.*

## V. CONCLUSION

Having thoroughly reviewed the relevant briefings and having heard oral argument on the matter, Defendants' Motions to Dismiss (Docket Nos. 30, 33 & 44) are hereby **GRANTED.** Because Plaintiff "has not pleaded adequate facts to show that it is authorized, and has antitrust standing, to pursue this action," [FN37] the matter is hereby **DISMISSED.**

    FN37. Clerk's Docket No. 63 at 2.

Slip Copy, 2006 WL 1718195 (D.Alaska), 2006-1 Trade Cases P 75,312

### Motions, Pleadings and Filings (Back to top)

• 2006 WL 1502711 (Trial Motion, Memorandum

and Affidavit) Memorandum of Law in Support of Motion of Defendants Exxon Mobil Corporation And ExxonMobil Alaska Production, Inc. to Defer A Rule 20(f) Conference and Report and Stay Discovery (Apr. 13, 2006)Original Image of this Document (PDF)

• 2006 WL 1306185 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Dismiss of Defendant BP Exploration (Alaska) Inc. (Mar. 28, 2006)Original Image of this Document (PDF)

• 2006 WL 1306186 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Support of Motion to Dismiss of Defendants Exxon Mobil Corporation and Exxonmobil Alaska Production, Inc. (Mar. 28, 2006)Original Image of this Document (PDF)

• 2006 WL 1306184 (Trial Motion, Memorandum and Affidavit) Consolidated Opposition of Alaska Gasline Port Authority to Motions to Dismiss of Exxon Mobil Corporation and Exxon Mobil Alaska Production, Inc. (#33), BP P.L.C. (#44), and BP Exploration (Alaska) Inc. (#30) (Mar. 10, 2006)Original Image of this Document (PDF)

• 2006 WL 820619 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Dismiss Defendant BP Exploration (Alaska) Inc. (Feb. 8, 2006)Original Image of this Document (PDF)

• 2006 WL 820620 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion to Dismiss of Defendants Exxon Mobil Corporation and Exxon Mobil Corporation, et al., Exxon Mobil Alaska Production, Inc. (Feb. 8, 2006)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Oregon.
Stavros ANDROUTSAKOS, as Guardian Ad Litem
for Elias Androutsakos, an
incapacitated person, Plaintiff,
v.
M/V PSARA, her engines, tackle, apparel and equip-
ment, Chevron USA, Inc., a
Pennsylvania Corporation, PSARA Shipping Corpor-
ation, a Liberian Corporation,
Defendants.
**No. 02-1173-KI.**

Jan. 22, 2004.
Julie A. Weis, Michael E. Haglund, Michael K. Kel-
ley, Timothy J. Jones, Haglund Kirtley Kelley &
Homgren, LLP, Portland, Oregon, for Plaintiff.

Craig C. Murphy, Wood Tatum Sanders & Murphy,
Portland, Oregon, John M. Toriello, Holland &
Knight LLP, New York, New York, James S. Smith,
Jeffrey J. Schick, Lawrence B. Burke, Davis Wright
Tremaine, LLP, Portland, Oregon, for Defendants.

OPINION
KING, J.

**\*1** Plaintiff Elias Androutsakos, through his guardian
Stavros Androutsakos, brings an action against the
M/V PSARA, Psara Shipping Corporation (together
"the Psara defendants"), and Chevron U.S.A., Inc.
("Chevron"). [FN1] Plaintiff asserts negligence
claims against the Psara defendants and Chevron, and
an unseaworthiness claim against the M/V PSARA.
Before the court are the Psara defendants' Motion for
Issuance of Court Decision Regarding Dismissal
Based Upon Forum Non Conveniens (# 76), the Psara
defendants' Motion to Bifurcate Trial Proceedings (#
81), Chevron's Motion for Summary Judgment (#
97), and Chevron's Motion to Strike (# 111).

FN1. For ease of reference, I will refer to
Elias Androutsakos as "plaintiff."

FACTS
Plaintiff was a seaman aboard the M/V PSARA, an
ocean-going tanker. Before joining the M/V PSARA,
plaintiff signed an employment contract entitled "Elet-
son Corporation Seaman's Employment Contract ."
Eletson Holdings, Inc., a Liberian Corporation, owns
Psara Shipping Corporation ("Psara Shipping"),
which is also a Liberian corporation, as a wholly-
owned subsidiary. Psara Shipping owns the M/V
PSARA.

Translated into English, paragraph 3 of the prelimin-
ary provisions of the employment contract provides
in relevant part:
   It has been agreed that [Elias Androutsakos] will
   be employed on the vessel m/t PSARA as subsid-
   ized student apprentice engineer under the general
   labor conditions of the Greek Collective Agree-
   ment for Ocean Going Tanker Vessels and under
   the terms of overtime and salary which are
   provided for under the Collective Agreement and
   under the overtime and salary (employer's bonus)
   as it is described below[.]

The employment contract goes on to list several "Spe-
cial Terms" of the agreement. Paragraph 6 of the "Spe-
cial Terms" section provides in its entirety:
   The contracting parties declare that, for the resolu-
   tion of any dispute arising from this agreement,
   they acknowledge exclusive jurisdiction to the
   Court of Athens. Moreover, it is unconditionally
   acknowledged by the parties, that the Greek Courts
   and the Greek laws shall apply as regards this
   Agreement.

As noted above, the preliminary provisions of
plaintiff's employment contract reference a document
referred to as the Collective Agreement. The Collect-
ive Agreement is an industry-wide agreement negoti-
ated between the Greek Shipowner's Union and vari-
ous Greek seamen's unions. The Collective Agree-
ment contains various Articles setting forth labor-
related standards and conditions. For example, Art-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

icle 4 relates to "WORKING DAYS AND HOURS," Article 5 relates to "HOLIDAYS," and Article 6 relates to "OVERTIME WORK AND OVERTIME PAY." Other provisions address terms unrelated to wages and hours worked, such as Article 17 entitled "BEDDING, MESS UTENSILS, ETC," and, of particular relevance to this dispute, Article 18 entitled "SETTLEMENT OF ALL DISPUTES." Article 18 provides in part:

> Individual contracts of employment, to which the present Collective Agreement applies, will be governed exclusively as to any claim or right, arising out of the seamen's employment and including claims on account of illness or accident, by the provisions of the present Collective Agreement and Greek Law ... and will be decided by the Greek Authorities and the Greek Courts.

**\*2** At approximately 8:00 am on August 24, 2002, the M/V PSARA arrived at Chevron's Willbridge Pier in Portland, Oregon.

Mooring a vessel at Chevron's dock is a joint effort involving Chevron's employees and the ship's crew. Chevron operators began receiving mooring lines from the ship and attaching the lines to Chevron's dock. Chevron employees Richard Peterson, Tom Trask and Richard Gissell were involved in the tie up of the ship at Chevron's dock. The tie-up of the ship was completed by 9:42 am.

When the ship was tied up at Chevron's dock, one of her mooring lines, a forward spring line, was tied off in such a way that the line wrapped around the vessel's hull and hung up on an eye bolt located on the vessel's side. Chevron employees noticed that the line created an angle on the eyelet.

The transfer of crude oil from the ship to the shore began at approximately 2:00 pm the same day.

At approximately 6:00 pm, Kurt Boesch began his shift as an operator at the Willbridge Terminal. As an operator, Boesch's tasks included ensuring the safe transfer of product from ship to shore.

At approximately 8:00 pm, Boesch was sitting in the dock office at the terminal reading a magazine when he heard a loud noise. He looked up and saw the for-

ward spring line leaping violently. Boesch heard people yelling near the ship and headed out of the dock office toward the commotion. The freed line had struck plaintiff in the head.

As Boesch approached the ship, he was informed by the Captain, who was running toward him on the dock, that plaintiff had been injured and that emergency services were needed. Boesch then contacted the head terminal operator by radio and prepared the dock for arrival of emergency crews.

The ship's Captain and crew had made adjustments to the spring line in an attempt to free it. No one from the ship informed Chevron that the Captain or the crew were planning to adjust any of the ship's lines. No Chevron employees were involved in the operation to adjust the ship's spring line.

PROCEDURAL BACKGROUND

On August 27, 2002, plaintiff filed this action, which was assigned to Magistrate Judge John Jelderks. Defendants moved to dismiss the action based on the forum selection clauses cited above and based on forum non conveniens. On March 28, 2003, Judge Jelderks issued Findings and Recommendation ("F & R"), recommending that the motion should be granted as to defendants M/V PSARA and Psara Shipping and denied as to defendant Chevron.

With respect to the Psara defendants, Judge Jelderks ruled that they are bound by the terms of the employment contract at issue, that the contract incorporates the Collective Agreement, that the forum selection clause in the Collective Agreement applies to tort claims against the Psara defendants, that the clause is not invalidated by the Brussels Convention, and that plaintiff had not made a strong showing of unreasonableness necessary to invalidate the forum selection clause. Judge Jelderks ruled that under the forum selection clause in the Collective Agreement, plaintiff's claims against the Psara defendants would proceed in Greece. Having recommended that the Psara defendants' motion to dismiss be granted based on the forum selection clause, Judge Jelderks declined to reach the Psara defendants' alternative motion to dismiss based on forum non conveniens.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                     Page 3
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

**\*3** With respect to Chevron, Judge Jelderks denied the motion to dismiss in its entirety. Chevron had argued that it was entitled to enforce the forum selection clause to the same extent as the Psara defendants because plaintiff's claim against Chevron arose out of the relationship between Psara Shipping and plaintiff and is inextricably linked to that relationship. Judge Jelderks rejected this argument. Judge Jelderks also rejected Chevron's motion to dismiss on forum non conveniens grounds. He found that Chevron had not made the showing necessary to set aside plaintiff's choice of forum as to the portion of the action brought against Chevron. Judge Jelderks acknowledged that it was less than ideal to have the claims against the Psara defendants go forward in Greece while the claims against Chevron go forward in this district, but he felt that other inefficiencies would exist if the entire action were to be dismissed here and tried in Greece.

Plaintiff filed timely objections to Judge Jelderks' F & R and the Psara defendants filed a response. On July 7, 2003, the Honorable Robert E. Jones, after conducting a *de novo* review of Judge Jelderks' recommendations, adopted the portion of Judge Jelderks' F & R denying Chevron's motion to dismiss. However, Judge Jones declined to adopt Judge Jelderks' recommendation as to the Psara defendants. Judge Jones disagreed with Judge Jelderks' interpretation of the employment contracts at issue. Judge Jones held as follows:

> Specifically, I do not agree that plaintiff's Employment Contract incorporates all provisions of the Collective Agreement, including the broad forum selection clause set forth in Article 18. Instead, I find and therefore conclude that the Employment Contract incorporates only "the general labor conditions" contained in the Collective Agreement, such as Article 5[sic] ("Working Days and Hours"), Article 5 ("Holidays"), Article 6 ("Overtime Work and Overtime Pay"), and Article 8 ("Additional Work for Which no Overtime is Payable \* \* \* "). Consequently, the Psara defendants' motion to dismiss (# 21) is denied, and all claims will be tried in this court.

Judge Jones July 7, 2003, Order at 2-3.

The Psara defendants filed a motion for reconsidera-

tion and in the alternative, a motion for interlocutory appeal. In a minute order dated September 2, 2003, Judge Jones denied both requests without opinion. On the same day, he sent the parties a letter further explaining his rulings. In the letter, he noted as follows:

> I agree [ ] that this case represents a "close" question but otherwise does not qualify for further argument or changed disposition.... I do suggest that there is a substantial evidentiary dispute as to forum selection and whether this plaintiff's employment contract would subject him to exclusive Greek jurisdiction. The parties may wish this court to bifurcate this issue for a court hearing this fall before a U.S. District Judge.

Judge Jones September 2, 2003, letter to counsel at 1-2.

**\*4** On September 22, 2003, this case was reassigned to me. The Psara defendants have filed two motions related to the prior rulings. First, the Psara defendants request that I issue a decision on the issue of forum non conveniens, as neither Judge Jelderks nor Judge Jones reached this issue. Second, the Psara defendants move for a bifurcated proceeding, based upon Judge Jones suggestion in his letter. Finally, Chevron moves for summary judgment as to plaintiff's claim against it.

### DISCUSSION
#### I. *The Psara Defendants' Motion to Bifurcate*

##### A. *The Disputed Issues and the Law of the Case*

The Psara defendants have filed a motion for a bifurcated trial. Their motion requests that the first phase of the proceedings address the issues related to forum selection and whether plaintiff's employment contract subjects him to exclusive Greek jurisdiction, and if those issues do not dispose of the case, defendants request that the second phase address plaintiff's case on the merits. As noted above, defendants requested this bifurcated trial based upon Judge Jones' suggestion in his September 2, 2003, letter that such a method may be appropriate. At oral argument on December 10, 2003, however, defendants conceded that the record before Judge Jelderks and Judge Jones was essentially complete on these issues. Neither side

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

could point to any evidence that would be adduced at a trial on forum selection that was not already in the record. As I indicated at oral argument, I see no reason to bifurcate the case and hold a separate trial on the issues related to forum selection. Accordingly, the Psara defendants' motion to bifurcate is denied.

Although I have determined there is no need for a separate proceeding on the forum selection clauses, I believe there are several issues that need clarification and/or resolution. The issue before Judge Jelderks was the Psara defendants' motion to dismiss, which Judge Jelderks recommended should be granted. Judge Jones disagreed with that recommendation and instead denied the motion to dismiss. If that were the extent of the ruling, presumably the parties could continue to dispute the forum selection issue on a motion for summary judgment, for example, or at trial. However, Judge Jones' ruling went beyond just denying the Psara defendants' motion to dismiss. He affirmatively held that plaintiff's employment contract did not incorporate the forum selection clause from the Collective Agreement, and he upheld that ruling on a motion for reconsideration. In his letter to counsel, he then suggested that there is a substantial evidentiary dispute as to forum selection. Judge Jones' letter has created some confusion, understandably, because his suggestion that a dispute remains as to forum selection appears to conflict with his affirmative holding that Article 18 of the Collective Agreement was not incorporated into the employment contract. The other point of confusion regarding the reach of Judge Jones' ruling relates to the forum selection clause in the employment contract itself. Although Judge Jones' first order concluded that the forum selection clause in the Collective Agreement was not incorporated into the employment contract, it is unclear whether he also concluded that the forum selection clause in plaintiff's individual employment contract was not applicable to this case. Judge Jelderks did not explicitly address this issue either. Thus, I believe there remain issues to be decided as to the effect of both forum selection clauses on plaintiff's ability to bring his claims in this district.

**\*5** Plaintiff argues that the law of the case doctrine bars the Psara defendants from relitigating the issue of forum selection. Plaintiff notes that Judge Jones

ruled that all claims would proceed in this court and that he upheld this ruling on a motion for reconsideration. According to plaintiff, the Psara defendants should not be given another bite at the apple on this issue.

Under the law of the case doctrine, a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case. *U.S. v. Lummi Indian Tribe,* 235 F.3d 433 (9th Cir.2000). Law of the case is not, however, an "inexorable command." *Kimball v. Callahan,* 590 F.2d 768, 771-72 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49 (1979). The doctrine is, in fact, discretionary. *Hegler v. Borg,* 50 F.3d 1472, 1475 (9th Cir.), *cert. denied,* 516 U.S. 1029, 116 S.Ct. 675 (1995). Additionally, in *Castner v. First National Bank of Anchorage,* 278 F.2d 376, 380 (9th Cir.1960), the Ninth Circuit noted with respect to two federal judges ruling on issues in one case:

> We are concerned here with a second (federal) judge to whom a case has been assigned after a motion to dismiss the complaint and a motion for summary judgment have been denied by a prior (federal) judge.... He is charged with the responsibility of conducting the trial to its conclusion. Yet after examination of the record he is firmly convinced that an error of law has been committed in denying the motions.... Under such circumstances, we feel that there is no abuse of discretion in overruling the prior judge. The second judge must conscientiously carry out his judicial function.... He is not doing this if he permits what he believes to be a prior erroneous ruling to control the case. He can settle the questions presently without compelling the parties to proceed with what may be a futile and expensive trial. We think that these are cogent reasons and exceptional circumstances which justify a departure from the rule of comity within the permissible limits of judicial discretion.

In order to clarify any confusion created by Judge Jones' letter, in order to ensure that no errors were made, and in order to resolve any other pending matters, I will address limited issues related to the two forum selection clauses.

B. *Forum Selection Clause in Plaintiff's Employment*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 5
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

*Contract*

Defendants argue that plaintiff's action must be dismissed under the forum selection clause in plaintiff's individual employment contract. As noted above, that clause provides that "for the resolution of any dispute arising from this agreement, [the contracting parties] acknowledge exclusive jurisdiction to the Court of Athens."

Federal law governs the effect of a forum selection clause. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996). Forum selection clauses in contracts can be applicable to both contract and tort claims. *Manetti-Farrow v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir.1988). "Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Id.*

*6 *Manetti-Farrow* involved several tort claims related to an exclusive dealership contract, including claims for conspiracy to interfere with contractual relations, tortious interference with contractual relations, and tortious interference with prospective economic advantage. The relevant forum selection clause provided that Florence, Italy would be the forum for resolving disputes regarding "interpretation" or "fulfillment" of the contract. The plaintiff argued that the forum selection clause did not apply to its claims because they were "pure" tort claims independent of the contract. The Ninth Circuit rejected this argument and found that the claims fall within the scope of the forum selection clause because "[t]he claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract." *Id.*

In this case, plaintiff argues that the forum selection clause does not apply because his personal injury claims do not relate to the terms of his employment contract. He argues that determining whether the Psara defendants are liable for plaintiff's injuries does not depend on any rights and duties enumerated in the employment contract, as the duties plaintiff alleges were breached are duties of care arising out of tort law. Additionally, plaintiff relies on *Psarros v. Avior Shipping, Inc.,* 192 F.Supp.2d 751 (S.D.Tex.2002), where the court held that a Greek

seaman's tort claims relating to a mooring line injury were not covered by a clause selecting Greece as the forum for "any agreement arising from the enforcement of this contract." Plaintiff notes that in reaching this conclusion, the court cited and relied in part on the Ninth Circuit's reasoning in *Manetti-Farrow.*

Defendants argue that the language in the employment contract in this case is broader than the language in the cases on which plaintiff relies. Additionally, defendants argue that the Ninth Circuit in *Manetti-Farrow* reached the conclusion it did only because the clause in that case was limited to issues of contract "interpretation and fulfillment." I acknowledge that the forum selection clause at issue in *Manetti-Farrow* was more narrow than the clause at issue here. However, I believe the court announced a more general rule for determining whether a forum selection clause applies in a given case. Before specifically addressing the clause at issue in *Manetti-Farrow,* the court set forth the applicable legal standards. Citing to other circuit and district court cases, the court declared that a forum selection clause applies to tort claims if resolution of the claims relates to interpretation of the contract. *Manetti-Farrow,* 858 F.2d at 514. Because the resolution of plaintiff's claims against the Psara defendants does not involve analyzing in any way whether the parties were in compliance with the contract, the forum selection clause does not apply.

C. *Forum Selection Clause in the Collective Agreement*

*7 The second relevant forum selection clause is the clause contained in the Collective Agreement, which provides that Greece will be the forum for claims "arising out of the seamen's employment and including claims on account of illness or accident." As described above, this clause was addressed by both Judge Jelderks and Judge Jones, and in order to provide finality to these issues, will now be addressed by me.

Plaintiff concedes that the language "including claims on account of illness or accident" would encompass his tort claims in this action. He argues, however, that the clause does not apply to him because Article 18

Not Reported in F.Supp.2d                                                                Page 6
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

of the Collective Agreement was not incorporated into plaintiff's individual employment contract. Plaintiff's individual employment contract refers to the Collective Agreement as follows:

> It has been agreed that [Elias Androutsakos] will be employed on the vessel m/t PSARA as subsidized student apprentice engineer under the general labor conditions of the Greek Collective Agreement for Ocean Going Tanker Vessels and under the terms of overtime and salary which are provided for under the Collective Agreement and under the overtime and salary (employer's bonus) as it is described below[.]

Defendants argue that the Collective Agreement in its entirety is applicable to plaintiff's employment aboard the Greek-flag vessel. I acknowledge that the Psara defendants have submitted evidence, mainly in the form of Greek legal opinions, that suggests that the Collective Agreement should be deemed to apply because of its binding effect under Greek law. However, as the Ninth Circuit noted in *Manetti-Farrow,* "because enforcement of a forum selection clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses." 858 F.2d at 513. Thus, contrary to defendants' assertions, this court does need to engage in contract interpretation.

The employment contract appears to incorporate two categories of Collective Agreement provisions, the "general labor conditions" and the "terms of overtime and salary." The fact that the clause specifically identifies two categories of provisions suggests that the clause does not incorporate each and every provision of the Collective Agreement. Further, if the drafters of the contract intended the Article 18 forum selection clause to be incorporated into plaintiff's contract, it would have been unnecessary to include paragraph 6 of the employment contract, which contains a different and somewhat inconsistent forum selection clause. I conclude that plaintiff's employment contract does not incorporate the forum selection clause contained in Article 18 of the Collective Agreement.

II. *Psara Defendants' Motion Re: Forum Non Conveniens*

As noted above, Judge Jelderks declined to address the Psara defendants' alternative motion to dismiss based on forum non conveniens, and although Judge Jones ruled that all claims would proceed in this district, it is unclear whether Judge Jones considered the forum non conveniens arguments with respect to the Psara defendants. Accordingly, I will rule on defendants' alternative basis for dismissal.

***8** A party moving to dismiss on grounds of forum non conveniens has the burden of showing the existence of an adequate alternative forum and that the balance of private and public interest factors favors dismissal. *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 767 (9th Cir.1991). A plaintiff's choice of forum ordinarily will not be disturbed unless private and public interests "strongly favor trial in the foreign country." *Dole Food, Inc. v. Watts,* 303 F.3d 1104, 1118 (9th Cir.2002).

Factors to be weighed include: (1) the location where relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) plaintiff's choice of forum; (4) the parties' contacts with the forum; (5) contacts relating to plaintiff's cause of action in the forum; (6) differences in the cost of litigation in the two forums; (7) availability of compulsory process to compel the attendance of unwilling non-party witnesses; and (8) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir.), cert. denied, 121 S.Ct. 307 (2000).

Defendants argue that Greece is an adequate forum for resolution of plaintiff's claims. If the Psara defendants were the only defendants in this action, the Psara defendants may have been able to meet their burden on this factor. However, there is a significant advantage in having all parties assert their claims in one forum. *Contact Lumber Co. v. P.T. Moges Shipping Co. Ltd.,* 918 F.2d 1446, 1452 (9th Cir.1990). As both Judge Jelderks and Judge Jones correctly decided, plaintiff's claims against Chevron will proceed in this district. Thus, I question whether the defendants have established that Greece in an adequate forum for resolution of this case.

Even if the Psara defendants could meet their burden

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 7
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

on this issue, I do not believe that the balancing factors clearly weigh in favor of dismissal. Factors that support defendants' position include the fact that many of the witnesses in this action are Greek citizens, some of the evidence may be found in Greece, and that Greece undoubtably has an interest in the resolution of an action concerning a Greek ship and a Greek seaman. Similar factors, however, also support plaintiff's position. The accident at issue occurred at a dock in this district, and as Judge Jelderks noted with respect to Chevron, there is a public interest in resolving issues concerning the safety of work on the local waterfront. Some of the sources of proof with respect to the dock and safety and equipment issues may be found here, and Chevron's personnel involved in the incident reside locally. Plaintiff was hospitalized in Portland, thus many of plaintiff's medical records and plaintiff's physicians may be found in this district. Additionally, although defendants are not to blame for the delays in resolution of these issues, I note that this case was filed in August of 2002. I believe dismissal based on forum non conveniens would be inappropriate at this late stage. Finally, I have reviewed the parties' briefing before Judge Jelderks regarding what law would apply to plaintiff's claims. Given that the court has since ruled that the forum selection clauses do not apply to this case and given that plaintiff has dismissed his Jones Act claim, I will defer ruling on the choice of law issue until the parties have had an opportunity to clarify their positions on this issue. Although I make no decisions regarding the choice of law, I agree with plaintiff that even if Greek law applies, this court is perfectly capable of applying Greek law.

**\*9** On balance, I find that the Psara defendants have not made the showing necessary to overcome plaintiff's choice of forum. For these reasons, and for the reasons discussed above regarding the forum selection provisions, plaintiff's claims against all defendants will proceed in this district.

III. *Chevron's Motion for Summary Judgment*

As a preliminary matter, I will address Chevron's motion to strike numerous portions of the evidence plaintiff submitted in response to the motion for summary judgment. Most of this evidence relates to what

Chevron characterizes as subsequent remedial measures, actions taken by Chevron with respect to the mooring line subsequent to the accident at issue. Because I do not rely on the evidence of any purported subsequent remedial measures, those particular objections are moot and I will not rule on them. I also deem moot the motion to strike evidence which defendant contends is not relevant, as I do not rely on the evidence regarding Chevron's internal policies and guidelines, or the evidence of actions Chevron took with respect to other vessels. Nor do I rely on the specific testimony of Gene Ketchum and Gerald Henderson. If I included facts in the discussion above, I considered the facts relevant to the issue before me or necessary as background information.

Turning to Chevron's motion for summary judgment, Chevron contends that it is entitled to summary judgment against plaintiff's negligence claim because plaintiff cannot demonstrate that his injuries were caused in fact or proximately caused by Chevron.

To state a claim for negligence in admiralty, a plaintiff must demonstrate 1) the existence of a duty of care owed by the defendant to the plaintiff; 2) the breach of that duty; 3) a causal connection between the alleged conduct of defendant and the plaintiff's injury; and 4) actual loss, injury or damages suffered by the plaintiff. *Pearce v. United States,* 261 F.3d 643, 647-48 (6th Cir.2001).

With respect to causation, the Supreme Court has suggested that courts sitting in admiralty should draw from "the extensive body of state law applying proximate causation requirements and from treatises and other scholarly sources." *Exxon Co., U.S.A. v. Sofec, Inc.,* 517 U.S. 830, 839 (1996). "[P]roximate cause is a means of cutting off liability for consequences that are so far removed from the conduct at issue that there is no justification for imposing liability." *Christensen v. Georgia-Pacific Corp.,* 279 F.3d 807, 815 (9th Cir.2002). Proximate cause is usually a factual determination that should be made at trial. *Id.*

Plaintiff contends that Chevron was negligent in 1) improperly mooring the ship, 2) failing to act when it had knowledge that the ship's forward spring line had caught on the eye bolt in a dangerous fashion, and 3)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

failing to properly monitor the ship's mooring lines. Chevron's motion is based on a very brief recitation of certain facts surrounding the accident and its conclusion that there is simply a lack of evidence that connects its conduct with plaintiff's injury. Chevron contends that it properly moored the ship and that the manner in which the line was hung up on the eye bolt did not create a dangerous condition. Chevron also contends that any changes to the line were made by the ship's crew or caused by other conditions that did not exist at the time the ship was tied up. Chevron contends that its limited actions were too far removed from the accident to justify imposing liability.

*10 Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.), *cert. denied,* 528 U.S. 375 (1999).

Viewing the facts in the light most favorable to plaintiff, I believe there are questions of fact that preclude summary judgment. Chevron employees participated in tying up the ship at Chevron's dock. Chevron admits that the ship's mooring line wrapped around the hull and created an angle at its intersection with an eye bolt. Chevron also admits that its employees knew of this fact. Whether the irregularity in the spring line initially created a dangerous condition and the effect of subsequent adjustments to the line and changes in other conditions are issues of fact to be determined at trial. I cannot conclude at this point that any acts or omissions on Chevron's part are so far removed from the accident to make the imposition of liability unfair. Accordingly, I deny Chevron's motion for summary judgment.

## CONCLUSION

For the foregoing reasons, the Psara defendants' Mo-

tion for Issuance of Court Decision Regarding Dismissal Based Upon Forum Non Conveniens (# 76) is granted but the court will not dismiss plaintiff's claims under the doctrine of forum non conveniens; the Psara defendants' Motion to Bifurcate Trial Proceedings (# 81) is denied; Chevron's Motion for Summary Judgment (# 97) is denied; and Chevron's Motion to Strike (# 111) is deemed moot.

Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)

**Motions, Pleadings and Filings (Back to top)**

- 2004 WL 3337483 (Trial Motion, Memorandum and Affidavit) Chevron's Opposition to Plaintiff's Motions for Sanctions (Nov. 8, 2004)Original Image of this Document (PDF)

- 2004 WL 3337464 (Trial Motion, Memorandum and Affidavit) Chevron's Supplemental Memorandum in Support of Motion to Amend the Court's Findings and Conclusions (Nov. 2, 2004)Original Image of this Document (PDF)

- 2004 WL 3337448 (Trial Motion, Memorandum and Affidavit) Chevron's Reply Brief in Support of Motion to Amend the Court's Findings of Fact, and to Amend Judgment Accordingly (Aug. 24, 2004)Original Image of this Document (PDF)

- 2004 WL 3337432 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion to Amend the Court's Findings of Fact, and to Amend Judgment Accordingly (Jul. 21, 2004)Original Image of this Document (PDF)

- 2004 WL 3751564 (Trial Motion, Memorandum and Affidavit) Defendant Chevron U.S.A., Inc.'s Motion for Stay of Proceedings to Enforce A Judgment Pending the Disposition of Motion to Amend Findings of Fact and Conclusions of Law (Jul. 21, 2004)Original Image of this Document (PDF)

- 2004 WL 3751566 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Chevron U.S.A., Inc.'s Motion for Stay of Proceedings to Enforce A Judgment Pending the Disposition of Motion to Amend Findings of Fact and Conclu-

Not Reported in F.Supp.2d                                                         Page 9
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

sions of Law (Jul. 21, 2004)Original Image of this
Document (PDF)

• 2004 WL 4961332 (Trial Pleading) Sixth Amended
Complaint in Rem and in Personam (Jun. 10,
2004)Original Image of this Document (PDF)

• 2004 WL 4961331 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum in Support of
Including Damages Paid by the Psara Defendants Pri-
or to Trial in the Total Damages Calculation (Jun. 1,
2004)Original Image of this Document (PDF)

• 2004 WL 4957382 (Expert Report and Affidavit)
Plaintiff's Expert Witness Statement of Dimitrios
Baizos (May 14, 2004)

• 2004 WL 3606948 (Expert Report and Affidavit)
(Report or Affidavit of Henry S. Woods, III) (May
10, 2004)Original Image of this Document (PDF)

• 2004 WL 4957381 (Expert Report and Affidavit)
Plaintiff's Corrected Expert Witness Statement of Jef-
ferson Chen, M.D. (May 10, 2004)Original Image of
this Document (PDF)

• 2004 WL 3606947 (Expert Report and Affidavit)
(Report or Affidavit of Michele Nielsen, RN, BA,
CCM, CRC, COHN-S, CPDM, CLCP) (May 9,
2004)Original Image of this Document (PDF)

• 2004 WL 3751661 (Expert Report and Affidavit)
(Report or Affidavit) (May 8, 2004)Original Image of
this Document (PDF)

• 2004 WL 3337414 (Trial Motion, Memorandum
and Affidavit) Chevron's Supplemental Memor-
andum in Support of Its Motion in Limine to Exclude
Certain Deposition Testimony (May 7, 2004)Original
Image of this Document (PDF)

• 2004 WL 3337420 (Trial Pleading) Answer of De-
fendants M/V Psara and Psara Shipping Corporation
to Cross-Claim of Defendant Chevron USA, Inc.
(May 7, 2004)Original Image of this Document
(PDF)

• 2004 WL 3337405 (Trial Motion, Memorandum
and Affidavit) Defendants M/V Psara's and Psara
Shipping Corporation's Memorandum of Law in Sup-

port of Motion to Certify Interlocutory Appeal to the
Ninth Circuit Court of Appeals Regarding Choice of
Law Determination (May 6, 2004)Original Image of
this Document (PDF)

• 2004 WL 3606946 (Expert Report and Affidavit)
(Report or Affidavit of Joseph T. Capell, M.D.) (May
4, 2004)Original Image of this Document (PDF)

• 2004 WL 3751660 (Expert Report and Affidavit)
(Report or Affidavit) (May 4, 2004)Original Image of
this Document (PDF)

• 2004 WL 4957380 (Expert Report and Affidavit)
(Report or Affidavit of Eugene Silberberg) (May 4,
2004)Original Image of this Document with Ap-
pendix (PDF)

• 2004 WL 3751562 (Trial Motion, Memorandum
and Affidavit) Defendant Chevron's Response to
Psara Defendants' Motion in Limine to Exclude Evid-
ence of Post-Accident Changes to Vessel's Mooring
Configuration (May 3, 2004)Original Image of this
Document (PDF)

• 2004 WL 3337375 (Trial Pleading) Defendant
Chevron's Answer to Plaintiff's Fifth Amended Com-
plaint, Affirmative Defenses and Cross-Claim (Apr.
28, 2004)Original Image of this Document (PDF)

• 2004 WL 3337391 (Trial Pleading) Answer of De-
fendants M/V Psara and Psara Shipping Corporation
to Fifth Amended Complaint; Cross-Claims of De-
fendants M/V Psara and Psara Shipping Corporation
Against Defendant Chevron (Apr. 28, 2004)Original
Image of this Document (PDF)

• 2004 WL 3751560 (Trial Motion, Memorandum
and Affidavit) Defendants' M/V Psara's and Psara
Shipping Corporation's Joinder in Defendant Chevron
USA, Inc's Motion in Limine to Exclude Certain Ex-
perts (Apr. 27, 2004)Original Image of this Docu-
ment (PDF)

• 2004 WL 3337363 (Trial Motion, Memorandum
and Affidavit) M/V Psara's and Psara Shipping Cor-
poration's Memorandum in Opposition to Plaintiff's
Motion for Application of U.S. Law and in Support
of M/V Psara's and Psara Shipping Corporation's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

Crossmotion for Application of Greek Law and for Dismissal (Apr. 22, 2004)Original Image of this Document (PDF)

• 2004 WL 3337328 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Alternative Motion to Strike Plaintiff's Jury Demand and Transfer Case to Non-Jury Calendar (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3337337 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Trial Memorandum (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3337349 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion in Limine to Exclude Evidence of Subsequent Remedial Measures (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751539 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion in Limine to Exclude Expert Testimony of Experts Who Have Failed to Complete A Proper Report Under FRCP 26(a) (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751541 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion in Limine to Exclude Expert Testimony of Experts Who Have Failed to Complete A Proper Report Under FRCP 26(a) (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751543 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion in Limine to Exclude Evidence of Chevron's Policies and Procedures (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751546 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion in Limine to Exclude Evidence of Chevron Policies and Procedures (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751550 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Memorandum in Support of Motion in Limine to Exclude Evidence of Medical Bills Paid By Psara Defendants (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751553 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion in Limine to Exclude Trial Use of Deposition Testimony Pursuant to Fed. R.Civ.P. 32(a) (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751555 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Chevron's Motion in Limine to Exclude Trial Use of Deposition Testimony (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751558 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion to Dismiss for Lack of Subject Matter Jurisdiction, and Alternative Motion to Strike Plaintiff's Jury Demand and Transfer Case to Non-Jury Calendar (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751559 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion in Limine to Exclude Evidence of Subsequent Remedial Measures (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 4957375 (Expert Report and Affidavit) Plaintiff's Supplemental Expert Witness Statement of Xanthippi Petrounia, M.D. (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 4957376 (Expert Report and Affidavit) Plaintiff's Supplemental Expert Witness Statement of David T. Rollins, Ph.D. (Apr. 19, 2004)Original Image of this Document (PDF)

• 2004 WL 3751549 (Trial Motion, Memorandum and Affidavit) Defendant Chevron's Motion in Limine to Exclude Evidence of Medical Bills Paid By Psara Defendants (Apr. 18, 2004)Original Image of this Document (PDF)

• 2004 WL 3606944 (Expert Report and Affidavit) (Report or Affidavit of Henry S. Woods III) (Apr. 3,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2004)Original Image of this Document (PDF)

• 2004 WL 3735107 (Expert Report and Affidavit) (Report or Affidavit) (Apr. 3, 2004)Original Image of this Document (PDF)

• 2004 WL 3751662 (Expert Report and Affidavit) (Report or Affidavit) (Apr. 1, 2004)Original Image of this Document (PDF)

• 2004 WL 3751659 (Expert Report and Affidavit) Expert Report of Eric Fruits, Ph.D. (Mar. 31, 2004)Original Image of this Document (PDF)

• 2004 WL 4957378 (Expert Report and Affidavit) Expert Witness Written Report from Captain Mitchell S. Stoller (Mar. 29, 2004)Original Image of this Document (PDF)

• 2004 WL 3606945 (Expert Report and Affidavit) Declaration of Athanassios N. Yiannopoulos Submitted in Support of Defendants M/V Psara's and Psara Shipping Corporation's Motion for Application of Greek Law (Mar. 28, 2004)Original Image of this Document (PDF)

• 2004 WL 3751656 (Expert Report and Affidavit) Consultation (Mar. 28, 2004)Original Image of this Document (PDF)

• 2004 WL 4957379 (Expert Report and Affidavit) Plaintiff's Expert Witness Statement of Deborah L. Doherty, M.D. (Mar. 25, 2004)Original Image of this Document (PDF)

• 2004 WL 4957377 (Expert Report and Affidavit) (Report or Affidavit of Eugene Silberberg) (Mar. 24, 2004)

• 2003 WL 24058747 (Trial Motion, Memorandum and Affidavit) Reply in Support of Motion to Strike by Defendant Chevron U.S.A., Inc. (Dec. 31, 2003)Original Image of this Document (PDF)

• 2003 WL 24058742 (Trial Motion, Memorandum and Affidavit) Chevron's Reply to Plaintiff's Response to Chevron's Motion for Summary Judgment (Dec. 12, 2003)Original Image of this Document (PDF)

• 2003 WL 24298507 (Trial Motion, Memorandum and Affidavit) Declaration Of Jeffrey J. Schick in Support of Defendant Chevron U.S.A. Inc.'s Reply to Plaintiff's Response to Chevron U.S.A., Inc.'s Motion for Summary Judgment (Dec. 12, 2003)Original Image of this Document with Appendix (PDF)

• 2003 WL 24298508 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Strike by Defendant Chevron U.S.A., Inc. (Dec. 12, 2003)Original Image of this Document (PDF)

• 2003 WL 24058739 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Summary Judgment by Defendant Chevron U.S.A., Inc. (Nov. 17, 2003)Original Image of this Document (PDF)

• 2003 WL 24298509 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment by Defendant Chevron U.S.A., Inc. (Nov. 17, 2003)Original Image of this Document (PDF)

• 2003 WL 24298510 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Summary Judgment by Defendant Chevron U.S.A., Inc. (Nov. 17, 2003)Original Image of this Document (PDF)

• 2003 WL 24058736 (Trial Pleading) Chevron's Answer to Defendant M/V Psara's Crossclaims (Nov. 13, 2003)Original Image of this Document (PDF)

• 2003 WL 24058730 (Trial Pleading) Chevron's Answer to Plaintiff's Fourth Amended Complaint, Affirmative Defenses and Cross-Claim (Nov. 5, 2003)Original Image of this Document (PDF)

• 2003 WL 25270670 (Expert Report and Affidavit) (Report or Affidavit of David T. Rollins, PhD) (Sep. 11, 2003)

• 2003 WL 24058728 (Trial Pleading) Chevron's Answer to Plaintiff's Third Amended Complaint, Affirmative Defenses and Cross-Claim (Jul. 25, 2003)Original Image of this Document (PDF)

• 2002 WL 32833638 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Dismiss by Defendant Chevron U.S.A., Inc. (Nov. 13, 2002)Original Image of this Document (PDF)

Not Reported in F.Supp.2d                                    Page 12
Not Reported in F.Supp.2d, 2004 WL 1305802 (D.Or.)
**(Cite as: 2004 WL 1305802 (D.Or.))**

• 3:0201173 (Docket) (Aug. 27, 2002)

• 3:02cv01173 (Docket) (Aug. 27, 2002)

• 2002 WL 33000826 (Trial Motion, Memorandum and Affidavit) Motion To Strike by Defendant Chevron U.S.A., Inc. (2002)Original Image of this Document (PDF)

• 2002 WL 33000828 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss by Defendant Chevron U.S.A., Inc. (2002)Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)
**(Cite as: 1999 WL 1277244 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
NEW YORK MARINE & GENERAL INSURANCE
COMPANY, Plaintiffs,
v.
TRADELINE (L.L.C.), and Deepak Fertilisers and
Petrochemicals Corp ., Ltd.
Defendants.
TRADELINE (L.L.C.), Third-Party Plaintiff,
v.
MUTUAL MARINE OFFICE, INC., Third-Party De-
fendant.
NEW YORK MARINE & GENERAL INSURANCE
COMPANY, Second Third-Party Plaintiff,
v.
FRENKEL & CO., INC., Second Third-Party De-
fendant.
**No. 98 Civ. 7840(HB).**

Nov. 29, 1999.

*MEMORANDUM & ORDER*
BAER, J.

**\*1** Plaintiff New York Marine & General Insurance
Company ("New York Marine") commenced this
lawsuit seeking a declatory judgment that, *inter alia,*
it is not liable to defendants Tradeline L.L.C.
("Tradeline") and Deepak Fertilisers and Petrochem-
icals Corp., LTD. ("Deepak") with respect to a claim
for loss brought under special marine cargo insurance
policies. Defendants Tradeline and Deepak counter-
claimed against New York Marine, and Tradeline
also brought a third-party complaint against Mutual
Marine Office, Inc. ("MMOI"), the general agent of
and claim handler for the plaintiff. New York Marine
also brought a third-party complaint against Frenkel
& Co., Inc. ("Frenkel"), Tradeline's insurance broker.
Deepak now moves for summary judgment on its
first counterclaim against New York Marine, and in
the alternative, on its cross claims against co-
defendant Tradeline. In its opposition papers, New

York Marine cross moves for summary judgment
against Deepak and Tradeline. Defendant Tradeline
also moves for partial summary judgment against
New York Marine, "for all the reasons set for by co-
defendant Deepak in its motion for partial summary
judgment against New York Marine." Second third-
party defendant Frenkel moves for summary judg-
ment against New York Marine. Finally, to maximize
the inefficiency of this process, New York Marine
and MMOI move to dismiss, *inter alia,* certain of
Deepak's counterclaims against New York Marine, as
well as certain of Tradeline's causes of action against
MMOI. For the reasons discussed below, New York
Marine and MMOI's motion to dismiss is GRANTED
in part and DENIED in part, and the remaining mo-
tions for summary judgment are DENIED.

*I. BACKGROUND*
On or about April 18, 1998, Deepak purchased two
shipments of diammonium phosphate ("DAP") from
Tradeline in the amounts of 28,000 metric tons
("MT") and 21,509.155 MT, respectively. The ship-
ments were purchased on "CIF" (cost, insurance and
freight) terms for a total purchase price of U.S.
$10,892,014.10. The two shipments were to be trans-
ported aboard the vessel M/V Sea Guardian (the "ves-
sel" or "Sea Guardian") from Mexico to India, with a
single port of discharge in India's Port of Kandla.

Pursuant to the sales agreement between Tradeline
and Deepak, Tradeline was obligated to procure in-
surance, on a warehouse to warehouse basis, for the
transit risks associated with these shipments. In order
to provide insurance coverage to its customers,
Tradeline, through its New York insurance broker
Frenkel, had previously obtained an Open Cargo
Policy ("the policy"). The policy was underwritten by
New York Marine, and issued to Tradeline by the
plaintiff's managing general agent, MMOI. The
policy had an effective date of May 9, 1994, and re-
mained in effect from year to year thereafter until
canceled.

Under the terms of the policy, insurance coverage
automatically attached to all cargo shipments made
by Tradeline and to all cargo shipments for the ac-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)
(Cite as: 1999 WL 1277244 (S.D.N.Y.))

Page 2

count of others at Tradeline's direction. In order to provide its customers with evidence of such insurance, the policy authorized Tradeline to countersign and issue "Certificates and/or Special Policies of Insurance" ("certificates"). For this purpose New York Marine, through MMOI, forwarded to Tradeline pre-printed certificates. Clause 43 of the policy expressly stated that the certificates were deemed to include all of the clauses contained in the underlying policy.

*2 In accordance with its authority under the policy, on or about April 18, 1998, Tradeline countersigned and issued to Deepak certificates numbers 367 and 368, evidencing insurance coverage under the policy for the two shipments. New York Marine does not dispute that these certificates were validly issued. Thus, as of the date of the sailing of the Sea Guardian, Deepak had insurance coverage on the two shipments, as evidenced by certificates 367 and 368 ("original certificates").

On or about May 27, 1998, as the vessel approached the Port of Kandla, Deepak, through inquiry to Tradeline, requested an upgrade in its already existing insurance coverage to include the risk of possible rain water damage to the DAP. That same day, Tradeline requested Frenkel to obtain an amendment of coverage to include the additional coverage for rainwater damage ("rainwater upgrade"). On or about June 5, 1998, MMOI, on behalf of New York Marine, set the rate for the requested upgrade and conveyed this information to Tradeline. With the understanding that New York Marine agreed to the upgrade, Deepak accepted the rate on or about June 8, 1998, and Tradeline paid the additional premium for the increased coverage. Thereafter, as authorized by the policy, Tradeline delivered "replacement" certificates numbered 377 and 378 ("replacement certificates") to Deepak so as to evidence the June 5 th amendment to coverage for rainwater damage.

During this time, the vessel arrived at the Port of Kandla on or about May 28, 1998. The transfer of the DAP cargo from the vessel onto certain barges commenced on May 29, and continued through June 8, 1998. On June 9, 1998, however, a cyclone struck the port, with high winds, rain, tidal waves, and massive flooding. As a result of this devastation, Deepak sus-

tained a loss on the DAP of $1,549,853.70.

On June 12, 1998, Deepak gave notice of the loss to New York Marine, through Frenkel. The notice of loss specifically referenced the original certificates. Thereafter, on or about June 15, 1998, Deepak requested that Tradeline provide written confirmation of the rainwater upgrade. Tradeline wrote "canceled" across the original certificates.

By letter dated September 21, 1998, New York Marine declined Deepak's claim. The plaintiff's complaint alleges that Frenkel had failed to inform MMOI of, inter alia, the fact that the shipment for which insurance was sought had commenced six weeks earlier and had arrived at its destination prior to Frenkel's communications with MMOI. (Complaint ("Compl.") ¶ 20.) For this and other reasons, which New York Marine alleges was a breach by the defendants of their duty of good faith, (Compl.¶ 27), the plaintiff declined coverage. The instant litigation followed.

## II. DISCUSSION
### A. Choice of Law

As a threshold issue necessary to guide the analyses of the various causes of actions asserted by each of the parties, the Court must first determine what law applies to the instant action.

*3 The insurance policy in this case is a maritime contract within the admiralty and maritime jurisdiction of this Court, and as such, is governed by the general federal maritime law of the United States. *Advani Enterprises, Inc. v. Underwriters at Lloyds,* 140 F.3d 157, 162 (2d Cir.1998). "Federal maritime law requires [a court] to determine the scope and validity of the [marine insurance] policy provisions [ ] involved and the consequences of breaching them by using state law." *Id.* at 162 (quoting *Wilburn Boat Co. v. Fireman's Fund Ins.,* 348 U.S. 310, 316 (1955)) (internal quotations omitted). In determining which state's law to apply in this instance, this Court, sitting in admiralty, must apply federal choice of law rules. *Id.* As the Second Circuit stated in *Advani,*

[u]nder federal choice-of-law rules, we determine which state law to use by ascertaining and valuing points of contact between the transaction [giving

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)
**(Cite as: 1999 WL 1277244 (S.D.N.Y.))**

rise to the cause of action] and the states or governments whose competing laws are involved. More concretely, this choice-of-law analysis should include an assessment of the following contacts: (1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.

*140 F.3d at 162* (internal quotations and citations omitted).

An analysis of these factors leads the Court to conclude that New York law should govern. To be sure, the contract does contain a choice-of-law provision which calls for the application of English law. However, "this contact alone is not dispositive." *Id. at 162.* Although it is true that "under federal choice of law rules, when a maritime contract contains a choice-of-law clause, the law chosen by the parties governs," there is an exception to the rule that applies when the chosen jurisdiction "has no substantial relationship to the parties or the transactions." *Farrell Lines Incorporated v. Columbus Cello-Poly Corporation,* 32 F.Supp.2d 118, 127 (S.D.N.Y.1997) (internal quotations and citations omitted), *aff'd,* 161 F.3d 115 (2d Cir.1998). England bears virtually no relationship to either the parties or the transactions involved here, and as such, the policy's choice of law provision is not controlling.

Here the policy was negotiated, issued and signed in New York by and between Tradeline's New York broker, Frenkel, and MMOI, the managing agent of New York Marine. Moreover, New York Marine maintains its principal place of business, through MMOI, in New York City. In addition, all payments and declaration of shipments required under the policy, as well as any cancellations of and modifications to the policy, were explicitly directed by the policy's terms to be sent to Frenkel, Tradeline's New York broker, in New York. [FN1] Also worthy of note is that Clause 42 of the policy, presumably drafted by New York Marine, expressly limits any lawsuits under the contract to the time proscribed by the New York statute of limitations. Finally, the plaintiff

itself, having chosen to file this action in the Southern District of New York, acknowledges in its memorandum of law that New York law is "the law of the place of most of the contacts." (*See* Pl.'s Mem. Supp. Dismiss at 7.) Thus, this Court will apply New York law in construing the policy and the causes of action arising therefrom.

> FN1. The remaining *Advani* factors are not instructive. For example, the policy's "place of performance" and the location of the subject matter of the contract are numerous ports around the world, given that the policy provides coverage to multiple insureds on a worldwide basis.

**C.** *Motion to Dismiss by New York Marine & MMOI*

**1.** *Standard*

**\*4** Dismissal of a complaint pursuant to Rule 12(b)(6) is permitted "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Scotto v. Almenas,* 143 F.3d 105, 109-10 (2d Cir.1998). "The task of the court in ruling on a Rule 12(b)(6) motion is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' ' *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984)). In deciding a 12(b)(6) motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York,* 143 F.3d 31, 36 (2d Cir.1998).

The plaintiff moves (1) to strike Deepak's jury demand, [FN2] and (2) to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Deepak's counterclaims for punitive damages and attorneys' fees. MMOI joins in New York Marine's motion and moves to dismiss defendant Tradeline's cause of action for compensatory and punitive damages against MMOI, as well as Tradeline's claim under New York General Business Law § 349.

> FN2. In its opposition papers, Deepak con-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                          Page 4
Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)
**(Cite as: 1999 WL 1277244 (S.D.N.Y.))**

sents to a bench trial. (*See* Deepak Mem. Opp. at 2.) Accordingly, this aspect of the plaintiff's motion is moot.

### 2. *Deepak's & Tradeline's Claims for Punitive Damages*

Defendants Deepak and Tradeline each seek punitive damages against both New York Marine and MMOI, based on the latter two parties' alleged bad faith breach of contract in denying Deepak coverage under the policy. These claims, however, cannot survive the pleading requirements of well-settled New York law.

"[D]amages arising from the breach of contract will ordinarily be limited to the contract damages necessary to redress the private wrong, but ... punitive damages may be recoverable if necessary to vindicate a public right." *New York University v. Continental Insurance Co.*, 639 N.Y.S.2d 283, 287 (1995). To state a claim for punitive damages as an additional remedy when the claim arises from a breach of contract, a plaintiff must show that (1) the defendant's conduct is actionable as an independent tort; (2) the tortious conduct must be of a particularly egregious nature; (3) the conduct must be directed at the plaintiff; and (4) the defendant's conduct was a part of a pattern directed at the public. *Id.*

Applying this test, this claim must fail. For openers, Deepak fails to identify an independent tort by which the plaintiff's conduct would be actionable. *Id.* ("Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering the defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract."). Moreover, and equally fatal to Deepak's claim on this score, is that Deepak does not--and very likely could not--allege that New York Marine's conduct was part of a pattern directed at the public. *See American Transit Insurance v. Associated International Insurance Company*, 690 N.Y.S .2d 237, 238 (1 st Dep't 1999) ("Wrongful though defendant's breach of ... contract may have been, the pleaded allegations do not suffice as a predicate for an award of punitive damages since the underlying wrongful conduct was focused upon plaintiff and not aimed systematically

at the public generally."). Accordingly, Deepak's sixth counterclaim must be DISMISSED. Because it's claim for punitive damages rests on grounds similar to those of Deepak's, Tradeline's third cause of action is also DISMISSED.

### 2. *Deepak's Counterclaim for Attorneys' Fees*

**\*5** Deepak's fifth counterclaim seeks recovery of legal fees totaling over $300,000 it has spent in the case at bar. New York Marine contends that such fees are not recoverable under a breach of contract claim. I disagree.

The New York courts recognize an insured's ability, in limited circumstances, to recover its attorneys' fees from an insurer that denies it coverage. For example, in *New England Mutual Life Ins. Co. v. Johnson*, 589 N.Y.S.2d 736, 738 (Sup.Ct. New York Co.1992), the court stated:

> While attorneys' fees are rarely awarded in actions involving breach of contract, two exceptions exist which are applicable here. First, attorneys' fees can be awarded to insureds forced to defend against an insurer's actions to escape coverage. Second, attorneys' fees may be awarded where there has been an unreasonable, bad faith denial of coverage.

*Id.* at 738. *See also, FDIC v. National Surety Corporation*, 425 F.Supp. 200, 204 (E.D.N.Y.1977) ("If [the insured] can ... satisfy the requirement of a showing of such bad faith in denying coverage ... then [the insured] may be entitled to the [attorneys' fees] which [the insured] seeks."). Indeed, a similar result is reached under federal admiralty law as well. *See American National Fire Insurance Company v. Kenealy*, 72 F.3d 264, 270 (2d Cir.1995) ( "[T]he general rule is that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith.") (internal citation omitted); *Interpool Limited v. Bernuth Agencies, Inc.*, 959 F.Supp. 644, 651 (S.D.N.Y.1997) (same), *aff'd*, 129 F.3d 113 (2d Cir.1997). As such, the plaintiff's motion with respect to Deepak's fifth counterclaim is DENIED.

### 3. *Tradeline's Claim for Deceptive Acts and Practices under N.Y. G.B.L. § 349*

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)
**(Cite as: 1999 WL 1277244 (S.D.N.Y.))**

New York General Business Law ("GBL") Section 349 provides that "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. GBL § 349(a). "[A]ny person who has been injured ... may bring an action in his own name to enjoin such unlawful act or practice, [or] an action to recover his actual damages." N.Y. GBL § 349(h). The elements of a claim under this section are: (1) that the practice alleged was misleading in a material respect; and (2) that the plaintiff was injured. Steinmetz v. Toyota Motor Credit Corporation, 963 F.Supp. 1294, 1306 (E.D.N.Y.1997). MMOI does not argue that Tradeline has failed to plead a prima facie case under the statute, but rather contends that § 349 is unavailable under the circumstances because, in this context, the statute does not protect transactions of this nature. I agree. This statute, enacted as consumer protection legislation in 1970, has little or no relationship to the claim here.

Citing Riordan v. Nationwide Mutual Fire Insurance Co., 977 F .2d 47 (2d Cir.1992), Tradeline contends that § 349 may apply to an insurance company's interactions with its insureds. More recent case law, however, holds otherwise. Indeed, in New York University v. Continental Insurance Co., the New York Court of Appeals held that the insurance policy at issue there was not "consumer-oriented" and thus was not the "modest type of transaction the statute was primarily intended to reach." 639 N.Y.S.2d at 290. The court noted that the policy there was at its core a private contract dispute whose coverage did not "affect[ ] the consuming public at large." Id. Similarly here, the plaintiff's alleged conduct--although potentially involving several insureds under the policy--implicates a conflict more akin to a private contract dispute that would by no means "have a broad impact on consumers at large." Id. at 290. As such, Tradeline's third cause of action is DISMISSED.

*D. The Parties' Remaining Motions For Summary Judgment*

*1. Standards*

*6 Summary judgment is properly granted only when the pleadings, depositions, answers to interrogatories,

admissions on file, and affidavits show that there is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed.R .Civ.P. 56(c). The substantive law determines what facts are material to the determination. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In assessing the record before the court, the "non-movant will have his allegations taken as true," Distasio v. Perkin Elmer Corporation, 157 F.3d 55, 61 (2d Cir.1998), but he or she may not oppose summary judgment merely by offering conclusory allegations or denials. See Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir.1997).

With respect to the parties' motions for summary judgment--each submitted with a virtual sea of affidavits, declarations, exhibits and the like--questions of fact abound and will have to wait resolution at trial.

*III. CONCLUSION*

For the reasons stated above, the New York Marine's and MMOI's motion to dismiss is GRANTED in part and DENIED in part, and the parties' motions for summary judgment are DENIED in their entirety. Pursuant to this Court's September 1, 1999 memo-endorsed order, the joint-pretrial order is due on or before January 15, 2000, and the case remains on the January 2000 trailing trial calendar. Trial is tentatively scheduled to begin on Monday, January 31, 2000. The parties, however, are instructed to keep in touch with chambers as this date may change.

SO ORDERED.

Not Reported in F.Supp.2d, 1999 WL 1277244 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1999 WL 33933051 (Trial Motion, Memorandum and Affidavit) Declaration (Oct. 07, 1999)

• 1:98cv07840 (Docket) (Oct. 30, 1998)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 677908 (N.D.Cal.)
**(Cite as: 2001 WL 677908 (N.D.Cal.))**

**C**

<u>**Motions, Pleadings and Filings**</u>

Only the Westlaw citation is currently available.

United States District Court, N.D. California.
STARLIGHT COMPANY, INC., etc., Plaintiff,
v.
ARLINGTON PLASTICS MACHINERY, INC., an
Illinois corporation; and Louis
Baccarini, Defendants.
**No. C011121SI.**

June 8, 2001.

ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFF'S COMPLAINT; GRANT-
ING
DEFENDANTS' MOTION FOR TRANSFER OF
VENUE; AND TRANSFERRING ACTION TO
THE
NORTHERN DISTRICT OF ILLINOIS
<u>ILLSTON</u>, J.

**\*1** On June 8, 2001, this Court heard argument on de-
fendants' motion to dismiss plaintiff's complaint or,
alternatively, motion for transfer of venue. Having
considered the arguments of the parties and the pa-
pers submitted, the Court hereby DENIES defend-
ants' motion to dismiss the complaint and GRANTS
defendants' motion for transfer of venue for the reas-
ons set forth below.

BACKGROUND

Plaintiff Starlight Company, Inc., successor in in-
terest to Johnny Gu dba Starlight Company, is en-
gaged in the business of recycling plastic bags in
Oakland, California. Complaint at ¶¶ 1, 6. Defendant
Arlington Plastics Machinery Inc. ("Arlington") is an
Illinois corporation with its primary place of business
in Elk Grove Village, Illinois. Arlington employs de-
fendant Louis Baccarini ("Baccarini") as a sales exec-
utive. Complaint at ¶¶ 2-3.

Plaintiff's business uses a machine known as a "pellet-
izing line" to transform plastic bags into small plastic

pellets that can then be used to make new plastic
bags. Complaint at ¶ 6. Arlington sells new and used
industrial machinery, including pelletizing lines. *Id.*
at ¶ 7. In or around August 2000, Arlington, through
its authorized agent Baccarini, entered into negoti-
ations with Gu for the sale of a used pelletizing line.
*Id.* at ¶¶ 8-9.

The parties executed a sales order (the "Contract") on
October 2, 2000. *Id.* at ¶ 10. The Contract is a one-
page double-sided document on yellow paper. Stan-
wyck Decl. Ex. A. Among the information included
on the front of the Contract is a description of the ma-
chine, the extended price of $130,000, and the signa-
tures of both parties. *Id.* The following language ap-
pears at the bottom of the page:

"We offer to purchaser the following articles for
the purchase price specified above and subject to
the terms and conditions set forth on the reverse
side of this Agreement and Offer. This Agreement
shall become effective upon, but not until, execu-
tion by ARLINGTON PLASTICS MACHINERY,
INC. AND PURCHASER. Terms and conditions
on reverse side are part of this agreement as effect-
ively as though they precede the signature of pur-
chaser." *Id.*

On the backside of the Contract the Terms and Con-
ditions appear in blue print. *Id.* Paragraph 10 of the
Terms and Conditions contains a forum-selection
clause:

"MISCELLANEOUS. This contract and all causes
of action relating to the sale and the terms hereof,
or arising by virtue hereof, shall be construed
solely according to the laws of the State of Illinois.
The Buyer and Seller agree that the courts of
Illinois shall be the sole, exclusive and only forum
in which disputes arising hereunder or as a con-
sequence hereof shall be adjudicated. The Buyer
and Seller also agree that venue for all claims
arising hereunder or by virtue hereof shall, at all
times, be solely and exclusively in Cook County,
Illinois. Buyer and Seller shall not be amenable to
suit or other action in any forum or jurisdiction oth-
er than in the courts of Illinois regardless of the cir-
cumstances or facts of any claim hereunder or as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 677908 (N.D.Cal.)
**(Cite as: 2001 WL 677908 (N.D.Cal.))**

result hereof." *Id.*

**\*2** In the months following the Contract date, disputes arose between the parties regarding the performance of various provisions of their agreement, including the machine's delivery date, inspection of the machine, and parts included in the machine. Complaint at ¶¶ 14-22. The parties attempted to resolve the matter informally via telephone conversations. *Id.* at ¶¶ 21-22, Stanwyck Decl. ¶ 3, Clarke Decl. ¶¶ 3-4. Plaintiff alleges that during one conversation between Plaintiff's attorney, Peter Stanwyck, and Arlington President Jack Clarke, Clarke told Stanwyck "if you want the expense of coming to Chicago and proving your case here, then go ahead." Stanwyck Decl. ¶ 3. Clarke explains that he was merely expressing "confusion as to why Plaintiff would be pursuing litigation in Chicago when we had already reached an understanding to resolve this dispute." Clarke Decl., ¶ 4.

On March 19, 2001, plaintiff filed suit alleging breach of contract, fraud, negligent misrepresentation, recission and declaratory relief. Defendants now move to dismiss the complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), based on the parties' contractual forum-selection clause which requires adjudication of all disputes arising from the Contract in Illinois. In the alternative, defendants move for transfer to the Northern District of Illinois for improper venue pursuant to 28 U.S.C. § 1406(a).

LEGAL STANDARD
Federal law governs the enforceability of forum-selection clauses in diversity actions. *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir.1988). Furthermore, motions to dismiss based on a forum-selection clause are treated as a Rule 12(b)(3) motion to dismiss for improper venue. *Arguetta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996). Therefore, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis. *Id.* A forum-selection clause is prima facie valid and should not be set aside unless the party challenging enforcement can show it is " 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct.

1907, 1913 (1972). The Supreme Court re-interpreted the *Bremen* standard of "unreasonable under the circumstances" as a standard of "fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 1528 (1991). Such unfairness has been given a narrow interpretation and a party seeking to avoid a forum-selection clause must satisfy a "heavy burden of proof." *Id.* Unfairness can be proven only in limited circumstances, such as showing bad faith in the choice of venue or that the party signing the contract had inadequate notice of the provision. *Id.*

If a forum-selection clause is found valid and enforceable, courts have discretion to dismiss an action commenced in a forum other than that specified in the forum-selection clause or transfer the action to the district court located in the specified forum. 28 U.S.C. § 1406(a). Courts should consider the basic equities of the case in deciding whether to transfer or dismiss, including any statute of limitations bar, and the harshness of dismissal in light of such a bar, and the relative injustice imposed on the parties. *King v. Russell,* 963 F.2d 1301, 1304-05 (9th Cir.1992).

DISCUSSION
A. Validity of the Forum-Selection Clause

**\*3** Defendants argue that the forum-selection clause is valid and enforceable and therefore the Complaint should be dismissed. Plaintiff argues that the forum-selection clause should be invalidated due to inadequate notice and defendants' bad faith. Bad faith can be demonstrated by showing that a choice of forum is designed to discourage plaintiffs from pursuing legitimate claims or by showing that defendant obtained plaintiffs' accession to the forum clause by fraud or overreaching. *Carnival,* 499 U.S. at 595, 111 S.Ct. at 1528.

Defendants operate their business out of Elk Grove, Illinois and selected Illinois as the forum state in order to "consolidate litigation involving far-flung operations." Reply at 7:24-26. As in *Carnival,* the clause here operates to provide Arlington with a forum in its principal place of business, which suggests a motive other than bad faith. *Carnival,* 499 U.S. at 595, 111 S.Ct. at 1528. While plaintiff offers some

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2001 WL 677908 (N.D.Cal.)
**(Cite as: 2001 WL 677908 (N.D.Cal.))**

evidence (i.e., Clarke's statement made during tele-
phone conversation with Stanwyck) that defendants
believed their choice of forum would discourage the
pursuit of plaintiff's lawsuit, this is not sufficient to
overcome the presumption of validity courts tradi-
tionally give to forum-selection clauses when there is
a reasonable basis, such as principal place of busi-
ness, for the forum selected. *See Carnival,* 499 U.S.
at 595, 111 S.Ct. at 1528; *Effron v. Sun Line Cruises,*
67 F.3d 7, 10 (2nd Cir.1995).

Plaintiff's claims that the forum-selection clause was
obtained through fraud or overreaching are unconvin-
cing. A forum-selection clause is unenforceable for
fraud only "if the inclusion of that clause in the con-
tract was the product of fraud or coercion." *Scherk v.
Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct.
2449, 2457 n. 14 (1974). The party seeking to inval-
idate a forum-selection clause must show that the
clause itself was fraudulently included in the agree-
ment, not claim the entire agreement was a product of
fraud. *Batchelder v. Kawamato,* 147 F.3d 915, 919
(9th Cir.1998). Plaintiff claims that "including the
forum-selection clause under the heading 'Miscel-
laneous', in and of itself could be considered to be a
fraud." Opp. at 7:1-2. However, this does not satisfy
the high bar for proving fraud in a contract which re-
quires a showing of intent to mislead. Restatement
(Second) of Contracts § 162 (1978). Particularly giv-
en that the Contract contained a warning directly
above the signature line to read the terms and condi-
tions on the reverse side, it does not appear that de-
fendants' use of the heading "Miscellaneous" was an
attempt to intentionally mislead plaintiff.

Plaintiff also argues that it was not given reasonable
notice of the forum-selection clause. In *Deiro v.
American Airlines,* 816 F .2d 1360 (9th Cir.1987), the
Ninth Circuit employed a two-pronged analysis in de-
termining whether airline passengers are bound by
"boilerplate" conditions located on passenger tickets.
"The 'proper test of reasonable notice is an analysis
of the overall circumstances on a case-by-case basis,
with an examination not only of the ticket itself, but
also of any extrinsic factors indicating the passenger's
ability to become meaningfully informed of the con-
tractual terms at stake.' " *Id.* at 1364 (quoting
*Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861,

866 (1st Cir.1983)). In this case, both the physical at-
tributes of the contract and the extrinsic factors per-
taining to plaintiff's ability to inform itself of the con-
tractual terms indicate that plaintiff had adequate no-
tice of the forum-selection provision. A statement
directly above the signature line on the face of the
Contract clearly explains that the terms on the back-
side are binding. Although the forum-selection provi-
sion was included under the relatively vague heading
of "Miscellaneous," this is not sufficient to demon-
strate that plaintiff was unaware of the clause's exist-
ence. The "Terms and Conditions" are only one-page
in length and this was an arms-length transaction
between two commercial parties. Parties dealing at
arms length have no duty to explain to each other the
terms written in a contract. *Cohen v. Wedbush,
Noble, Cooke, Inc.,* 841 F.2d 282, 287 (9th Cir.1988).
It is not unreasonable to expect that when negotiating
for the purchase of $130,000 worth of machinery, a
party should familiarize itself with the relatively short
terms of the agreement despite the color of the print,
the font size, or the vague heading.

**\*4** The adhesive nature of the terms and conditions
does not render a forum-selection provision invalid.
The *Carnival* court upheld a forum-selection provi-
sion, even though the non-negotiated "contract was
purely routine and doubtless nearly identical to every
other commercial passage contract issued by petition-
er and most other cruise lines." *Carnival,* 499 U.S. at
593, 111 S.Ct. at 1527. *See also Fireman's Fund In-
surance Company v. M.V. DSR Atlantic,* 131 F.3d
1336, 1338 (9th Cir.1997) (finding that if a forum-
selection clause is unambiguous it is irrelevant if the
contract is one of adhesion), *Silva v. Encyclopedia
Britannica, Inc.,* 239 F.3d 385, 386 (1st Cir.2001)
(upholding "boilerplate" forum-selection clause in an
encyclopedia sales contract that appeared in small
print on the back of the contract), *Lambert v. Kysar,*
963 F.2d 1110, 1113 (1st Cir.1993) (upholding "boil-
erplate" forum-selection clause appearing on back-
side of form contract).

Finally, plaintiff argues that due to defendants' fraud-
ulent conduct the entire Contract should be rescinded
and the forum-selection clause should be found unen-
forceable. Plaintiff alleges that defendants intention-
ally made false promises during the Contract's forma-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 4
Not Reported in F.Supp.2d, 2001 WL 677908 (N.D.Cal.)
**(Cite as: 2001 WL 677908 (N.D.Cal.))**

tion and fraudulently induced plaintiff's assent. However, plaintiff presents no cases where a court has rescinded an entire contract for the purpose of invalidating a forum-selection clause. Granting a rescission of the Contract to invalidate the forum-selection clause would essentially give plaintiff the relief it seeks without requiring it to prove its case. As noted above, courts require that a party must plead specifically that a forum-selection clause was fraudulently ogtained to invalidate the provision. This requirement ensures that the effect of a court's ruling on a forum-selection clause is limited to the clause itself and will not deprive parties of a full opportunity to litigate other issues. When a contract includes a valid forum-selection clause, a court in the selected forum must determine whether rescission of the entire contract is ultimately appropriate.

The Court concludes the forum-selection clause is valid and enforceable. Any causes of action arising out of or implicating the contract containing the forum-selection clause are subject to that clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir.1988). All causes of action alleged in the Complaint arise out of the September 2000 contract containing the forum-selection clause, therefore all causes are subject to it.

B. Dismissal or Transfer

During oral argument, plaintiff's counsel indicated that transfer would be preferred over dismissal in the event that the Court upheld the forum-selection clause. The Court accepts plaintiff's request and finds that transfer to the Northern District of Illinois is appropriate in this case.

CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss for improper venue and GRANTS defendants' motion for transfer of venue. [Docket No. 9] This action is TRANSFERRED to the Northern District of Illinois pursuant to the forum-selection clause in the Contract at issue.

**\*5** IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2001 WL 677908 (N.D.Cal.)

**Motions, Pleadings and Filings (Back to top)**

• 3:01CV01121 (Docket) (Mar. 19, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.