Jeffrey M. Feldman (Alaska Bar No. 7605029)
FELDMAN ORLANSKY & SANDERS
500 L Street, Suite 400
Anchorage, AK 99501
Telephone:     (907) 272-3538
Facsimile:     (907) 274-0819
Email:     feldman@frozenlaw.com

Geoffrey M. Howard (California Bar No. 157468)
Sivan Gai (California Bar No. 224152)
Abigail L. Ramsden (California Bar No. 239544)
BINGHAM MCCUTCHEN
*(Admitted Pro Hac Vice)*
3 Embarcadero Center
San Francisco, CA 94111
Telephone:     (415) 393-2485
Facsimile:     (415) 393-2286
Email:     geoff.howard@bingham.com
           sivan.gai@bingham.com
           abigail.ramsden@bingham.com

David E. Garrett (California Bar No. 190923)
ORACLE USA, INC.
*(Admitted Pro Hac Vice)*
500 Oracle Parkway, M/S 5op7
Redwood City, CA 94070
Telephone:     (650) 506-4366
Facsimile:     (650) 506-7114
Email:     dave.garrett@oracle.com

*Attorneys for Defendant Oracle USA, Inc., a Delaware Corporation*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT FAIRBANKS

| | | |
|---|---|---|
| DENA'NENA'HENASH, INC. d/b/a<br>TANANA CHIEFS CONFERENCE,<br>An Alaska non-profit corporation,<br><br>Plaintiff,<br>v.<br>ORACLE CORPORATION, a<br>Delaware Corporation,<br><br>Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:06-cv-00006 RRB<br><br>DEFENDANT'S REPLY IN SUPPORT<br>OF MOTION TO DISMISS |

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    THE COURT SHOULD DISMISS FOR IMPROPER VENUE ..................................... 3

       A.     Alleging A Breach Of The Services Agreement Does Not Make Venue
              Proper In Alaska ................................................................................ 4

       B.     TCC Disingenuously Disclaims Any Breach Of License Agreement Claim ........ 5

       C.     TCC's Tort Allegations Relate To The License Agreement ................................ 7

              1.     TCC Misstates Two Legal Standards Relevant To Its Tort Claims........... 7

              2.     TCC's Opposition Confirms That Its Fraud Claims Relate To The
                     License Agreement ..................................................................... 9

       D.     TCC's Request to Amend Should Be Denied...................................................... 12

       E.     The Court Should Dismiss The FAC ................................................................. 12

III.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE FRAUD,
       NEGLIGENT MISREPRESENTATION, CONSTRUCTIVE FRAUD, AND
       UTPA CLAIMS FOR FAILURE TO STATE A CLAIM UNDER 12(B)(6)................. 14

       A.     The Court Should Dismiss TCC's Fraud and Negligent Misrepresentation
              Claims ........................................................................................... 14

              1.     TCC's Failure to Specify the Who, What, When, and Where ................ 15

              2.     TCC Never Addresses What is False About The Allegations ................ 17

              3.     TCC Admits Its *Lum* Problem And Fails To Address Its Other
                     Failures To Establish Falsity....................................................... 18

       B.     TCC Fails To Plead A Cause of Action For Constructive Fraud ....................... 20

              1.     Constructive Fraud Requires The Breach Of A Duty ............................ 20

              2.     TCC Alleges Only A Fiduciary Duty In The FAC .................................. 21

              3.     No Other Special Duty Arises Between Commercial Buyers And
                     Sellers....................................................................................... 21

       C.     The Court Should Dismiss TCC's UTPA Claim ................................................. 22

              1.     Alaska Law Does Not Apply ..................................................... 22

              2.     Even If Alaska Law Applies, (B)(4) And (B)(14) Cannot Apply To
                     The Instant Case As A Matter Of Law .................................... 24

IV.    CONCLUSION........................................................................................... 25

## TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Adams*, 89 P.3d 743 (Alaska 2004) ........................................................................ 20, 21

*Alaska Gasline Port Auth. V. ExxonMobil Corp.*, No. 4:05-cv-0026-RRB, 2006
  WL 1718195 (D. Alaska June 19, 2006) ........................................................................... 4

*Androutsakos v. M/V Psara*, 2004 WL 1305802 (D. Or. Jan. 22, 2004) ........................................ 7

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996) ............................................... 4

*Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912 (9th Cir. 2001) .............................. 24

*Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399 (2000) ........................................ 20

*Bank of the West v. Valley Nat. Bank of Arizona*, 41 F.3d 471 (9th Cir. 1994) ........................... 14

*Bartlett v. Andersen LLP*, 55 Fed. Appx. 819 (9th Cir. 2003) ........................................ 16,17, 18

*Big Island Yacht Sales, Inc. v. Dowty*, 848 F. Supp. 131 (D. Hawaii 1993) ............................... 13

*Bonin v. Calderon*, 59 F.3d 815 (9th Cir. 1995) .................................................................. 12

*Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374 (Alaska 1984) ................................................. 19

*C&K Engineering Contractors v. Amber Steel Co.*, 23 Cal. 3d 1 (1978) ...................................... 9

*Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) ....... 15, 18

*Cook v. Fox*, 537 F.2d 370 (9th Cir. 1976) ....................................................................... 13

*Cooper v. Picket*, 137 F.3d 616 (9th Cir. 1997) ................................................................. 15

*Costlow v. Weeks*, 790 F. 2d 1486 (9th Cir. 1986) .............................................................. 13

*Desaigoudar v. Meyercord*, 223 F.3d 1020  (9th Cir. 2000) ................................................... 14

*Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48 (Mont. 1996) .............................................. 23

*E&J Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148 (E.D. Cal. 2005) .......... 7

*In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541 (9th Cir. 1994) ................................... 19

*Government Computer Sales Inc. v. Dell Marketing, L.P.*, 2005 WL 1713182
  (D. Alaska 2005) ........................................................................................................ 23

TABLE OF AUTHORITIES
(continued)

Page

*Holden v. Hagopian*, 978 F.2d 1115 (9th Cir. 1992) ................................................................. 20

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004) ................................................... 14, 18, 20

*Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) ............................ 7, 8

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458 (9th Cir. 1983) .................. 8

*Paskvan v. Meisch,* 455 P.2d 229 (Alaska 1969) ................................................................... 20, 22

*Treadaway v. Academy of Motion Picture Arts and Sciences*, 783 F. 2d 1418 (9th
    Cir. 1986) ........................................................................................................................... 8, 9

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ................................. 14, 15, 17, 18

*Yourish v. California Amplifier,* 191 F.3d 983 (9th Cir. 1999) ..................................................... 19

**Statutes**

28 U.S.C. §1406(a) ....................................................................................................................... 13

**Other Authorities**

Montana Stat. 28-2-406 ................................................................................................................ 20

Restatement (Second) of Conflict of Laws Section § 187 Comments e & f ..................... 23

Restatement (Second) of Conflict of Laws Section § 187(1) ............................................ 23

Restatement (Second) of Conflict of Laws Section § 188(2) ............................................ 24

**Rules**

F.R.C.P. 9(b) ....................................................................................................................... passim

F.R.C.P. 12(b)(3) ............................................................................................................... 1, 3, 4

F.R.C.P. 12(b)(6) ................................................................................................................ passim

**REPLY IN SUPPORT OF**
**DEFENDANT'S MOTION TO (1) DISMISS OR TRANSFER**
**FOR IMPROPER VENUE [F.R.C.P. 12(b)(3); 28 U.S.C.§ 1406(a)]**
**OR, IN THE ALTERNATIVE,**
**(2) DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH**
**RELIEF CAN BE GRANTED [F.R.C.P. 12(b)(6); F.R.C.P. 9(b)]**

## I.     PRELIMINARY STATEMENT

TCC's Opposition makes clear that this Court should dismiss TCC's First Amended Complaint ("FAC") under Rule 12(b)(3) for improper venue. TCC largely misses the point of Oracle's motion and repeatedly gets the law wrong along the way. Its requested cure for its improper allegations—leave to amend—makes no sense in light of TCC's repeated admissions that any amended pleading would continue to implicate, at its heart, the License Agreement.

TCC misses the point of Oracle's motion by focusing only on its own allegations about the Services Agreement. Oracle does not argue, as TCC suggests, that none of TCC allegations involve the Services Agreement. Some of them do. TCC seems to wish away, without ever addressing, the many other allegations in the FAC that point directly to the License Agreement, either by stating a claim for its breach, or invoking its provisions, or relating to its subject matter.

Indeed, the subject matter of the License Agreement is simple and clear. By its terms it pertains to "the software products owned or distributed by Oracle which you [TCC] have ordered, program documentation, and any program updates acquired through technical support." FAC ¶13, Ex. C, § A. In the License Agreement, Oracle warrants that "a program licensed to you will operate in all material respects as described in the applicable program documentation for one year after delivery." FAC ¶13, Ex. C, § E. TCC agreed that "any dispute arising out of or relating to this agreement" would be submitted to the "exclusive jurisdiction of, and venue in, the courts in San Francisco, San Mateo, or Santa Clara counties in California." FAC ¶13, Ex. C, § O.

Thus, any "dispute" that relates to the functionality or performance of Oracle software products belongs exclusively in California, *whether or not* that dispute also involves services performed by Oracle for TCC pursuant to the separate Services Agreement (which also permits venue in California). The Services Agreement allegations simply have no bearing on Oracle's motion or the proper venue of this case.

TCC, though it may regret it now, did make allegations relating to the License Agreement in its FAC (including an outright claim for its breach). When confronted with this truth, TCC offers two contradictory responses. On the one hand, it disavows any intent to invoke the License Agreement and half-heartedly seeks leave to amend away some (but not all) of the offending allegations. On the other hand, TCC admits its allegations will always revolve around the License Agreement because the core of the dispute centers around what Oracle told TCC to induce TCC to license the software and the subsequent performance of that licensed software. As shown below, neither of these irreconcilable responses saves the FAC.

\*                    \*                    \*

Given the interdependence of TCC's claims and the License Agreement, and the dismissal or transfer that must result, the Court need not reach Oracle's alternative motion to dismiss certain of TCC's claims under Rule 12(b)(6).

If the Court does reach that motion, however, it will find that TCC fails to plead fraud with the specificity required by federal law. TCC says it cannot or will not state "at this early stage of the litigation, where no discovery has yet take place," which of eight identified Oracle representatives or other unnamed "members of Oracle's sales team and others who attempted to persuade TCC to use Oracle's software and services" uttered any of nine different alleged misrepresentations. By TCC's account, and despite its obligation to have confirmed these facts in advance of bringing its claims, *some or all* of the eight (and unnamed "others") likely made *none* of the alleged statements. TCC's refusal to provide the required Rule 9(b) facts—which are certainly within TCC's control—suggests that TCC does not know if *any* of the

eight representatives said *any* of the nine identified misrepresentations.  Or when.  Or where.  Or why.

Beyond these fatal flaws, TCC still cannot point to what is false about the alleged misrepresentations.  It then actually concedes that some statements are barred for vagueness, and raises irrelevant state law explanations for others.

TCC's arguments in support of its constructive fraud and UTPA claims fare no better.

TCC admits that its constructive fraud claim requires it to plead a cognizable duty.  TCC then ignores the fact that the FAC identified only one such duty—fiduciary duty—which TCC cannot prove given its own conflicting factual allegations.  Instead, TCC rambles on about other unpled, unidentified, and unsupported duties that fail to save its claim.

TCC's UTPA arguments fails, among other reasons, because TCC does not meet its burden to show that the law for which it contracted—Montana—does not apply.

Below, Oracle responds first to TCC's Opposition to Oracle's motion to dismiss for improper venue under 12(b)(3), and then to TCC's Opposition to Oracle's motion to dismiss for failure to state a claim under Rule 12(b)(6).

## II.    THE COURT SHOULD DISMISS FOR IMPROPER VENUE

TCC agreed to bring any dispute that "arises out of or relates to" the License Agreement in California.  Nearly its entire FAC at least "relates to" this contract, as key admissions in TCC's Opposition make clear.  In its Motion to Dismiss, Oracle argued the FAC establishes that the dispute arises out of or relates to the License Agreement because (1) TCC alleges the elements of a breach of the License Agreement and (2) TCC's claims based on breach of contract and fraud relating to software functionality and performance directly implicate the License Agreement warranty, limitation of remedies and integration clause provisions, among others.

TCC does not dispute the existence or validity of the License Agreement's venue provision.  TCC's Opposition argues only that the FAC is unrelated to the License Agreement

because (1) TCC has focused its allegations on claims related to the Services Agreement, which permits venue in Alaska; (2) TCC does not intend to pursue—and only inadvertently plead—a claim for breach of the License Agreement, which admittedly precludes venue in Alaska; and (3) TCC's tort claims do not require interpretation of the License Agreement and the venue clause therefore does not apply.[1]

As set forth below, these arguments largely miss the point of Oracle's motion or rely on incorrect statements of law. TCC's arguments also confirm the futility of any amendment.

### A.    Alleging A Breach Of The Services Agreement Does Not Make Venue Proper In Alaska

TCC first contends that Oracle has "cherry picked" certain allegations out of the FAC that point to the License Agreement, and has ignored (by citing "<u>none</u>" of) the factual allegations that support TCC's breach of contract claim. TCC's Opposition to Oracle's Motion to Dismiss, filed on September 22, 2006 ("Opp.") at 4 (emphasis in original).

This argument misstates Oracle's motion because Oracle did review, in detail, the allegations that precede, that TCC incorporates into, and that TCC expressly states in the First Claim for Relief. Oracle's Motion to Dismiss, filed on August 21, 2006 ("Mot.") at 2-7.

TCC also misunderstands Oracle's motion because Oracle's motion is not directed at the Services Agreement allegations emphasized by TCC. The issue is not whether *some* of TCC's allegations relate to the Services Agreement (Oracle concedes some do), but whether *any* of TCC's allegations implicate the License Agreement and thereby implicate the License Agreement venue clause. Oracle explained in detail in its opening brief how TCC's factual allegations and First Claim for Relief state claims for breach of, and otherwise relate to,

---

[1] TCC misstates the standard on a 12(b)(3) motion to dismiss for improper venue, claiming that "the Court must assume that the factual allegations in the First Amended Complaint are true." Opp. 2 n.2 (citing *Alaska Gasline Port Auth. V. ExxonMobil Corp.*, No. 4:05-cv-0026-RRB, 2006 WL 1718195, at *2 (D. Alaska June 19, 2006)). While this standard applies to 12(b)(6) motions (as indicated in the case cited), it does not apply to 12(b)(3) motions. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) ("Under the Supreme Court's standard for resolving motions to dismiss based on a forum selection clause, the pleadings are not accepted as true, as would be required under a Rule 12(b)(6) analysis).

the License Agreement.  Whether other allegations involve the Services Agreement has nothing to do with Oracle's motion.

California venue is mandatory regardless of whether the Services Agreement's venue provision applies because venue in California is permissible under *both* the Services Agreement and the License Agreement, but required by the License Agreement.  If the court determines that both contracts are implicated then the only venue satisfying both forum selection clauses is in California.  FAC ¶13, Exh. C, § O; FAC ¶13, Exh. E, § M.  Thus, the only pertinent disagreement is over whether the FAC implicates the License Agreement and, accordingly, its venue provision.  It is no answer, as TCC attempts to do, to simply re-label these allegations under the Services Agreement when they clearly relate directly to the License Agreement.

**B.    TCC Disingenuously Disclaims Any Breach Of License Agreement Claim**

To escape dismissal, TCC insists that it intends only to pursue a contract claim for breach of the Services Agreement.  In response to Oracle's motion, TCC says that its claim for damages under the License Agreement was a "simple oversight" and offers to amend its FAC to clarify its intent.[2]  Opp. at 8 and fn. 6.  The remainder of TCC's opposition, however, serves only to illustrate the apparent futility of any such amendment and to undermine TCC's claims of oversight.

First, TCC offers to amend away only one of several allegations that form the basis for TCC's unnamed License Agreement contract claim. *Cf.* Mot. at 5-7 (identifying 9 independent allegations that constitute the breach of the License Agreement claim), with Opp. at 8, fn. 6 (offering only to delete the simple allegation that TCC fully performed its obligations under the License Agreement).  This offer does nothing for the numerous other offending allegations Oracle identifies in its motion.

---

[2]    It was apparently also an oversight that TCC attached a copy of the ten-page License Agreement and related Ordering Document to both the original and first amended complaint.

Second, the FAC itself, and TCC's admissions in its Opposition, reveal the futility of this limited amendment offer.  As Oracle argued in its Opening Brief in detail it will not repeat here, the FAC alleges numerous deficiencies with the "out of the box" software licensed by Oracle to TCC.  Mot. at 5-6, 15.  The License Agreement, not the Services Agreement, governs the licensing of that software to TCC and the warranty extended by Oracle relating to the software functionality.

In response, TCC tries to whitewash over its own allegations by re-labeling them, in contradiction to what they actually say, as relating only to the "Services Agreement."  TCC explains that it tried to address its claims of "lack of functionality" in the "underlying software release" by purchasing additional implementation services.  These services, it now says, and not the underlying software form the heart of its case.

This argument flatly contradicts both the FAC and statements made elsewhere in TCC's Opposition.  For example, TCC repeatedly confirms in its Opposition that its allegations focus on the functionality of the underlying software and not the "service" of installing it:

- Oracle's software could not pass data between modules and required customization (Opp. at 15);

- Oracle's software could not generate a sufficient number of reports (Opp. at 15);

- "the underlying software release licensed to TCC was incapable of providing the required functionality" (Opp. at 16, quoting FAC ¶20);

- The implementation services took longer "because of a lack of functionality"  (Opp. at 16).

Indeed, TCC has alleged, including now by sworn testimony, that its damages and complaints trace directly to the performance of the "underlying software release."  Opp. at 14, 16; Allen Decl. ¶2.  These examples illustrate how TCC has attempted, unsuccessfully, to avoid the venue clause of the License Agreement by trying to shoehorn complaints about the software it licensed into the vehicle of the Services Agreement.  Despite its re-labeling exercise in its

Opposition, TCC repeatedly admits these FAC allegations relate directly to, in the language of the License Agreement, the "operation" of the "the software programs owned or distributed by Oracle" and licensed by TCC. FAC ¶13, Ex. C, § A. These allegations also confirm that TCC's definition of "Contracts" in the FAC (to include the License Agreement), its prayer for damages arising from the breach of both Contracts, its repeated complaints about the core functionality of the software, and its claim for fraudulent inducement of the License Agreement were no mere "oversight" that a single amended allegation could ever begin to correct.

### C.    TCC's Tort Allegations Relate To The License Agreement

Even if TCC could amend its contract claim to only state a claim for breach of the Services Agreement, its tort claims require dismissal or transfer under the License Agreement venue clause.

#### 1.    TCC Misstates Two Legal Standards Relevant To Its Tort Claims

TCC's defense of its tort allegations begins with two misstatements of law.

First, TCC misstates the proper standard for determining whether the License Agreement venue clause governs TCC's fraud claims. Relying on *Manetti-Farrow,* TCC argues that the Ninth Circuit, as a general rule, applies venue provisions to non-contract claims "only if the resolution of those claims *requires an interpretation* of the License Agreement." Opp. at 9-11 (emphasis supplied).[3]  However, the venue provision in that case was different, and narrower, than the one in the License Agreement. It applied to "any controversy regarding *interpretation*

---

[3] TCC cites to *E&J Gallo* and *Androutsakos* for the proposition that *Manetti-Farrow* set out a general rule that only tort claims requiring interpretation of the agreement are governed by its venue provision. Opp. at 10 n.7. Neither case applies. In *E&J Gallo,* the court was ruling on the defendants' fourth Rule 12 motion, and it held that (1) defendants waived their objection to venue by failing to raise it in the first Rule 12 motion and (2) the forum selection clause did not apply to the tort claims because "the wrongs alleged have *nothing at all to do with the agreement.*" *E&J Gallo Winery v. Encana Energy Servs., Inc.*, 388 F. Supp. 2d 1148, 1162 (E.D. Cal. 2005) (emphasis supplied). Here, Oracle has not waived its objection to venue as this is the first Rule 12 motion and the wrongs alleged—namely misrepresenting the functionality of software—relate directly to the License Agreement warranty, limitation on remedies, and integration clauses. Similarly, the *Androutsakos* venue provision applied only to "resolution of any dispute <u>arising from</u> this agreement." *See Androutsakos v. M/V Psara*, 2004 WL 1305802 at *5 (D. Or. Jan. 22, 2004) (emphasis supplied). The broader License Agreement venue provision applies to disputes "arising from" the contract (as in *Androutsakos*) but also to any dispute that merely "relates to" the contract.

or *fulfillment* of the present contract." *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 511 (9th Cir. 1988) (emphasis supplied).

By contrast, the License Agreement venue provision is more expansive, reaching "any dispute arising out of or relating to" it. FAC ¶13, Exh. C, § O. If "arising out of" means related to interpretation of the contract then "arising out of or relating to" must mean something more than that. *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (the scope of an arbitration clause applying to claims arising under the contract is intended to cover disputes "relating to the interpretation and performance of the contract itself" while clause applying to claims "arising out of or relating to the agreement is broader). TCC's misconstruction of *Manetti-Farrow* and the License Agreement venue clause is a red herring, however, because TCC's fraud claims both require interpretation of *and* otherwise relate to the License Agreement.

Second, TCC makes one other curious, and telling, misstatement of law. Oracle argued in its Motion that "TCC cannot defeat the License Agreement forum selection clause 'by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if "the gist" of those claims is a breach of that relationship.'" Mot. at 11-12.

TCC claims that the Ninth Circuit does not follow this "strange tack." Opp. at 10-11. TCC is wrong.

The Ninth Circuit applies the prohibition against artful pleading to venue allegations such as the one TCC makes in the FAC because the venue "truth cannot be concealed by 'artful pleading.'" *Treadaway v. Academy of Motion Picture Arts and Sciences*, 783 F. 2d 1418, 1421 (9th Cir. 1986). The *Treadaway* Court affirmed the district court's dismissal of the plaintiff's complaint after looking "[a]t the heart of the complaint" to determine proper venue. *Id*. The Court explained, "the [artful pleading] doctrine is equally applicable when plaintiffs disguise the true nature of their claims in order to evade other jurisdictional rules, *provisions regarding venue*, or principles governing choice of law." *Id.* (emphasis supplied). Thus,

whether called "gist of the action" or "artful pleading," the rule is as Oracle stated it:  the Court looks behind the labels and conclusions to understand the real nature, or heart, of the plaintiff's claim.  *Compare Treadway* with ***C&K Engineering Contractors v. Amber Steel Co.***, 23 Cal. 3d 1 (1978 [courtesy copy attached]) ("gist of the action" requires that a court look beyond language of the complaint captioned "claim for damages" to determine whether the underlying rights are legal or equitable in nature).

**2.      TCC's Opposition Confirms That Its Fraud Claims Relate To The License Agreement**

As it did with its contract claims, TCC artfully characterizes its fraud claims as relating only to how Oracle installed the software and not to the underlying license and functionality of the software.  TCC first claims it does not contend that Oracle's software "failed to operate as described in the program documentation."  Opp. at 11.  TCC makes this retreat because the License Agreement warranty limits TCC's remedy to failures of the software to comply with the program documentation.  But this concession does nothing to save TCC's improper venue selection because, in the very next paragraph, TCC reverts to the type of artful circumvention that permeates the FAC.  TCC's real complaint, it asserts, is that the software failed to perform in conformity to the oral representations made by Oracle "made before the contract was signed."  Opp. at 12.

As the FAC and the remainder of the Opposition make clear, these alleged pre-contractual representations go to the heart of the License Agreement.  TCC licensed Oracle's software and agreed to certain performance parameters for that software, as reflected in the License Agreement, based on these same alleged misrepresentations.

In its Opposition, TCC alleges "Oracle misrepresented the functionality of the software and the benefits which that functionality would provide" and "the software failed to perform as promised in representations made before the contract was signed."  Opp. at 12.  TCC claims Oracle "lied about the inherent capabilities of the software" licensed under the License Agreement.  Opp. at 13.

In the FAC, TCC claims those misrepresentations induced it to enter into *both* the License and Services Agreements.  FAC ¶13 (relying on Oracle representations, TCC entered into the License Agreement); FAC ¶¶37, 41 (by making misrepresentations, Oracle induced TCC to execute the License Agreement); FAC ¶¶38, 42 (TCC justifiably relied on the representations in executing the License Agreement).  TCC seeks damages for monies paid under *both* contracts.  FAC Prayer for Relief 5.

In other words, TCC *does* attack the underlying software functionality and performance.  It *does* allege fraudulent inducement of the License Agreement.  But it transparently attempts to evade the License Agreement venue provision by re-characterizing its claims based on statements made prior to signing License Agreement, and not on the warranty language of the contract itself.  That is too clever by half.

Putting aside that TCC expressly alleges fraudulent inducement of the License Agreement, TCC's fraud allegations otherwise relate directly to, and require application of, the License Agreement.  The License Agreement, for example, has an integration clause.  That clause bars the very representations relied on by TCC to allege fraudulent inducement of the License Agreement.  Mot. at 4.  The License Agreement also has a warranty provision that conflicts with the oral performance guarantees alleged by TCC.  Mot. at 3-4.  The License Agreement has a limitation of liability and remedies clause that bars the relief sought by TCC for complaints about software performance.  Mot. at 4.  All of these provisions apply to the supposed oral "pre-contract" statements on which TCC relies.  TCC's claims cannot be construed without reference to, and interpretation of, these provisions.  Certainly, at a minimum, these admitted complaints about functionality "relate to" the only contract that addresses the functionality of the software.

TCC then lists three examples of an alleged functionality deficiency in the FAC that it now says only relate to the Services Agreement.  Each of these examples merely establishes that TCC's claims relate to the License Agreement.

First, TCC says "Oracle represented that its software was integrated…and therefore that no customizations were necessary" but that "this representation was false, forcing TCC to ask Oracle, under the Services Agreement, to create customized software." Opp. at 15. TCC concludes that because "the lack of functionality was resolved by application of consulting services," its complaints about that functionality relate to the Services Agreement. Far from demonstrating the exclusive application of the Services Agreement, this example only clarifies that the underlying software functionality, as warranted by the License Agreement, according to TCC's own allegations, caused TCC's damage.

Second, TCC claims "Oracle represented that the software could generate a number of reports" but "this representation was false, causing TCC to spend 'considerable time and resources in creating that capability." Opp. at 15. This allegation also illustrates how TCC tries to use the attempted fix—work under the Services Agreement—to evade the venue provision in the License Agreement. In doing so, TCC ignores the real alleged source of the problem, which is expressly alleged to be the "underlying software release."

Third, TCC argues—remarkably—that *"the underlying software release licensed to TCC* was incapable of providing the required functionality" causing TCC to spend time and money." (emphasis supplied) Opp. at 16. TCC contends that "none of these instances" relate to the License Agreement because TCC sought to remedy the deficient functionality through paying for more services. The Services Agreement, of course, has nothing to do with the functionality of the "underlying software release licensed to TCC." The License Agreement, and only the License Agreement, controls that issue. This example, too, illustrates that TCC's claims relate to, and require interpretation of, the License Agreement.

For all of these reasons, the Court should look behind the artful pleading in the FAC and, now, the equally artful argument in TCC's Opposition. Like in the FAC, TCC's Opposition says one thing but then proves another. It is clear from the multiple allegations in the FAC, and the many admissions in the Opposition, that TCC's allegations relate to its license of

software it believes does not work as represented. Those claims relate to the License Agreement and its venue provision governs them.

### D.    TCC's Request to Amend Should Be Denied

The Court should reject TCC's request for an opportunity to amend the FAC to stay in Alaska. Its Opposition only confirms that it would not amend in any way that would cure the venue issue. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

TCC's contract claims—including its claim that Oracle breached the Services Agreement—relate to the License Agreement because it claims "the lack of functionality in the system is directly tied to the time and costs incurred by TCC in implementing the system." Opp. at 16. By intertwining the damage it suffered from the lacking functionality under the License Agreement with the costs incurred in implementation under the Services Agreement, there is no logical way to separate out the claims relating only to implementation procured under the Services Agreement from those relating to the functionality obtained under the License Agreement. TCC has, in effect, alleged one dispute over its procurement of Oracle software and the entire dispute relates to the License Agreement.

TCC's fraud claims are even more problematic. The FAC alleges fraudulent inducement of the License Agreement. FAC ¶¶35-39. TCC's opposition, including the sworn testimony that accompanies it, makes clear that TCC merely purchased consulting services to address what it perceived as defects in software that Oracle had misrepresented in the sales process. The License Agreement integration clause, warranty, and limitations on liability and damages provisions are central to these claims (and even if only "related to" these claims, they are governed by the forum selection clause). TCC cannot amend in a way that would keep this claim in Alaska and stay consistent with the testimony it has submitted.

### E.    The Court Should Dismiss The FAC

TCC incorrectly asserts that "transfer is the presumptive remedy" for its improper filing. Opp. at 17. To the contrary, a "court should dismiss a case absent a positive showing"

that the interests of justice weigh in favor of transfer. *Big Island Yacht Sales, Inc. v. Dowty*, 848 F. Supp. 131, 134 (D. Hawaii 1993 [courtesy copy attached]) (citing *Costlow v. Weeks*, 790 F. 2d 1486, 1488 (9th Cir. 1986) (where *Costlow* court affirmed dismissal explaining that 28 U.S.C. §1406(a) "requires a transfer, however, only in cases where it is in the 'interest of justice'")). Thus, TCC has the burden to present evidence that the interest of justice requires transfer rather than dismissal. It has submitted no such evidence.

TCC does not dispute that a Court should dismiss when a venue provision is unambiguous and plaintiff's mistake in filing in the wrong venue imposed unnecessary costs on the opposing party and on the judicial system. Mot. at 16-17. Instead, TCC argues the venue provision in the License Agreement was somehow ambiguous and TCC reasonably believed its allegations arose out of the Services Agreement. Opp. at 18. This argument again misses the point. The question is whether TCC's claims arise *exclusively* out the Services Agreement, or whether they state claims that also arise under or relate to the unambiguous forum selection clause in the License Agreement. The FAC reveals that TCC was acutely conscious of the License Agreement and its venue clause. TCC defined its contract claim to include the License Agreement and incorporated the attached License Agreement to the FAC. It artfully pled around the venue clause by seeking relief for claims relating to the License Agreement—though labeled differently—without ever disclosing the venue provisions in the License Agreement. *See* FAC ¶4.

By contrast, TCC offers no reasons, other than its own preferences, why the Court should transfer and not dismiss. Instead, it argues certain alleged "prerequisites to dismissal under §1406(a)" claiming that Oracle needs to establish TCC filed "in bad faith or for purposes of harassment." Opp. at 18. These "prerequisites" are nothing of the sort. While showings of bad faith and harassment certainly militate against any argument for transfer, they are not "a prerequisite to dismissal." *See, e.g.*, *Costlow*, 790 F. 2d at 1488; *Cook v. Fox*, 537 F.2d 370 (9th Cir. 1976). However, if the Court considers these factors pertinent, then Oracle respectfully requests that the Court also consider TCC's apparent admissions in its Opposition to Oracle's

12(b)(6) motion.  As addressed in more detail below, TCC admits that it could not meet the 9(b) fraud pleading requirements when it filed the FAC, and still cannot do so.

Finally, should the Court determine that the interest of justice requires transfer, Oracle agrees that the Northern District of California is the proper venue.  *See* Opp. at 17 (TCC consenting to jurisdiction in the Northern District of California).

## III.   IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE FRAUD, NEGLIGENT MISREPRESENTATION, CONSTRUCTIVE FRAUD, AND UTPA CLAIMS FOR FAILURE TO STATE A CLAIM UNDER 12(B)(6)

### A.   The Court Should Dismiss TCC's Fraud and Negligent Misrepresentation Claims

In its Motion to Dismiss under 12(b)(6), Oracle argued that TCC's nine allegations of misrepresentation fail to meet federal pleading standards under Rule 9(b).  TCC does not dispute its obligation to plead these alleged misrepresentations with particularity and "a high degree of meticulousness."[4]  *Bank of the West v. Valley Nat. Bank of Arizona*, 41 F.3d 471, 476 (9th Cir. 1994); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022-23 (9th Cir. 2000). Instead, it argues that it has.  To the contrary, TCC's arguments reveal a disturbing lack of investigation leading to the filing of these serious allegations.

Oracle argued in its Motion that TCC's fraud allegations fail the pleading standards for three reasons: (1) TCC fails to specify who at Oracle said what, when, and where and to whom it was stated at TCC; (2) TCC fails to identify what is false or misleading about a statement; and (3) TCC can never establish the falsity of some statements because they are either open to multiple reasonable interpretations or constitute vague and subjective puffery.  Mot. at 18-19 (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *See Lum v. Bank of America*, 361 F.3d 217, 226 (3d Cir. 2004) (plaintiff failed to plead fraud with particularity under Rule 9(b) based on statements that are "sufficiently indefinite that it is

---

[4] However, TCC does argue (nonresponsively) that its "claims for fraud and negligent misrepresentation are pled with the requisite specificity and state a claim under Alaska law."  Opp. at 23.  Oracle argues that they fail under the Rule 9(b) federal pleading standards.  State law is irrelevant.

reasonable for the parties to have different understandings of its meaning"); *Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (statement that Coastal was "too small" to handle Shearson's business was exactly the kind of "puffery" that does not qualify as a statement of fact capable of being proved false).

TCC ignores most of these arguments and defends few of its specific allegations, opting instead to fire off an unorganized and nonresponsive litany of arguments.

In response to Oracle's argument that TCC fails to specify who at Oracle said what, when, and where and to whom, TCC makes just two arguments: (1) two written documents identify some of the who, what, when, where, and to whom; and (2) naming eight specific individuals at Oracle who generally made oral representations is sufficient. In response to Oracle's argument that TCC fails to identify what is false or misleading about a statement, TCC claims only that it cured the vagueness of its first identified misrepresentation with the succeeding ones (but says nothing about the similar flaws in these same succeeding ones).

In response to Oracle's argument that some of TCC's allegations fail because they are subject to multiple reasonable interpretations, TCC merely agrees that is so.

And in response to Oracle's related point that some statements amount to inactionable puffery, TCC irrelevantly claims that Alaska law permits reliance on puffery. These arguments all fail.

### 1.    TCC's Failure to Specify the Who, What, When, and Where

In it Motion, Oracle explained that eight of the nine fraud allegations fail to set forth facts to specify "the who, what, when, where" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Picket*, 137 F.3d 616, 627 (9th Cir. 1997)); *see* Chart, Mot. at 22-23.

In response, TCC makes two arguments. First, it claims that its "supporting exhibits easily provide Oracle with the information required." Opp. at 24. But of the nine alleged misrepresentations, only two of them—FAC ¶¶10(a) and 10(b)—arise from written

documents.  Of those two representations, Oracle only takes issue with FAC ¶10(b) for failing to identify with particularity who at Oracle said what, when, and where and to whom it was stated at TCC.[5]   In its Opposition, not the FAC, TCC claims the management summary was sent by Oracle to TCC's Fairbanks, Alaska office.  Even if TCC had alleged that fact in its FAC (which it did not), it still fails to mention who at TCC received the document or from whom at Oracle they received it.  TCC's continued failure to provide these details is particularly curious given that Exhibit B to the FAC, on which TCC relies, represents only two pages from a more than 100 page document.

Second, for the remaining seven alleged misrepresentations (*See* Chart, Mot. at 22-23 (FAC ¶¶10(c)-10(h), and 22)), TCC now appears to concede that it *does not know and did not attempt to find out the answers to these critical questions*.  In the FAC, instead of identifying who made what misrepresentation, to whom, and on what day, TCC merely claims that one or all of eight named individuals, or other unnamed "members of Oracle's sales team and others who attempted to persuade TCC to use Oracle's software and services" made one or all of the alleged misrepresentations at some time to somebody at TCC.  FAC ¶11.  In the opposition, TCC offers no further details.  Instead, it blames "this early stage of the litigation, where no discovery has yet taken place" for the FAC's flaws and blithely contends that the list of names put Oracle on sufficient notice.  Opp. at 25

Lists of names do not meet the standard.  Rule 9(b) requires more than a shotgun blast.  *Bartlett v. Andersen LLP*, 55 Fed. Appx. 819, 820 (9th Cir. 2003) (affirming dismissal of fraud counts without leave to amend for failure to state "with particularity" the circumstances constituting fraud under Rule 9(b)).  In *Bartlett*, the plaintiffs had named 22 specific individuals as defendants in its fraud claims.  *Id.* at 819 n.1.  In dismissing without leave to amend, the Ninth Circuit held:  "Plaintiffs fail to provide dates or times that Defendants allegedly made false statements or omitted material facts.  Moreover, Plaintiffs fail to adequately explain why the

---

[5] Oracle challenged the other representation, FAC ¶10(a), along with all the other alleged misrepresentations, for TCC's failure to explain how it was false.  This argument is addressed in section III.A.2. below.

alleged statements or omissions were false, or misleading when made.  Thus, we hold that Plaintiffs fail to adequately state 'with particularity' the circumstances constituting Defendants' allegedly fraudulent conduct."  *Id.* at 820.  Furthermore, "Leave to amend should not be granted if…at the time they filed the FAC, Plaintiffs knew the facts, or had access to the facts that they suggest are the basis for an amendment."  *Id.* at 821.

The FAC fails the Rule 9(b) standard more egregiously than the complaint dismissed by the *Bartlett* Court.  TCC has control of who at Oracle made which statement, and when, to which person at TCC.  It has failed to disclose those facts, and now says it does not know them.  The minimum consequence for that admission is dismissal with prejudice.

### 2.   TCC Never Addresses What is False About The Allegations

Oracle challenges eight of TCC's nine fraud allegations for failure to set forth what is false or misleading about the statement in violation of Rule 9(b).  Mot. at 19-22; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (Rule 9(b) requires TCC to "set forth what is false or misleading about a statement").  TCC defends only the first of these eight flawed allegations.   In explaining the alleged misrepresentation that Oracle claimed "[c]ompressed time frames are achievable because Tanana Chiefs Conference's requirements are addressed by Oracle's standard functionality," TCC points to other—supposedly separate— misrepresentations about functionality to define what was false about this one.  Opp. at 25-26 (referring to FAC ¶¶10(c) and (d) 10(c) and (d)).  But those allegations independently fail for lack of specificity under Rule 9(b) and cannot provide a basis for the falsity of other allegations.  Furthermore, even if independently proper, those additional allegations say nothing about compressed time frames or why such a statement would be false (or even what it means).

TCC is precluded from curing paragraph 10(a) by relying on other, equally defective allegations.  More importantly, TCC fails to even defend or address what is false about the other allegations.  As but one example, TCC alleges that Oracle "falsely stated that it would be able to accomplish the implementation within a specified budget."  FAC ¶10(f).  As Oracle

explained in its Motion (without any response in TCC's Opposition), TCC never identifies any budget or otherwise explains how this statement was false when made.  Mot. at 21.

Rule 9(b) requires an explanation of falsity.  TCC ignored this requirement in the FAC and chooses to ignore it again for all but one of its allegations in the Opposition.  As to that one, it cannot cure a lemon by adding eight more lemons.  The Court should dismiss this claim.

### 3.    TCC Admits Its *Lum* Problem And Fails To Address Its Other Failures To Establish Falsity

Oracle argued in its Motion that, under California and Montana law, TCC was required to explain, not merely allege, the falsity of the representation and the basis for reasonable reliance to state a claim for fraud.  Mot. at 18-19; *Vess*, 317 F.3d at 1106 (Rule 9(b) requires TCC to explain "why [the statement] is false").  Oracle identified certain statements that could never be actionably false or induce justifiable reliance.  Those included: (1) statements that are susceptible to different, reasonable interpretations (*Lum v. Bank of America*, 361 F.3d 217, 226 (3d Cir. 2004)); and (2) puffery—demonstrably vague, subjective statements made during a sale (*Coastal Abstract Service, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)).

TCC appears to concede (strangely, by claiming that *Oracle* concedes), that the statements identified by Oracle at FAC ¶¶10(a), 10(g), and 22 are susceptible of multiple reasonable interpretations.  Mot. at 19-22; Chart at 22-23; Opp. at 27 fn.17.  Under *Lum*, that is the end of the matter and TCC may not pursue any claim based on those statements.

Regarding the "puffery" statements, TCC counters only that under Alaska law, its misrepresentations as alleged established justifiable reliance.  Opp. at 26-27.  This argument fails for three reasons.

First, Alaska state law does not supplant the Rule 9(b) pleading standard.  Regardless of what state law would otherwise permit, if a statement fails the 9(b) standard because it is too vague or on its face could not induce justifiable reliance (such as with puffery), the claim fails.

Second, even under Alaska law, TCC must establish that Oracle's representation supplied "false information" and that TCC justifiably relied on the false information supplied. *Bubbel v. Wien Air Alaska, Inc.*, 682 P.2d 374, 380 (Alaska 1984) (summary judgment granted on fraudulent and negligent misrepresentation claims where representations were not false when made). TCC fails to make such allegations. It merely says the statements are false.

Finally, as to all nine statements, TCC never identifies why the disputed statement was untrue when made. Instead, TCC seems to suggest in its Opposition that it meets its 9(b) obligations to explain falsity "where TCC has alleged that Oracle's representations were false when made."[6] Opp. at 26 (citing FAC ¶¶ 37, 41). Allegations that statements "were false" or "are false" fail to provide the required specificity. An "unsupported," "general" claim that a statement was false when made "would clearly be inconsistent with our [Rule 9(b)] requirement that 'circumstances indicating falseness be set forth." *Yourish v. California Amplifier,* 191 F.3d 983, 994-95 (9th Cir. 1999) (dismissing complaint and holding insufficient under Rule 9(b) plaintiff's attempt to indicate falsity by merely alleging that the misrepresentation was contradicted by contemporaneous information contained in internal reports). TCC must "set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading when made." *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In re GlenFed, Inc. Securities Litigation*, 42 F.3d 1541, 1549 (9th Cir. 1994)).

Two examples illustrate how TCC has failed to meet this standard. First, TCC claims Oracle misrepresented that "it felt confident that Tanana Chiefs Conference will realize significant financial savings as well as higher quality of services through the implementation of this solution." In this general allegation, TCC fails to establish (1) why it thinks Oracle was not confident at the time it made the statement; (2) why Oracle did not believe TCC would realize significant financial savings; (3) what was meant by significant financial savings; (4) why it was

---

[6] Even this argument misconstrues the FAC, which only alleges that the representations "are and were false" and not that they were false at the time Oracle made them. FAC ¶37.

false; and (5) what was meant by higher quality services and what was false about anticipating them.  FAC ¶10(b).  Second, TCC claims unnamed Oracle representatives "falsely stated that it would be able to accomplish the implementation within a specified budget."  This general statement does not explain whether a budget was specified, whether the statement was true at the time it was made, or how the statement could be false.  FAC ¶10(f).

        TCC's fraud claims fail because it admits that *Lum* bars certain statements, it has failed to defend the ones that constitute puffery, and it cannot explain why any of the supposed statements were false.  For these reasons, the Court should dismiss this claim.

    **B.**    **TCC Fails To Plead A Cause of Action For Constructive Fraud**

        Oracle argued that TCC's claim for constructive law fails under Montana and California law—the laws chosen by the parties to govern this claim.  TCC argues that despite the contracts' choice of law provisions, Alaska law applies.  While its FAC bases the constructive fraud claim on the existence of a fiduciary duty, in its Opposition TCC raises a new basis neither mentioned in nor supported by the FAC; namely, that Oracle owed TCC some other, unspecified duty, the breach of which resulted in constructive fraud.  FAC ¶45; Opp. at 28.  TCC's arguments fail even under Alaska law, as TCC has not alleged facts demonstrating a fiduciary relationship or any other duty that arose between Oracle and TCC over the course of their negotiations and dealings.

    **1.**    **Constructive Fraud Requires The Breach Of A Duty**

        Even under TCC's Alaska law formulation, "constructive fraud is a breach of a duty."  Opp. at 28, quoting *Adams v. Adams*, 89 P.3d 743, 750 (Alaska 2004).  California and Montana laws similarly require a duty or special relationship before imposing liability under a constructive fraud theory.  MONTANA STAT. 28-2-406; *Assilzadeh v. California Federal Bank*, 82 Cal. App. 4th 399, 415 (2000).  Thus, regardless of which state's law applies, TCC must identify a duty that Oracle owed to support a claim of constructive fraud.  None existed here, and certainly not the one TCC alleges in the FAC.

### 2. TCC Alleges Only A Fiduciary Duty In The FAC

Despite TCC's allusion to other unidentified duties in its Opposition, TCC's FAC alleges only one duty: "[d]ue to the trust imposed in Oracle by TCC, a fiduciary relationship arose between TCC and Oracle." FAC ¶45. This is a legal conclusion that the Court may disregard as contradicted by TCC's factual allegations. *See Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (affirming dismissal under Rule 12(b)(6) and holding that plaintiffs merely stated a legal conclusion without pleading facts in support of that conclusion). Those factual allegations demonstrate nothing more than a traditional commercial transaction between sophisticated parties. *See* FAC ¶¶5-6 (detailing TCC's 700 employees, 120 programs, and $82 million budget), ¶8 (describing TCC's legacy computer system), and ¶10 (noting that Oracle responded to TCC's RFP).

### 3. No Other Special Duty Arises Between Commercial Buyers And Sellers

TCC fails to cite any relevant authority for the proposition that a seller owes a sophisticated buyer a special duty. TCC relies primarily on *Adams v. Adams*, but that case is clearly distinguishable. In *Adams*, the Alaska Supreme Court considered whether, in a suit brought for specific performance, a lessee's unilateral change of a material contract term during the course of negotiation should be considered constructive fraud, therefore voiding the contract. 89 P.3d 743, 744 (Alaska 2004). Basing its holding on a divorce case, the *Adams* court found that a duty existed between two parties to a contract, where one party should have informed the other before making a significant change to a material contract term. *Id*. at 749-750.

This decision can hardly be read to support the concept that a special duty arises every time parties bargain at arm's-length. Nor does the factual scenario have any bearing on Oracle's contractual negotiations with TCC because TCC does not allege that Oracle changed contractual terms on the sly. In short, *Adams* adds nothing to TCC's claim that any special duty arose between TCC and Oracle.

TCC's only additional authority for the imposition of a special duty arises in the context of agency, a situation clearly inapplicable to this matter. *Paskvan v. Meisch* stands for

the proposition that when one party is authorized to act on behalf of another, "[a] confidential or fiduciary relationship exists." 455 P.2d 229, 232 (Alaska 1969) (finding such a relationship arose when one party designated the other as managing partner, executed a power of attorney in his behalf, and generally authorized the other to act as his agent). Unlike in *Paskvan*, TCC does not—because it cannot—allege that it delegated to Oracle to act in its stead, serve as a partner or agent, take over its operations, or spend TCC's money. *Paskvan* is inapposite.

TCC's factual allegations show no fiduciary relationship, no other special duty, or indeed any reason why TCC could believe that Oracle was acting in TCC's best interests, rather than its own. Under Montana, California, *and* Alaska law, TCC's allegations lead to only one reasonable conclusion—TCC and Oracle bargained at arm's length and no special relationship or duty arose during those negotiations.

### C.    The Court Should Dismiss TCC's UTPA Claim

In its Motion to Dismiss, Oracle argued that TCC's Alaska UTPA claim fails because both the License and Services Agreements preclude claims under Alaska law and because TCC has not alleged a sufficient claim for fraud under the Rule 9(b) standard. TCC counters that it should not be held to its own choice of law clause and that its UTPA claim survives even if its fraud and negligent misrepresentation claims fail. TCC's own authorities defeat each argument.

#### 1.    Alaska Law Does Not Apply

In its Opposition, TCC argues that Alaska law applies for two reasons: first, because a conflict-of-laws analysis invalidates the contractual language choosing Montana law; and, second, because the Alaska UTPA statute prohibits waiver. Both arguments fail.

The parties' choice of law—Montana—should presumptively govern: TCC fails to overcome its burden to prove otherwise. TCC claims that the choice of law analysis under the Restatement (Second) of Conflict of Laws Section 187 proves that Montana law should not govern interpretation of the Services Agreement, in spite of a written contract memorializing that very intent. Opp. at 18-20. However, the Restatement begins by stating that "[t]he law of the

state chosen by the parties to govern their contractual rights and duties *will be applied* if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS SECTION § 187(1) (emphasis supplied) [courtesy copy attached]. As set forth in Comments e and f, choice of law provisions create certainty in multistate transactions, allowing parties to submit their agreements to the jurisdiction of a state where the laws suit the parties' needs:

> Prime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract. . . . The parties to a multistate contract *may have a reasonable basis for choosing a state with which the contract has no substantial relationship* . . . [f]or only in this way can they be sure of knowing accurately the extent of their rights and duties under the contract.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS SECTION § 187 Comments e & f (emphasis supplied) [courtesy copy attached].

Here, a reasonable basis exists for the parties' choice: Montana's unfair business practices statute excludes claims related to commercial transactions. MT ST 30-14-102; *Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48, 52 (Mont. 1996) (holding that Montana unfair trade practices law does not apply to commercial transactions). The parties chose the certainty offered by that provision with regard to a party's ability to sue for unfair business practices, just as the Restatement contemplates. FAC Exh. E § M. TCC could have negotiated for Alaska law to govern the substance of the agreement, but did not do so.

TCC's Section 187(2) analysis is similarly misplaced because the parties have explicitly resolved the question of which law applies by agreeing to Montana law in a written contract. In *Government Computer Sales Inc. v. Dell Marketing, L.P.,* this Court supported the concept that parties may preclude recovery under the Alaska UTPA by selecting the law of

another state.[7]  2005 WL 1713182, at *3 (D. Alaska 2005) (finding that plaintiff's UTPA claim "fails because the choice of law provisions in the [contracts at issue] invoke Texas law.").

If, however, the Court determines that Montana law should not apply in this context, the § 188 inquiry favors application of California law, not Alaska law as TCC argues. Opp. at 21.  TCC correctly identifies the relevant factors, but misapplies the analysis.  These factors, including the "(a) place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties," point to Oracle's California headquarters, where part of the RFP process, the contract negotiation and drafting, software creation, and trouble-shooting all took place.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS SECTION § 188(2).[8]

Thus, Alaska law cannot apply to conduct relating to contracts where parties agree to be governed by the laws of other states.

### 2.    Even If Alaska Law Applies, (B)(4) And (B)(14) Cannot Apply To The Instant Case As A Matter Of Law

If the Court finds that Alaska law applies to Oracle's conduct as it relates to its contractual obligations, TCC nevertheless has failed to state a claim under the UTPA because it cannot allege viable claims under any UTPA provisions.

TCC appears to concede that the two most likely candidate subsections under UTPA do not apply, and instead grasps at two additional straws to save its claim.  Neither of these two additional subsections, ((b)(4) and (b)(14), can save TCC's claims.  The language of subsection (b)(14) ("representing that an agreement confers or involves rights, remedies or obligations which it does not confer or involve") clearly has no bearing on the allegations TCC

---

[7] For the same reason, TCC's waiver argument falls flat.  TCC did not waive its rights under the AUTPA, it contracted around them in favor of another state's laws as part of sophisticated, bilateral contract negotiation.

[8] Oracle objects to, and requests that the Court disregard, the Declarations of  Lloyd Allen and Jesse Foglebach improperly submitted by TCC in support of its Opposition to Oracle's Motion to Dismiss under Rule 12(b)(6).  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) (extraneous evidence should not be considered on a motion to dismiss).  However, even if the court considers this improper evidence, TCC's argument regarding the proper choice of law fails because the § 188 analysis points strongly in favor of the application of California law.

makes. Subsection (b)(4) ("representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have") is a misrepresentation claim that once again sounds in fraud and subjects TCC to the same heightened pleading requirement under Federal Rule of Civil Procedure 9(b) that Oracle has already demonstrated TCC fails to meet.[9] Either way, TCC cannot state a viable claim under the UTPA.

## IV.    CONCLUSION

For the reasons discussed above and in the Motion to Dismiss, Oracle respectfully requests that this Court dismiss the entire action for improper venue; or, in the alternative, dismiss the Third, Fourth, Fifth and Sixth Claims for Relief.

Dated this 16th day of October, 2006.

> Abigail L. Ramsden
> Geoffrey M. Howard
> Sivan Gai
> BINGHAM MCCUTCHEN
>
> David E. Garrett
> ORACLE USA, INC.
>
> Jeffrey M. Feldman
> FELDMAN ORLANSKY & SANDERS
>
> By: s/ Jeffrey M. Feldman
>     Jeffrey M. Feldman
>     FELDMAN ORLANSKY & SANDERS
>     500 L Street, Suite 400
>     Anchorage, Alaska 99501
>     Telephone:    (907) 272-3538
>     Facsimile:    (907) 274-0819
>     Email:        feldman@frozenlaw.com
>     [Alaska Bar No. 7605029]
>
> Attorneys for Defendant Oracle USA, Inc.

---

[9] TCC's allegation that it can sustain its UTPA claim based on its negligent misrepresentation claim even if its fraud claim fails is misleading because allegations supporting fraud and negligent misrepresentations both fail for reasons set forth above.

CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of October, 2006, copies of the <u>Reply in Support of Defendant's Motion to (1) Dismiss Or Transfer For Improper Venue Or, In The Alternative, (2) Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted, Appendix and courtesy copies of Out-Of-State Cases and Other Authorities</u> were served electronically on: Jahna M. Lindemuth, Paul Dieseth, Peter Sipkins, Abigal L. Ramsden, Geoffrey M. Howard, Sivan Gai and mailed to David E. Garrett.

<u>s/ Jeffrey M. Feldman</u>