107J27

**Time of Request:** Monday, October 16, 2006   13:09:19 EST
**Client ID/Project Name:** 0000321250-30588
**Number of Lines:** 415
**Job Number:**        1821:124145528

Research Information

**Service:**   Terms and Connectors Search
**Print Request:** Current Document: 1
**Source:** CA Federal & State Cases, Combined
**Search Terms:** name(amber steel)

**Send to:**  LEUNG, ANNIE
          BINGHAM MCCUTCHEN
          3 EMBARCADERO CTR STE 28
          SAN FRANCISCO, CA 94111-4003

1 of 2 DOCUMENTS

**C & K ENGINEERING CONTRACTORS, Plaintiff and Respondent, v. AMBER STEEL COMPANY, INC., Defendant and Appellant**

S.F. No. 23837

Supreme Court of California

*23 Cal. 3d 1; 587 P.2d 1136; 151 Cal. Rptr. 323; 1978 Cal. LEXIS 330*

**December 22, 1978**

**PRIOR HISTORY:**

Superior Court of Fresno County, No. 160956, Matt Goldstein, Judge. *

    * Retired judge of the superior court sitting under assignment by the Chairperson of the judicial council.

**DISPOSITION:**

The judgment is affirmed.

**SUMMARY: CALIFORNIA OFFICIAL REPORTS SUMMARY**

Plaintiff, a general contractor, solicited bids from defendant and other subcontractors for the installation of reinforcing steel in the construction of a wastewater treatment plan. Plaintiff included defendant's bid in its master bid, which was ultimately accepted by the public sanitation district, the proposed owner of the plant. After defendant refused to perform in accordance with its bid on the subcontract, plaintiff brought an action to recover money damages for defendant's alleged breach of contract. (A second cause of action claiming defendant's negligence in preparing the bid was dismissed during trial.) Plaintiff alleged that it reasonably relied on defendant's bid and promise in submitting its master bid, and when defendant refused to perform in accordance with its bid, plaintiff was required to expend money to perform the reinforcing steel work. Defendant's answer alleged its bid was the result of an honest mistake in calculation, and that plaintiff knew of the mistake but failed to notify defendant or permit it to revise its bid as was customary in the industry. Defendant demanded a jury trial, but the trial court, deeming the case to be essentially in equity, denied the request. However, it empaneled an advisory jury to consider the sole issue of plaintiff's reasonable reliance on defendant's promise. The jury found that plaintiff reasonably relied to its detriment on defendant's bid. The trial court adopted this finding and entered judgment in plaintiff's favor for the approximate amount of plaintiff's prayer, together with interest and costs. (Superior Court of Fresno County, No. 160956, Matt Goldstein, Judge. *)

    * Retired judge of the superior court sitting under assignment by the Chairperson of the judicial council.

The Supreme Court affirmed. The court held that because plaintiff's suit for damages for breach of contract was based entirely on the equitable doctrine of promissory estoppel, the gist of the action must be deemed equitable in nature and neither party was entitled to a jury trial as a matter of right. The court held the doctrine of promissory estoppel is essentially equitable in nature, developed to provide a remedy for enforcement of a gratuitous promise which was not generally available in courts of law prior to 1850, when the California Constitution was adopted. The court rejected defendant's contention that because plaintiff sought to recover damages rather than to compel defendant to perform its bid, plaintiff requested relief which was available at common law. The court also held that the prayer for damages did not convert what was essentially an equitable action into a legal one for which a jury trial

would be available. The court further held the trial court did not err in excluding certain evidence of industry custom pertaining to bids, nor in excluding statements made by plaintiff's agent during settlement negotiations. (Opinion by Richardson, J., with Tobriner, Mosk, Clark, and Manuel, JJ., concurring. Separate dissenting opinion by Newman, J., with Bird, C.J., concurring.

**HEADNOTES: CALIFORNIA OFFICIAL REPORTS HEADNOTES**

Classified to California Digest of Official Reports, 3d Series

**(1) Estoppel and Waiver § 7--Equitable Estoppel -- Elements -- Promissory Estoppel.** --A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The foregoing rule was judicially adopted in California and applies to actions to enforce a subcontractor's bid.

**(2) Estoppel and Waiver § 6--Equitable Estoppel -- Promissory Estoppel -- Nature and Purpose.** --The doctrine of promissory estoppel is essentially equitable in nature and was developed to provide a remedy for the enforcement of a gratuitous promise which was not generally available in courts of law prior to 1850.

**(3) Jury § 7--Right to Jury Trial and Waiver -- Civil Cases -- Constitutional Right.** --The right to a jury trial guaranteed by Cal. Const., art. I, § 16, is the right as it existed at common law in 1850 when the California Constitution was first adopted. What that right is, is a purely historical question of fact to be ascertained like any other social, political or legal fact. As a general proposition, a jury trial is a matter of right in a civil action at law, but not in equity.

**(4) Jury § 10--Right to Jury Trial and Waiver -- Determination of Nature of Action.** --If an action has to deal with ordinary common law rights cognizable in courts of law, it is to that extent an action at law, and a jury trial is a matter of constitutional right. Determining whether the action was one triable by a jury at common law, the trial court is not bound by the form of the action, but rather by the nature of the rights involved and the facts of the particular case. A jury trial must be granted where the gist of the action is legal, and where the action is in reality cognizable at law. However, if the action is essentially one in equity and the relief sought depends on the application of equitable doctrines, the parties are not entitled to a jury trial. Although the legal or equitable nature of a cause of action is ordinarily determined by the mode of relief to be afforded, the prayer for relief in a particular case is not exclusive. Thus, the fact that damages is one of a full range of possible remedies does not guarantee the right to a jury.

**(5) Jury § 10--Right to Jury Trial and Waiver -- Determination of Nature of Action -- Legal or Equitable -- Subcontractor's Refusal to Perform in Accordance With Bid -- Promissory Estoppel.** --In an action by a general contractor against a subcontractor for damages for its refusal to perform the subcontract in accordance with its bid, the trial court properly treated the action as equitable in nature and properly denied defendant's demand for a jury trial, where the complaint sought relief which was available only in equity, namely, the enforcement of defendant's gratuitous promise to perform its bid through application of the equitable doctrine of promissory estoppel. The fact plaintiff sought to recover damages rather than to compel defendant to perform its bid did not mean plaintiff requested relief which was available at common law; damages at law were unavailable in actions for breach of a gratuitous promise. Furthermore, plaintiff's prayer for damages did not convert what was essentially an equitable action into a legal one for which a jury trial would be available.

[See **Cal.Jur.3d,** Jury, § 8; **Am.Jur.2d,** Jury, § 34.]

**(6) Building and Construction Contracts § 8--Actions -- Evidence -- Custom -- Bids.** --In an action by a general contractor against a subcontractor for damages for the subcontractor's failure to perform in accordance with its bid, the trial court did not err in excluding evidence that it was customary for the general contractor, prior to accepting a bid, to disclose to subcontractors the approximate disparity between bids, where plaintiff never disputed the existence of a custom to warn subcontractors of unusually low bids, but introduced testimony directed toward showing that plaintiff complied with the custom by notifying defendant of its substantially lower bid and asking for confirmation thereof. Thus, the proffered evidence was properly rejected as cumulative and of

doubtful relevance.

**(7) Evidence § 31--Admissibility -- Evidence Affected or Excluded by Extrinsic Policies -- Offer to Settle or Compromise.** --In an action by a general contractor against a subcontractor for damages for the subcontractor's failure to perform in accordance with its bid, the trial court properly excluded certain statements made by plaintiff's agent during settlement negotiations which might have impeached direct testimony of plaintiff's chief estimator to the effect that he advised defendant's chief estimator that defendant's bid was much lower than the other bids. The excluded admission occurred during compromise negotiations in which both parties were discussing, and attempting to discover, the facts underlying their dispute, and was thus inadmissible under *Evid. Code, § 1152*, subd. (a), providing that conduct or statements made in negotiation of compromise are inadmissible to prove liability.

**COUNSEL:**

Di Giorgio, Davis & Klein and V. P. Di Giorgio for Defendant and Appellant.

Gill & Baldwin, Samuel D. Hale, Jr., and Leroy M. Gire for Plaintiff and Respondent.

**JUDGES:**

Opinion by Richardson, J., with Tobriner, Mosk, Clark and Manuel, JJ., concurring. Separate dissenting opinion by Newman, J., with Bird, C. J., concurring.

**OPINION BY:**

RICHARDSON

**OPINION:**

[*5] [**1137] [***324] The issue posed by this case is whether or not defendant was improperly denied its constitutional right to a jury trial. (Cal. Const., art. I, § 16.) We will conclude that because plaintiff's suit for damages for breach of contract was based entirely upon the equitable doctrine of promissory estoppel (see *Drennan v. Star Paving Co. (1958) 51 Cal.2d 409 [333 P.2d 757]),* the gist of the action must be deemed equitable in nature and, under well established principles, neither party was entitled to a jury trial as a matter of right.

Plaintiff, a general contractor, solicited bids from defendant and other subcontractors for the installation of reinforcing steel in the construction of a waste water treatment plant in Fresno County. Plaintiff included defendant's bid in its master bid, which was ultimately accepted by the public sanitation district, the proposed owner of the plant. After defendant refused to perform in accordance with its bid on the subcontract, plaintiff brought the present action to recover $ 102,660 in damages for defendant's alleged breach of contract. (A second cause of action, claiming defendant's negligence in preparing its bid, was dismissed during trial and is not presently at issue.)

The allegations of plaintiff's first cause of action may be summarized: defendant submitted a written bid of $ 139,511 for the work; defendants gave a subsequent "verbal promise" that the work would be performed for the bid price; plaintiff "reasonably relied" on defendant's bid and promise in [**1138] submitting its master bid; defendant knew or should have known that plaintiff would submit a master bid based upon defendant's [***325] bid; defendant refused to perform in accordance with its bid; plaintiff was required to expend $ 242,171 to perform the reinforcing steel work; as a result plaintiff was damaged in the amount of $ 102,660; and "Injustice can be avoided only by enforcement of defendant's promise to perform . . . ."

Defendant's answer to the complaint alleged its bid was the result of an "honest mistake" in calculation; plaintiff knew of the mistake but failed to notify defendant or permit it to revise its bid as is customary in the industry; and plaintiff's conduct in this regard should bar it from recovering damages.

[*6] Defendant demanded a jury trial. The trial court, deeming the case to be essentially in equity, denied the request but empaneled an advisory jury to consider the sole issue of plaintiff's reasonable reliance on defendant's promise. The jury found that plaintiff reasonably relied to its detriment on defendant's bid. The trial court adopted this finding and entered judgment in plaintiff's favor for $ 102,620, the approximate amount of its prayer, together with interest and costs. Defendant appeals.

Defendant's primary contention is that it was improperly denied a jury trial of plaintiff's action for damages. In resolving this contention we first review the nature and derivation of the doctrine of [**1139]

promissory estoppel. Thereafter, we discuss certain authorities governing the right to jury trial in this state. As will appear, we have concluded that by reason of the essentially equitable nature of the doctrine and plaintiff's exclusive reliance upon it in the present action, the case was properly triable by the court with an advisory jury.

1. *Promissory Estoppel*

(1) The elements of the doctrine of promissory estoppel, as described concisely in section 90 of the Restatement of Contracts, are as follows: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." The foregoing rule has been judicially adopted in California and it applies to actions, such as the present case, to enforce a subcontractor's bid. ( *Drennan v. Star Paving Co., supra,* 51 Cal.2d 409, 413-415; *Saliba-Kringlen Corp. v. Allen Engineering Co.* (1971) 15 Cal.App.3d 95, 111 [92 Cal.Rptr. 799].) It is undisputed that plaintiff's complaint in the matter before us relies exclusively upon the doctrine to enforce defendant's alleged promise to perform its bid. In fact, the language of the complaint, summarized above, paraphrases that of section 90 in asserting that "Injustice can be avoided only by enforcement of defendant's promise to perform . . . ."

We have recently characterized promissory estoppel as "a doctrine which employs *equitable* principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced. [Citations.]" ( *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 672 [111 Cal.Rptr. 693, 517 P.2d 1157], italics added; see [*7] *Seymour v. Oelrichs* (1909) 156 Cal. 782, 794-800 [106 P. 88]; *Klein v. Farmer* (1948) 85 Cal.App.2d 545, 552-553 [194 P.2d 106].) Many years ago in *Seymour*, we recognized a comparable doctrine in the enforcement of an oral promise to enter into a written contract of employment, where plaintiff had detrimentally relied thereon by surrendering his former position. We observed therein that "The right of *courts of equity* to hold a person estopped to assert the statute of frauds, where such assertion would amount to practicing a fraud, cannot be disputed." *(156 Cal. at p. 794,* italics added.) We did not find that application of the doctrine of equitable estoppel was barred by the fact that the case involved a *promise* of future action rather than a representation of *fact*. (Pp. 797-800.)

Treatise writers and commentators have confirmed the generally *equitable* nature of promissory estoppel in enforcing a promise which otherwise would be unenforceable. (See 3 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 808b, at pp. 211-216; 1 Williston, [***326] Contracts (3d ed. 1957) § 140, pp. 618-619, fn. 6; Seavey, *Reliance Upon Gratuitous Promises or Other Conduct (1951) 64 Harv.L.Rev. 913, 925;* Henderson, *Promissory Estoppel and Traditional Contract Doctrine (1969) 78 Yale L.J. 343, 379-380;* Ames, *The History of Assumpsit (1888) 2 Harv.L.Rev. 1, 14.)* As expressed by Professor Henderson, "[Promissory] estoppel is *a peculiarly equitable doctrine* designed to deal with situations which, in total impact, necessarily call into play discretionary powers, . . ." (78 Yale L.J., *supra,* at pp. 379-380, italics added.) One distinguished commentator has observed that promissory estoppel derives from both "the decisions of the courts of common law from the very beginnings of the action of assumpsit [as well as] the decrees of courts of equity making a very flexible use of the doctrine of 'estoppel,' . . ." (1A Corbin, Contracts (1963) § 194, at p. 193, fn. omitted; see also *id.,* § 195.) The available authorities generally concur, however, that as of 1850 assumpsit would not lie to enforce a gratuitous promise, where the promisee's detrimental reliance was not requested by the promisor. (Ames, *supra,* 2 Harv.L.Rev. at p. 14; Seavey, *supra,* 64 Harv.L.Rev. at p. 913; Shattuck, *Gratuitous Promises -- A New Writ (1937) 35 Mich.L.Rev. 908, 909-914;* 1 Williston, *supra,* at pp. 618-619, fn. 6; 8 Holdsworth, A History of English Law (1966) p. 10.)

The equitable character of promissory estoppel is confirmed by a close scrutiny of the purpose of the doctrine, namely, that "*injustice* can be avoided only by enforcement of the promise. " (Rest., Contracts, *supra,* § 90, italics added.) As expressed by us in a similar subcontractor bid [*8] case, once the prerequisites of the doctrine are met, ". . . *it is only fair* that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him." ( *Drennan v. Star Paving Co., supra,* 51 Cal.2d at p. 415, italics added; see also Seavey, *supra,* 64 Harv.L.Rev. at p. 925; Henderson, *supra,* 78 Yale L.J. at p. 379 ["The specific concern of Section 90 with 'injustice,' standing alone, contemplates broad judicial discretion to make use of equitable principles"].) We think that it is noteworthy

that a proposed addition to section 90 would add the language "The remedy granted for breach may be limited *as justice requires*." (Rest.2d Contracts (Tent. Drafts Nos. 1-7, 1973) § 90, p. 215, italics added; *Swinerton & Walberg Co. v. City of Inglewood -- L. A. County Civic Center Authority (1974) 40 Cal.App.3d 98, 103, fn. 7 [114 Cal.Rptr. 834].*)

(2) We conclude, accordingly, that the doctrine of promissory estoppel is essentially equitable in nature, developed to provide a remedy (namely, enforcement of a gratuitous promise) which was not generally available in courts of law prior to 1850. We now move to an examination of the authorities on the subject of the right to a jury trial, to determine whether the equitable nature of plaintiff's action precluded a jury trial as a matter of right.

2. *Right to Jury Trial*

(3) The right to a jury trial is guaranteed by our Constitution. (Cal. Const., art. I, § 16.) We have long acknowledged that the right so guaranteed, however, is the right as it existed at common law in 1850, when the Constitution was first adopted, "and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact." (*People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 287 [231 P.2d 832];* accord *Southern Pac. Transportation Co. v. Superior Court (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912]; Meyer Koulish Co. v. Cannon (1963) 213 Cal.App.2d 419, 430 [28 Cal.Rptr. 757]; Veale v. Piercy (1962) 206 Cal.App.2d 557, 560 [24 Cal.Rptr. 91].)* As a general proposition, "[The] jury trial is a matter of right in a civil action at law, but not in equity." (*Southern Pac. Transportation Co. v. Superior Court, supra,* 58 Cal.App.3d at p. 436; accord *Abbott v. City of Los Angeles (1958) 50 Cal.2d 438, 462 [326 P.2d* [**1140] *484]; People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 299; *Paularena v. Superior Court (1965) 231 Cal.App.2d 906, 911 [42 Cal.Rptr. 366].*)

[*9] [***327] (4) As we stated in *People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d 283, "'If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case -- the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law.'" (P. 299, fn. omitted, italics added.) On the other hand, if the action is essentially one in equity and the relief sought "depends upon the application of equitable doctrines," the parties are not entitled to a jury trial. (E.g., *Hartman v. Burford (1966) 242 Cal.App.2d 268, 270 [51 Cal.Rptr. 309]* [enforcement of promise to make a will]; *Tibbitts v. Fife (1958) 162 Cal.App.2d 568, 572 [328 P.2d 212]* [establishment of constructive trust].) Although we have said that "the legal or equitable nature of a cause of action ordinarily is determined by the mode of relief to be afforded" (*Raedeke v. Gibraltar Sav. & Loan Assn., supra,* 10 Cal.3d 665, 672), the prayer for relief in a particular case is not conclusive (*Paularena v. Superior Court, supra,* 231 Cal.App.2d at pp. 911-912; *Interinsurance Exchange v. Savior (1975) 51 Cal.App.3d 691, 694 [124 Cal.Rptr. 239]*). Thus, "The fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury. . . ." (*Southern Pac. Transportation Co. v. Superior Court, supra,* 58 Cal.App.3d at p. 437.)

(5) In the present case, the complaint purports to seek recovery of damages for breach of contract, in form an action at law in which a right to jury trial ordinarily would exist. (*Raedeke, supra,* 10 Cal.3d at p. 671; *Interinsurance Exchange, supra,* 51 Cal.App.3d at p. 694; Code Civ. Proc., § 592.) As we have seen, however, the complaint seeks relief which was available only in equity, namely, the enforcement of defendant's gratuitous promise to perform its bid through application of the equitable doctrine of promissory estoppel. Although there is no direct authority on point, several cases have held that actions based upon the analogous principle of equitable estoppel may be tried by the court without a jury. (*Jaffe v. Albertson Co. (1966) 243 Cal.App.2d 592, 607-608 [53 Cal.Rptr. 25]* [estoppel to bar reliance on statute of frauds]; *Moss v. Bluemm (1964) 229 Cal.App.2d 70, 72-73 [40 Cal.Rptr. 50]* [estoppel to bar statute of limitations defense]; *Richard v. Degan & Brody, Inc. (1960) 181 Cal.App.2d 289, 295 [5 Cal.Rptr. 263]* [estoppel as defense to unlawful detainer action]; *Ford v. Palisades Corp. (1950) 101 Cal.App.2d 491, 498-499* [*10] *[225 P.2d 545]* [statute of frauds]; see *Raedeke v. Gibraltar Sav. & Loan Assn., supra,* 10 Cal.3d 665, 674, and fn. 4.)

Defendant responds by relying primarily upon

certain dictum in *Raedeke, supra,* which also concerned an action based on promissory estoppel. The *Raedeke* complaint alleged *dual* theories of traditional breach of contract and promissory estoppel. We stressed that the "resolution of the instant case did not depend entirely upon the application of equitable principles; the doctrine of promissory estoppel was only one of two alternative theories of recovery." (P. 674, fn. omitted.) Accordingly, we held in *Raedeke* that plaintiffs were entitled to a jury trial, and that the trial court erred in treating the jury's findings and verdict as advisory only. In a footnote, however, we added the following dictum: "Moreover, even as to plaintiffs' reliance upon promissory estoppel, there is some basis for holding that the action remained one at law. 'The fact that equitable principles are applied in the action does not necessarily identify the resultant relief as equitable. [Citations.] Equitable principles are a guide to courts of law as well as of equity. [Citations.] Furthermore, [**1141] the incidental adoption of equitable sounding measures to effect the application of equitable principles in an action at law, such as for damages, does not change the character of that action. [Citations.]' [***328] ( *Paularena v. Superior Court, supra,* 231 Cal.App.2d 906, 912.)" (10 Cal.3d at p. 674, fn. 4.)

The foregoing general principles do not alter our conclusion that the present action is, essentially, one recognized only in courts of equity and, despite plaintiff's request for damages, is not an "action at law" involving, to use the *Raedeke* language, the "incidental adoption of equitable sounding measures." Defendant before us has argued that because plaintiff sought to recover damages rather than to compel defendant to perform its bid, plaintiff requested relief which is available at common law. Yet, as we have seen, damages at law were unavailable in actions for breach of a gratuitous promise. The only manner in which damages have been recognized in such cases of gratuitous promises is by application of the equitable doctrine of promissory estoppel which renders such promises legally binding. (See *Saliba-Kringlen Corp. v. Allen Engineering Co., supra,* 15 Cal.App.3d 95, 111.) Without the employment of this doctrine, essentially equitable, there was no remedy at all. As illustrated by the express language of section 90 of the Restatement of Contracts, promissory estoppel is used to avoid injustice "by *enforcement* of the promise." (Italics added.)

[*11] Furthermore, the addition, in such cases, of a prayer for damages does not convert what is essentially an equitable action into a legal one for which a jury trial would be available. This was demonstrated in a recent case, *Southern Pac. Transportation Co. v. Superior Court, supra, 58 Cal.App.3d 433,* wherein plaintiff sought damages as a good faith improver of land owned by another person. (See *Code Civ. Proc., § 871.1* et seq.) The appellate court rejected the contention that plaintiff's request for damages necessarily identified the action as one at law. The court first noted that since the good faith improver statute had no counterpart in English common law, "classification of the action as either legal or equitable depends upon characterization of the nature of the relief sought." (P. 437.)

The *Southern Pac. Transportation* court properly observed that under the statute, the trial court must "effect such an adjustment of the rights, equities, and interests" of the parties as was consistent with substantial justice. (*Code Civ. Proc., § 871.5.*) Thus, the action was essentially one calling for the exercise of equitable principles. The court added, "The fact that damages is one of a full range of possible remedies does not guarantee real parties the right to a jury," since "there is no possibility of severing the legal from the equitable. The trier of fact must determine whether to quiet title in the improver on the condition he pay to the landowner the value of the unimproved land, or whether and in what amount, to award damages to the improver, or whether to require a completely different form of relief. . . . Such a determination is not susceptible of division into one component to be resolved by the court and another component to be determined by a jury. Only one decision can be made, and it must make a proper adjustment of the 'rights, equities, and interests' of all the parties involved." (Pp. 437-438.) The court concluded that in view of the various equitable considerations involved, it would be "an impossible task" for a jury to resolve the dispute. (P. 438.)

Similarly, in the present case, the trier of fact is called upon to determine whether "injustice can be avoided only by enforcement of [defendant's] promise." (Rest., Contracts, § 90.) The "gist" of such an action is equitable. Both historically and functionally, the task of weighing such equitable considerations is to be performed by the trial court, not the jury. We conclude that the trial court properly treated the action as equitable in nature, to be tried by the court with or without an advisory jury as the court elected.

[*12] [**1142] 3. *Exclusion of Custom Evidence*

(6) Defendant next contends that the trial court erred in excluding certain evidence of industry custom, which evidence [***329] assertedly would have supported a finding that plaintiff did not reasonably rely upon defendant's low bid. This evidence would have shown that it is customary for the general contractor, prior to accepting a bid, to disclose to subcontractors the approximate disparity (in either percentage or dollar amounts) between the bids.

The proffered testimony was properly rejected as cumulative and of doubtful relevance. At trial, the evidence indicated that ordinarily the various subcontractors' bids are within 5 to 15 percent of each other, and seldom more than 20 percent apart. Defendant's bid in the present case was approximately 40 percent lower than the next lowest bid.

The record also discloses, however, that after plaintiff received all bids, its chief estimator (Potts) called defendant's chief estimator (Bass) to confirm defendant's bid. According to Potts, he told Bass that defendant's bid was "a hell of a lot" lower than 20 percent below the other bids, and he asked Bass to recheck defendant's figures. Bass did so and confirmed the bid, which plaintiff thereupon included in its master bid. The testimony of Bass was in conflict with that of Potts as to the nature of the telephone conversation, Bass saying that Potts told him the bid was "in the neighborhood" of 20 percent below other bids. The trial court and advisory jury evidently disbelieved Bass. The trial court specifically found that Potts advised Bass that "defendant's bid was substantially lower than other bids." Moreover, both the court and the jury (responding to a special verdict interrogatory) found that plaintiff reasonably and justifiably relied on defendant's bid.

In light of the foregoing testimony, and the resolution by court and jury of its conflicts, it is not reasonably likely that the proffered custom evidence would have produced a different verdict. Plaintiff never disputed the existence of a custom to warn subcontractors of unusually low bids; in fact, Potts' testimony was directed toward showing that plaintiff *complied* with such a custom by notifying defendant of its substantially lower bid and asking for confirmation thereof. We conclude that the court did not err in excluding the evidence.

[*13] 4. *Exclusion of Statements During Settlement Negotiations*

(7) Finally, defendant contends that the trial court erred in excluding certain statements made by plaintiff's agent, Olson, during settlement negotiations. Defendant offered to prove that, during settlement discussions, Olson admitted that Potts recounted to him a version of the Potts-Bass telephone conversation which was "practically word for word" the same as Bass' own version. Such testimony might have impeached Potts' direct testimony to the effect that he advised Bass that defendant's bid was "a hell of a lot" lower than the other bids.

The trial court properly excluded the evidence, for under *Evidence Code section 1152*, subdivision (a), "conduct or statements made in negotiation [of compromise] . . . [are] inadmissible to prove . . . liability. . . ." Defendant relies on *People* ex rel. *Dept. Public Works v. Forster (1962) 58 Cal.2d 257, 263-265 [23 Cal.Rptr. 582, 373 P.2d 630],* wherein we held that an independent and absolute admission of fact which is intended to admit liability is admissible even though it was made during the course of compromise negotiations. The *Forster* case, however, was decided prior to the enactment of section 1152, and the comment of the California Law Revision Commission make it clear that the current language of this section changed the prior law under the *Forster* decision. According to the commission, "[the] rule of the Forster case is changed by Section 1152 because that rule prevents the complete candor between the parties that is most conducive to settlement." (See *County of San Joaquin v. Galletti (1967) 252 Cal.App.2d 840, 842-843 [61 Cal.Rptr. 62];* see also Witkin, Cal. Evidence (2d ed. 1966) pp. 337-338; but see [**1143] *Moving Picture etc. Union v. Glasgow Theaters, Inc. (1970) 6 Cal.App.3d 395, 402 [86 Cal.Rptr. 33].)*

In the present case, the excluded admission occurred during compromise negotiations [***330] in which both parties were discussing, and attempting to discover, the facts underlying their dispute. The strong public policy favoring settlement negotiations and the necessity of candor in conducting them combine to require exclusion of Olson's admission.

The judgment is affirmed.

**DISSENT BY:**

NEWMAN

**DISSENT:**

[*14] **NEWMAN, J.** I dissent. The Chancery Court in England sometimes created rights, sometimes remedies. When California courts decide whether a jury trial should be assured, I believe that they should focus not on rights but on remedies. A plaintiff who seeks damages should be entitled to a jury. One who seeks specific performance or an injunction or quiet title, etc. (plus supplementary damages or "damages in lieu" that would have been allowed in Chancery) is not entitled to a jury.

The majority opinion here discusses "promissory estoppel," "equitable estoppel," "equitable principles," "equitable doctrine," "equitable nature," and even "injustice." To pretend that words like those enable us to isolate "ordinary common-law rights cognizable in courts of law" or that "the *gist* of the action" governs (quoting from *People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 299 [231 P.2d 832])* seems to me to be uninstructive fictionalizing. We are told that courts deal with "a purely historical question, a fact which is to be ascertained like any other social, political or legal fact" ( *id ., at p. 287)*. Yet how often, I wonder, do (or should) California judges instead decide whether the wisdom of a Corbin, in 1963, outweighs comments by Ames, Seavey, Shattuck, and Williston written during the period from 1888 to 1957?

In fact, most rights that are now enforced via a jury were created not by courts but by legislatures. We look at the *remedy* sought, not at the judicial or legislative history of the *right*, to decide whether the trial is to be "legal" or "equitable." There are troubling borderlines, but the basic rule should be that no jury is required when plaintiff seeks equitable relief rather than "legal" damages. That approach requires no complex, historical research regarding when and by whom certain rights were created. It also requires less reliance on the anomalies of England's unique juridical history. Courts thus may focus on a basic policy concern; that is, the typically more continuing and more personalized involvement of the trial judge in specific performance and injunctive decrees than in mere judgments for damages.

The doctrine of promissory estoppel was not, I suggest, "developed to provide a remedy (namely, enforcement of a gratuitous promise)" as the majority here contend. What it really did was to help create a new right [*15] (just as statutes help create new rights) that apparently, but only if we reject what seems to have been Corbin's view, was enforced as of 1850 in Chancery but not at common law.

Plaintiff in this case sought damages for an alleged breach of contract. He did not seek equitable relief. Thus defendant should have been granted the jury trial he requested.