IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DENA' NENA' HENASH, INC., d/b/a TANANA CHIEFS CONFERENCE, an Alaska non-profit corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>ORACLE CORPORATION, a Delaware corporation,<br><br>       Defendant. | Case No. 4:06-cv-0006-RRB<br><br><br>**ORDER REGARDING MOTION**<br>**AT DOCKET 24** |

### I.   MOTION PRESENTED

At Docket 24, Defendant Oracle Corporation ("Oracle") has moved to (1) dismiss or transfer for improper venue or, in the alternative, (2) dismiss for failure to state a claim upon which relief can be granted. At Docket 29, Plaintiff Dena' Nena' Henash, Inc., d/b/a Tanana Chiefs Conference ("TCC"), has opposed the motion and at Docket 40 Oracle has replied. The Court heard oral argument on December 14, 2006, and now renders its decision.

ORDER RE DOCKET 24 - 1
4:06-CV-0006-RRB

**II.   BACKGROUND/JURISDICTION**[1]

TCC, seeking to replace its then-existing computer system, issued a request for proposal ("RFP") to provide a software system that would meet TCC's needs. Oracle responded to that RFP and, following an exchange of information and negotiations, TCC and Oracle entered into multiple agreements, including the Oracle License and Services Agreement ("License Agreement"), Oracle Services Agreement ("Services Agreement"), and two related ordering agreements.[2]

TCC, dissatisfied with Oracle's program and its implementation, initiated this lawsuit. TCC is a an Alaska non-profit corporation with its principal place of business located in Fairbanks, Alaska. Oracle is a Delaware corporation with its principal place of business located in Redwood City, California. The First Amended Complaint seeks damages in excess of $5,500,000. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

///

///

---

[1] The facts are taken from the First Amended Complaint ("FAC"), which are, for the purposes of determining jurisdiction and venue, accepted as true.

[2] FAC, ¶ 13 (Docket 7-1 at 5), Exhs. C (Docket 7-4), D (Docket 7-5), E (Docket 7-6), and F (Docket 7-7).

**III. ISSUE PRESENTED**

The License and Services Agreements each contain a forum selection clause, which differ materially. The License Agreement provides:[3]

> This agreement is governed by the substantive and procedural laws of California and you and Oracle agree to submit to the exclusive jurisdiction of, and venue in, the courts of San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

The Services Agreement provides:[4]

> This agreement is governed by the substantive and procedural laws of the State of Montana and we agree to submit to the exclusive jurisdiction of, and venue in, the courts in Alaska County in Fairbanks, Alaska, or San Francisco, San Mateo, or Santa Clara Counties in California in any dispute arising out of or relating to this agreement.

The issue before the Court is which forum selection clause applies: the License Agreement or the Services Agreement. If venue in this matter is controlled by the Services Agreement, as contended by TCC, venue is proper in this Court.[5] On the other hand, if venue is controlled by the License Agreement, as contended

---

[3] *Id.*, Exh. C, p. 5 (Docket 7-4 at 5).

[4] *Id.*, Exh. E, p. 4 (Docket 7-6 at 4).

[5] Although, technically, there is no "Alaska County in Fairbanks," the Court assumes the parties intended the North Star Borough in which the city of Fairbanks is located. Moreover, this Court sits in Fairbanks. 28 U.S.C. § 81A.

by Oracle, venue does not lie in this Court and the matter must be either dismissed or transferred to the Northen District of California.[6]

**IV. DISCUSSION**

Forum selection clauses are generally enforced in the absence of strong reasons to set them aside.[7] Neither party disputes this general rule and neither suggests that there is any reason to set either clause aside; the dispute centers on which of the two forum selection clauses controls.[8] The parties also appear to agree that if both apply, the more restrictive forum selection clause of the License Agreement (limiting venue to counties of California lying within the Northern District of California[9]) controls. TCC argues that all of the allegations in the complaint are either tort or constitute breaches of the Services Agreement;

---

[6] 28 U.S.C. § 1406(a) ("[t]he district court of a district in which is filed a case laying venue in the wrong division or district, shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought").

[7] *E. & J. Gallo Winery v. Andina Licores, S.A.*, 446 F.3d 984, 992 (9th Cir.2006).

[8] The Court finds TCC's reliance on *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir.2003) misplaced. First, TCC is not contesting the enforceability of the forum selection clause, it is challenging its applicability under the facts as pleaded in the FAC. Second, there are no factual conflicts in this case; all the facts are as alleged in the First Amended Complaint, none of which are controverted; thus there is no inference to be drawn in favor of either party.

[9] 28 U.S.C. § 84(a).

none of the allegations implicate or otherwise require the interpretation of the License Agreement. While conceding that the complaint alleges breaches of the Services Agreement, Oracle argues that several allegations in the complaint either are direct allegations of breach of the License Agreement or, to the extent they are tort claims, require interpretation of the License Agreement.[10] These include:[11]

> For example, TCC alleges that it "has not yet been able to attain a complete and fully functioning system." FAC ¶ 15. TCC also claims that the system on which TCC initially went live "had extremely limited functionality and is still incomplete and not fully implemented." Id. TCC alleges that Oracle misrepresented that its "'out of the box' software had the required functionality, including the ability to provide requested reports, to calculate and properly apply the proper indirect rates, to exchange data between the purchased modules, and to otherwise manage and control TCC's organization." FAC ¶ 10©. In addition, TCC asserts, "The Grants module had little or no ability to generate reports, contrary to Oracle's representations." FAC ¶ 18.
>
> TCC ties its claimed contract damages directly to these alleged functional defects

---

[10] *See Manetti-Farrow, Inc. v. Gucci America, Inc*., 858 F.2d 509, 514 (9th Cir.1988) (holding that a contractual forum selection clause governed both tort and contract claims where the claims could not be adjudicated without resort to the contract).

[11] Memorandum in Support of Defendant's Motion to (1) Dismiss or Transfer for Improper Venue [F.R.C.P. 12(b)(3); 28 U.S.C. § 1406(a)] or, in the Alternative, (2) Dismiss for Failure to State a Claim upon Which Relief Can Be Granted [F.R.C.P. 12(b)(6); F.R.C.P. 9(b)] ("Defendant's Memo"), pp. 6-8 (Docket 25-1 at 12-14).

in the software product it received pursuant to the License Agreement:  "Because of the defects noted above and because the underlying software release licensed to TCC was incapable of providing the required functionality, TCC has spent and will need to spend considerable time and resources in upgrading its system . . . ."  FAC ¶ 20.  TCC also claims damages for system components it "would not have had to purchase had the Oracle software functioned as represented."  FAC ¶ 21.

In addition to these "background" allegations of defective product and inadequate functionality, TCC attempts to include an actual, disguised claim for breach of the License Agreement in the first claim for relief for "breach of contract and express warranty."  First, TCC incorporates by reference the allegations described above from paragraphs 13, 15, 18, and 20-21 regarding alleged product defects.  FAC ¶ 25.  Second, TCC coyly alleges that it "has fully performed its obligations under the Contracts" (defined to include the License Agreement).  FAC ¶¶ 13, 25, and 28.  Third, TCC claims damages "[a]s a direct and proximate result of Oracle's breach of contract," which of course does not limit damages only to the Services Agreement. FAC ¶30.  In addition, TCC ties its contract damages claim to its "damages as alleged above," which, as shown, ostensibly includes damages directly related to claimed product defects governed by the License Agreement.  Id.  Finally, and to resolve all doubt, TCC's prayer for relief includes "all monies paid to Oracle pursuant to the ***Contracts***."  FAC Prayer for Relief (emphasis supplied).

*   *   *   *

TCC alleges that Oracle made numerous misrepresentations directed to the functionality of the product and fraudulently induced TCC to enter into the License Agreement.  FAC ¶ 10.  In FAC paragraphs 10(a)-(h), TCC identifies nine supposed

instances of fraudulent misrepresentation. More than half relate to the License Agreement, including that:

- "Oracle's standard software provided the functionality that TCC required," and TCC's "requirements are addressed by Oracle's standard functionality" (FAC ¶ 10(a));

- TCC "will realize significant financial savings" as a result of using Oracle software (FAC ¶ 10(b));

- "Oracle repeatedly assured TCC that its software could provide all of the functionality needed by TCC" (FAC ¶10©);

- "Oracle's HR, Payroll, Benefits and Grants modules were fully integrated" (FAC ¶ 10(d)); and

- TCC "reserves its right to assert claims" that Oracle made misrepresentations about a "proposed" second phase of the project that "TCC has not completed," but that allegedly involves extending the software functionality to TCC's tribal members (FAC ¶ 10(h)).

In its opposition, TCC accuses Oracle of "cherry picking" and ignoring the numerous allegations of the complaint that are based on the Services Agreement. However, whether the forum selection clause of the Services Agreement applies is irrelevant to the motion at bar. Oracle concedes that there are allegations that constitute a breach of the Services Agreement and does not contend that the forum selection clause of the Services Agreement is inapplicable. Instead, Oracle argues that, as quoted above, there are allegations that, in order to be proven, require resort to the License Agreement, *i.e.*, that the software purchased under the

License Agreement did not perform as represented.  The fact that it is also alleged Oracle did not make it work as it agreed to in the Services Agreement only creates an additional right to recovery.  It does not, however, supplant the fact that TCC is specifically alleging that the product acquired under the License Agreement was itself deficient.

TCC further argues that its fraud claims concerning the software itself can be resolved by comparing the promises made and the software itself without resort to the License Agreement.  TCC, while acknowledging in its opposition that there are two contracts the Court must consider, argues that the Services Agreement "is the contract closest to the functionality misrepresentations."[12]  However, the misrepresentations concerning functionality seemingly apply to the acquisition of the software, which is directly related to the License Agreement.  Indeed, TCC alleges, and continues to argue in its opposition, that it was the lack of functionality that required it to request Oracle perform the services under the Services Agreement it now alleges were inadequate.[13]  But the software was purchased using the License Agreement, which specified the software TCC was purchasing and the terms under which it was

---

[12] Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or Transfer for Improper Venue or, in the Alternative, to Dismiss for Failure to State a Claim ("Opposition"), p. 14 (Docket 29-1 at 21).

[13] Opposition, p. 15 (Docket 29-1 at 22).

purchasing that software. The License Agreement contains a specific warranty.[14]

> Oracle warrants that a program licensed to you will operate in all material respects as described in the applicable program documentation for one year after delivery. * * * *
>
> ORACLE DOES NOT GUARANTEE THAT THE PROGRAMS WILL PERFORM ERROR-FREE OR UNINTERRUPTED OR THAT ORACLE WILL CORRECT ALL PROGRAM ERRORS. TO THE EXTENT PERMITTED BY LAW, THESE WARRANTIES ARE EXCLUSIVE AND THERE ARE NO OTHER EXPRESS OR IMPLIED WARRANTIES OR CONDITIONS, INCLUDING WARRANTIES OR CONDITIONS OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR USE.

Moreover, the License Agreement contains an integration clause that provides:[15]

> You agree that this agreement and the information which is incorporated into this agreement by written reference (including reference to information contained in a URL or referenced policy), together with the applicable order, are the complete agreement for the program and/or services ordered by you, and that this agreement supercedes all prior or contemporaneous agreements or representations, written or oral, regarding such programs or services.

To escape the application of the License Agreement warranty, TCC argues it does not contend that the software did not perform as described in the documentation, but that all the

---

[14] FAC, Exh. C., p. 1 (capitalization in the original) (Docket 7-4 at 1).

[15] FAC, Exh. C, pp. 4-5 (Docket 7-4 at 4-5).

fraudulent representations were made prior to its execution. That argument is in direct conflict with the integration clause. To escape this result, TCC must establish either (1) the integration clause did not apply or (2) the License Agreement is invalid, *i.e.*, fraudulently induced. Either way, it raises a dispute that relates to the License Agreement. TCC cannot, by simply ignoring the existence of the License Agreement, effectively abrogate it *sub silentio*. In other words, TCC cannot escape the agreement it made with respect to venue by artful pleading.

While, as TCC asserts, it may be commonplace to broadly incorporate prior allegations of a complaint into each succeeding cause of action, the pleader who does so must live with the consequences. In this case, TCC has incorporated into each successive cause of action several allegations that constitute breaches of the License Agreement or require resort to the License Agreement to determine if the software delivered under the License Agreement and associated ordering document functioned as represented. The consequence in this case is that TCC pleaded itself out of this Court and into the Northern District of California. While venue in this Court is proper under the Services Agreement, it is not proper under the License Agreement. On the other hand, venue in the Northen District of California is proper under both agreements.

TCC requests that, in lieu of dismissal, this Court, in the interests of justice, transfer the case. Oracle opposes that request, arguing that the case should be dismissed, not transferred. Whether a case is dismissed or transferred to a district in which venue is proper is within the discretion of the district court.[16] However, transfer is appropriate only if it is shown to be in the interests of justice.[17] TCC has not provided any factual basis upon which this Court could find that a transfer is in the interests of justice. On the other hand, Oracle has not asserted any factual basis for a finding that transfer would not be in the interests of justice. Other than being required to refile the complaint in the Northern District of California, there is no apparent prejudice to TCC if the case is dismissed rather than transferred, *e.g.*, that the limitations period has run. On the reverse side of the coin, there is no apparent prejudice to Oracle if the case is transferred, as the case will be treated in all respects, including the applicable law,[18] as if the case had been

---

[16] *Oaks of Woodlake Phase III, Ltd. v. Hall, Bayoutree Assocs., Ltd. (In re Hall, Bayoutree, Assocs., Ltd.)*, 939 F.2d 802, 806 (9th Cir.1991).

[17] *Costlow v. Weeks*, 790 F.2d 1486, 1488 (9th Cir.1986); 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FED. PRAC. & PROC. JURIS. § 3827 (2d ed.).

[18] The Northern District of California as the transferee court will apply the law of its forum, California, to the case. *See Nelson v. Intern'l Paint Co.*, 716 F.2d 640, 643 (9th Cir.1983); *accord Jackson v. West telemarketing Corp. Outbound*, 245 F.3d 518,
(continued...)

originally commenced in the Northern District of California. Although the basis asserted by TCC for bringing this action in this district may be marginal, the Court cannot say that it was done either in bad faith or to gain an improper advantage over Oracle. The Court finds that, in the absence of any prejudice to Oracle or that TCC acted in bad faith, dismissal would be unduly punitive and it is more convenient and economical to transfer the action.[19]

Because the Court finds that venue is not proper in this Court under the First Amended Complaint, it is unnecessary to reach the alternative advanced by Oracle, *i.e.*, that the Third, Fourth, Fifth, and Sixth claims be dismissed under FED. R. CIV. P. 12(b)(6) for failure to state a cause of action. Therefore, in that respect the motion will in any event be denied, without prejudice. The determination of those issues on the merits, as they may involve significant choice of law issues, is more appropriately addressed by the Northern District of California applying the law of that forum, California.

TCC requests leave to further amend the complaint to clarify in its first cause of action that it is seeking recovery solely for a breach of the Services Agreement; it is not seeking

---

[18](...continued)
523 (5th Cir. 2003); *Pony Computer, Inc. v. Equus Computer Systems of Missouri, Inc.*, 162 F.3d 991, 995 (8th Cir.1998).

[19] *See generally*, 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER, FED. PRAC. & PROC. JURIS. § 3827 (2d ed.).

recovery for breach of the License Agreement.  However, as Oracle correctly points out, that may not entirely resolve the issue.  The allegations implicating or related to the software purchased under the License Agreement also constitute the major allegations that underlie the fraud, negligent misrepresentation, constructive fraud, and unfair trade practices causes of action.  Indeed, stripping those allegations may render those causes of action vulnerable to a motion under F̲E̲D̲. R. C̲I̲V̲. P. 12(b)(6).  Moreover, when asked by the Court at oral argument whether TCC would be willing to waive all claims related to or arising out of the Licensing Agreement in order to retain venue in Fairbanks, Alaska, counsel for TCC responded that it would.

### V. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that as presently pleaded in the First Amended Complaint, proper venue for this action is the Northern District of California.  However, Plaintiff Dena' Nena' Henash, Inc., d/b/a Tanana Chiefs Conference, having requested leave to file a further amended complaint eliminating the forum selection cause problem by waiving any claims it might have under the License Agreement, it should be permitted to exercise that option.  If, on the other hand, Plaintiff Dena' Nena' Henash, Inc., d/b/a Tanana Chiefs Conference, desires to proceed against Defendant Oracle Corporation on any claim arising

out of or related to the License Agreement, this action must be transferred to the Northern District of California.

**IT IS ORDERED THAT** leave is **GRANTED** to file a Second Amended Complaint on or before **January 8, 2007.**

**IT IS FURTHER ORDERED THAT:**

1. In the event a Second Amended Complaint is timely filed, the Motion of Oracle Corporation at Docket 24 will be **DENIED** as moot; or

2. In the event a Second Amended Complaint is not timely filed, the Motion of Oracle Corporation at Docket 24 to transfer the case for lack of proper venue under 28 U.S.C. § 1406(a) will be **GRANTED** and in all other respects **DENIED**, without prejudice, and the case transferred to the United States District Court for the Northen District of California for such further proceedings as that Court may deem appropriate.

ENTERED this 15th day of December, 2006.

S/RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE